UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff<br><br>vs.<br><br>CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | C.A. No. 04-174 T |

**DEFENDANT CHEROKEE, INC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, defendant Cherokee, Inc. ("Cherokee") hereby moves for summary judgment on plaintiff Mag Jewelry Co., Inc.'s ("Mag") claim of copyright infringement on the grounds that Cherokee is not a direct, vicarious or contributory infringer of Mag's alleged copyright.

In support of this Motion, Cherokee relies on its Rule 12.1 Statement of Undisputed Facts, Memorandum of Law, and exhibits appended thereto filed contemporaneously herewith.

CHEROKEE, INC.
By its Attorneys

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 (Tel)
(401) 455-0701 (Fax)

Dated: July 29, 2005

**CERTIFICATION**

TO:

Thomas A. Tarro, III, Esq.
Kris R. Macaruso Marotti, Esq.
The Law Firm of Thomas A. Tarro III, Esq.
The Summit East, Suite 330
300 Centerville Road
Warwick, RI 02886

Thomas R. Noel, Esq.
Noel & Gyorgy
50 South Main St.
Providence, RI 02903

I hereby certify that I caused a true copy of the within *Motion for Summary Judgment* to be sent via First Class Mail to the above named counsel of record on the 29th day of July, 2005.

Linda Cardente

*H:\Clients\Target Corporaton.MAG\Style Fashion Jewelry - Mag\Pleadings\Cherokee Motion for Summary Judgment.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff<br><br>vs.<br><br>CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | C.A. No. 04-174 T |

**DEFENDANT CHEROKEE, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Mag Jewelry Co., Inc. ("Mag"), claims that defendant, Cherokee, Inc. ("Cherokee"), infringed its copyright by manufacturing, marketing, distributing and selling "crystal angel" jewelry. But that is untrue: Cherokee did not manufacture, market, distribute or sell the allegedly infringing product and therefore cannot be liable as a direct infringer. Moreover, Cherokee had no right or ability to supervise the allegedly infringing activity, nor did it receive an obvious and direct financial benefit from the allegedly infringing activity, so it cannot be held liable as a vicarious infringer. Finally, Cherokee did not know and had no reason to know of the infringing activity, nor did it materially contribute to another's infringement, so it cannot be held liable as contributory infringer. On the undisputed facts of this case and well established law, Cherokee is not liable to Mag and summary judgment should enter in its favor.

## II. SUMMARY OF FACTS

Mag claims to have created a piece of crystal jewelry referred to as the "Crystal Angel" in 1992. (Defendant Cherokee, Inc.'s Rule 12.1 Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("Undisputed Facts"), ¶ 1.) Mag obtained a Certificate of Registration from the Register of Copyrights for the Crystal Angel in 1995. *Id.* Mag brought this action in January 2002[1] and alleged that Cherokee had manufactured, marketed, distributed and sold crystal angel jewelry items which are copied from, and identical and/or substantially similar to, Mag's copyrighted Crystal Angel design within the past three years. *Id.* at ¶ 2. Mag further alleged that Cherokee's actions infringed Mag's Crystal Angel copyright. *Id.* at ¶ 3.

At all times relevant hereto, Cherokee has licensed the "Cherokee" trademark to defendant Target Corporation ("Target") for Target's exclusive use in the United States. *Id.* at ¶ 5. Cherokee does not design, manufacture or sell the products that Target (or any other retailer) elects to brand with the Cherokee mark: Cherokee only licenses its trademarks and trademarks of third parties that Cherokee represents. *Id.* at ¶¶ 4, 5.

On November 12, 1997, Cherokee and Target entered into a written License Agreement governing the licensing of Cherokee's mark to Target. *Id.* at ¶ 6. Pursuant to the License Agreement, Target is granted the right to sell ten (10) broad categories of products under the Cherokee mark. *Id.* at ¶ 7. One category of products Target is licensed to sell under the Cherokee mark is "Men's, Women's and Children's Accessories," which includes luggage, jewelry, handbags, small leather goods, belts, neckwear, hairgoods, hats, rainwear, gloves, hosiery, slippers, sunglasses/eyewear and watches. *Id.* at ¶ 8.

[1] Mag originally filed this Complaint in the Eastern District of New York. Target and Cherokee moved to dismiss the Complaint or transfer it to the District Court of Rhode Island. On March 31, 2004, the Court granted the motion to transfer.

The License Agreement requires Target to pay Cherokee a royalty based on the total volume of retail sales of Cherokee-branded products in each fiscal year, subject to a minimum annual royalty. *Id.* at ¶ 9. Cherokee does not receive royalty payments from Target for specific items within each category of products. *Id.* at ¶ 10. Rather, it is paid a royalty on the total net sales of products bearing the Cherokee mark. *Id.* at ¶ 10. Target provides Cherokee with periodic reports showing the total products sold during a given time period under the License Agreement by category, but Cherokee is not provided with reports that would show the amount of royalties, if any, it received from sale of the Crystal Angel jewelry that is the subject matter of this lawsuit. *Id.* at ¶ 11. Cherokee does not know and has no records that would show whether it received any royalty payments with regard to the Crystal Angel jewelry that is the subject matter of this lawsuit. *Id.* at ¶ 12.

Cherokee has certain rights under the License Agreement, but does not have the contractual right or ability to supervise Target's sales of products bearing the Cherokee mark to ensure that the products do not violate a third-party's protective copyright. *Id.* at ¶ 13.

## III. ARGUMENT

### A. The Summary Judgment Standard.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The objective of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch.*

*of Med.*, 976 F.2d 791, 794 (1st Cir. 1992); *see also Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 187 (1st Cir. 1997).

Once the moving party has made its preliminary showing that no genuine issue of material facts exists, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue. *Celotex*, 477 U.S. at 324. To satisfy the criterion of trialworthiness, the non-movant must establish the existence of an issue that is both genuine and material to its claim.[2] *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993). This requires more than presenting "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Specifically, the non-movant may not defeat a motion for summary judgment by relying upon evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve"). To the contrary, it must present definite and competent evidence to rebut the motion. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). Absent that, summary judgment is appropriate. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (where the non-moving party rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation," summary judgment is appropriate).

---

[2] The First Circuit defines "genuine" to mean that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party and "material" to mean that the fact is one that might affect the outcome of the suit under the governing law. *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.)*, 960 F.2d 200, 204 (1st Cir. 1992).

**B. <u>Cherokee Is Not Liable for Copyright Infringement.</u>**

Although the Copyright Act does not expressly impose liability on anyone other than direct infringers, courts recognize that in limited circumstances vicarious or contributory liability may be imposed. *E.g., Adobe Systems, Inc. v. Canus Productions, Inc.*, 173 F. Supp.2d 1044, 1048 (C.D. Cal. 2001). Accordingly, there are three theories of liability for copyright infringement under which Cherokee could be liable to Mag: 1) direct infringement; 2) vicarious infringement; and 3) contributory infringement. *Harlan Ellison v. Stephen Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). As explained below, Cherokee is not liable for infringing Mag's copyright under any of these three theories.

**1. Cherokee Did Not Directly Infringe Mag's Copyright.**

To establish liability for direct copyright infringement, a plaintiff must prove (1) that it owns a valid copyright in the work alleged to have been copied; and (2) that defendant himself violated one or more of plaintiff's rights under the Copyright Act. *Data Fen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir 1994)(citations omitted). Though Mag alleged in its Amended Complaint that Cherokee "manufactured, marketed, distributed and sold" products that infringed Mag's copyright, sworn deposition testimony established that Cherokee does <u>not</u> manufacture, market, distribute or sell any products and had no role in the design, manufacture, distribution or sale of Crystal Angel jewelry. (Undisputed Facts at ¶ 5.) Accordingly, Cherokee cannot be held liable as a direct infringer under the Copyright Act.

**2. Cherokee Is Not A Vicarious Infringer.**

Vicarious copyright liability is an outgrowth of the doctrine of "respondeat superior" and imposes liability on those with a sufficiently supervisory relationship with the direct infringer. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1164 (9th Cir. 2004). To be

liable under a theory of vicarious copyright infringement, a defendant must (1) have the right and the ability to supervise the infringing activity; and (2) have an obvious and direct financial interest in the infringement. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963); *Broadcasting Music, Inc. v. Old Colonial Tavern*, 2002 U.S.P.Q.2d (BNA) 1685 (D. Mass. 2002). Here, Cherokee lacks both of these required elements.

In analyzing the first element of vicarious infringement—the right and ability to supervise the infringing activity—courts have focused on the defendant's broad rights to police the direct infringer's activities and the ability to stop the sale of the infringing products. *See Fonovisa, Inc. v. Cherry Auction, Inc.*,76 F.3d 259, 263 (9th Cir. 1996). For example, a defendant could be liable for vicarious infringement where it has the right and ability to supervise carefully the direct infringer's activities and fails to do so. *Metro-Goldwyn-Mayer Studios, Inc.*, 380 F.3d at 1164. Though a license agreement may suggest a supervisory relationship, a defendant must have an actual right to supervise the direct infringer, not unlike an employer's right to supervise an employee,[3] to satisfy the first element of vicarious copyright infringement. *See e.g., Id. at 1165, Shapiro*, 316 F.2d at 306-08. In *Fonovisa*, for example, the court imposed vicarious liability based on the defendant's ability to (1) control access to the location where infringing products were being sold, (2) control vendors' infringement through rules and regulations, and (3) police the facilities to ensure that the rules and regulations were being followed. *Fonovisa*, 76 F.3d at 263.

Here, Cherokee does not have the required right or ability to exercise supervisory control over Style or Target to support a finding of vicarious liability. Cherokee has absolutely no relationship with Style, the manufacture and distributor of the accused work. With respect to Target, the License Agreement grants Cherokee rights to inspect and approve the products Target

[3] *Adobe Systems, Inc.*, 173 F. Supp. 2d at 1048.

intends to sell under the Cherokee mark for quality control purposes. Cherokee may also inspect Target's manufacturing facilities and approve the labels and packaging of products bearing the Cherokee mark, to ensure that the Cherokee mark and its goodwill are protected. (Undisputed Facts at ¶ 13.) But Cherokee does not have the right to inspect Target's stores or the products it sells to ensure that Target is not infringing a third party's alleged copyright. (Undisputed Facts at ¶ 13.) Cherokee cannot simply pull allegedly infringing products off of Target's shelves in the event that it does identify infringing products being sold under the Cherokee mark. Clearly, Cherokee, as a licensor of a trademark that Target alone decided to brand with the accused work, lacks the actual supervisory control over Target that is required to impose vicarious infringement liability. For this reason alone, Cherokee cannot be liable as a vicarious infringer.

Even if Mag's failure to meet the first required prong of the test is not dispositive of the issue, it also fails to meet the second prong: Cherokee does not have an obvious and direct financial interest in Target's alleged sale of infringing products. In cases where vicarious liability has been found, there was a "symbiotic relationship" between the infringer and the defendant where the success of the defendant's venture depended on the infringing activity. *Adobe Systems, Inc.*, 173 F. Supp.2d at 1051. "The issue [] is whether the infringing activity constitutes a 'draw' for [customers of the vicarious infringer], not just an added benefit." *Harlan Ellison*, 357 F.3d at 1079. The plaintiff must demonstrate a causal connection between the infringement and a financial benefit received by the defendant or liability will not be found. *Id.*

Here, Mag cannot demonstrate that Cherokee has an obvious and direct financial interest in any alleged infringement of the Crystal Angel copyright. Cherokee did not receive royalty payments from Target that were specifically attributable to the Crystal Angel jewelry that is the subject matter of this lawsuit. (Undisputed Facts at ¶¶ 10-11.) Cherokee is not provided with

reports showing the number of Crystal Angel jewelry sold by Target during a given time period so that it could determine the amount of royalties, if any, it received from sale of the Crystal Angel jewelry. *Id.* at ¶¶ 11-12. In fact, Cherokee does not know whether it received any royalty payments for sales of the allegedly infringing product. *Id.* at ¶ 12. Without evidence of the required symbiotic financial relationship Cherokee cannot be held liable as a vicarious infringer.

**3. Cherokee Is Not A Contributory Infringer.**

For Cherokee to be liable as a contributory infringer, Mag must prove that Cherokee: 1) had knowledge of the infringing conduct of another; and 2) induced, caused, or materially contributed to the infringing conduct. *Ellison*, 357 F.3d at 1076. In addition, Mag must show that Cherokee had knowledge of the infringing conduct of another at the time Cherokee is alleged to have contributed to the infringement. *Metro-Goldwyn Mayer Studios, Inc.*, 380 F.3d at 1162. Here, the only arguable contribution Cherokee made to the alleged direct infringement was granting Target a license to use the Cherokee trademark at least two years before the alleged infringing sales occurred. There is no evidence that Cherokee had knowledge of the infringing conduct of another by virtue of the License Agreement, nor is there any evidence that the execution of the License Agreement induced, caused or materially contributed to the alleged infringing conduct. Mag, in fact, cannot even demonstrate that Cherokee knew of the alleged infringement or that Cherokee materially contributed to the infringement at any point in time. Consequently, Cherokee is not liable as a contributory infringer.

## IV. CONCLUSION

For the foregoing reasons, Cherokee's Motion for Summary Judgment should be granted.

CHEROKEE, INC.
By its Attorneys

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 (Tel)
(401) 455-0701 (Fax)

Dated: July 29, 2005

**CERTIFICATION**

TO:

Thomas A. Tarro, III, Esq.
Kris R. Macaruso Marotti, Esq.
The Law Firm of Thomas A. Tarro III, Esq.
The Summit East, Suite 330
300 Centerville Road
Warwick, RI 02886

Thomas R. Noel, Esq.
Noel & Gyorgy
50 South Main St.
Providence, RI 02903

I hereby certify that I caused a true copy of the within *Defendant Cherokee's Memorandum of Law in Support of its Motion for Summary Judgment* to be sent via First Class Mail to the above named counsel of record on the 29th day of July, 2005.

Linda Cardente

*H:\Clients\Target Corporaton.MAG\Style Fashion Jewelry - Mag\Pleadings\Cherokee Summary Judgment Memorandum.doc*