**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | |

**DEFENDANT STYLE ACCESSORIES, INC'S MOTION FOR SUMMARY JUDGMENT**

Defendant Style Accessories, Inc. ("Style") hereby moves for summary judgment under Rule 56 as to all claims of the plaintiff in this matter. The plaintiff's claim suffers from a complete lack of proof on the central element of a copyright infringement case: that this defendant, or any defendant or any party from whom they obtained the allegedly infringing work, *copied* the plaintiff's protected work. Moreover, the subject matter of the plaintiff's claimed copyright, a crude assembly of four stock, pre-set, off-the-shelf and commercially available crystal stones, is as a matter of law too basic for copyright registration, or is at least so basic as to be unenforceable as copyright does not protect the *idea* of what is basically a stick-figure angel comprised of simple geometric shapes.

Style hereby contemporaneously submits a Memorandum In Support, and a Rule 12.1 Statement of Undisputed Facts with Exhibits attached thereto.

WHEREFORE, Style Accessories, Inc. requests that the Court enter summary judgment in its favor, which will necessarily dispose of all claims against all defendants

in this matter, and that the Court award defendants their costs and reasonable attorneys' fees.

Dated: July 29, 2005

STYLE ACCESSORIES, INC.

By Their Attorneys,

Thomas R. Noel (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

**CERTIFICATION**

I do hereby certify that on the 29th of July, 2005, I served a true copy of this document to the following counsel of record by First Class Mail: Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

Ellen M. Brunelle

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC. Defendants | : | |

**DEFENDANT STYLE ACCESSORIES, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Mag Jewelry Co., Inc. ("Mag") alleges that the defendants are liable to Mag under 17 U.S.C. § 101 *et seq.* (the "Copyright Act"), for selling a common piece of costume jewelry widely known as a "crystal angel." Despite a mountain of uncontroverted evidence to the contrary, Mag claims that its principal was the original and first creator of a crystal angel piece and that, apparently, *because of this alone* and without regard to other legal requirements, it is entitled to collect damages from these defendants and others who sold crystal angel pieces.

The plaintiff's case fails as it ignores the central element of a copyright infringement claim -- copying. Style Accessories, Inc. ("Style") did not copy a Mag piece, there is no evidence to the contrary, and the sometimes-permissible inference of copying based on proof of access and similarity, as a matter of law must not be available to the plaintiff in this instance. The defendants also challenge the validity, strength, scope, and enforceability of

Mag's claimed copyright. Mag's claims fail as a matter of law for any one or more of several reasons, briefly summarized as follows:

- No evidence supports Mag's assertion that the defendants copied Mag's piece;
- The defendants' piece is derived from an independent creation of another crystal angel, sales of which began months before Mag's first claimed sale, and Mag has presented no evidence to the contrary;
- Because independent creations of nearly identical crystal angel designs predate and postdate Mag's claimed creation date, Mag cannot *infer* copying of its piece through proof of access and similarity;
- Mag's work is not original, and lacks even the minimum quantum of creativity necessary for copyright protection;
- Any similarities between Mag's angel and defendant's angel result from unprotectible design elements and cannot form the basis of copyright infringement;

## II. SUMMARY OF FACTS

### Mag's Crystal Angel

Mag claims to have been the original creator of a simple crystal angel jewelry piece comprised of commercially available, off-the-shelf, pre-set crystal rhinestones. That piece (the "Mag Angel") is formed by the juxtaposition of four Swarovski crystal stones – a circular stone for the head of the angel, a teardrop-shaped stone for the body of the angel, and two oblong or "navette" shaped stones for the wings of the angel on a flat surface. *Rule 12.1 Statement of Undisputed Facts* ("*Rule 12.1 Statement*") at ¶ 3. A circular, metal "jump ring" is attached as a halo. *Rule 12.1 Statement* at ¶ 4. The Mag Angel has no added artistic elements – no expression, no facial features, no hair, no hands, no feet, no robes, no garments, no wand or musical instrument. A true and accurate photograph of the Mag Angel is attached to Style's *Rule 12.1 Statement* as *Exhibit A* thereto.

**Defendants' Crystal Angel**

Defendant Style supplied a quantity of crystal angel pieces, in the form of necklace pendants, to co-defendant Target Stores, Inc. ("Target"), for approximately ten months beginning in August, 2001.[1] Style had been selling crystal angels in other configurations (i.e., as a pin and as earrings) to another customer since 1997. *See Deposition of Chad R. Mollica ("Mollica Depo.")*, relevant portions of which are attached to the *Rule 12.1 Statement at* ¶ 6 (Exhibit C thereto).

Style obtained the crystal angel pieces it first sold from a Rhode Island supplier called the Alan Gregerman Company. *Rule 12.1 Statement* at ¶ 8. That company's principal and namesake, Mr. Alan Gregerman, independently created the crystal angel piece in mid-1994, as will be discussed more fully, *infra*. *Id.* at ¶ 12. Mag became aware of Gregerman's creation in 1995, and Mag was aware of Gregerman's subsequent sales. *Id.* at ¶ 17. Style later had the Gregerman piece supplied by another Rhode Island entity, and then by a South Korean supplier. *Id.* at ¶ 9. The pieces Style sold to Target were adaptations of the Gregerman piece. *Id.* at ¶ 10.

The *Amended Complaint* states that Style made and sold crystal angels that were "copied from" the Mag crystal angel,[2] but the record is devoid of any facts supporting the contention that Style copied a Mag crystal angel. There is simply no evidence that the piece sold by the defendants was copied from or is an imitation of a Mag crystal angel. Style's principal, the individual who obtained the Gregerman angel, in fact did not know of Mag or

---

[1] *See Style Interrogatory Answers* dated December 30, 2004, relevant portions of which are attached to Style's *Rule 12.1 Statement* at ¶ 3 (Exhibit D thereto).

[2] *See Amended Complaint* filed on or about October 6, 2004, ¶ 19.

its copyright and had never seen a Mag crystal angel. *Rule 12.1 Statement* at ¶ 11.

**Mag's Copyright Registrations**

Mag first applied for copyright registration of its crystal angel, through its copyright attorney, in November, 1995. In that application, Mag claimed the "year of creation" of the work as 1995, and the "date of first publication" of the work as June 1, 1995.[3] Mag had taken pains to make a record of these critical dates. Nearly six months earlier, in June 1995, Mag president Daniel Magnanimi, its sales contractor, Donald Donnelly, and two Mag employees including its production manager executed a design log, shown below, verifying unequivocally that Mr. Magnanimi had designed the crystal angel, and that a model had been made on the same day -- June 1, 1995. The document, referred to herein as the "Design Log" was executed by Mr. Magnanimi and the three other individuals on June 1, 1995. *Rule 12.1 Statement* at ¶ 19. A true and accurate copy of the Mag Design Log concerning the Mag angel is attached to Style's *Rule 12.1 Statement* as *Exhibit H*. *See Rule 12.1 Statement* at ¶¶ 19-21.

Six months later, in November, 1995, Mag provided the Design Log to its copyright attorney, directing that an application for registration be submitted on Mag's behalf. *Rule 12.1 Statement* at ¶ 22. *See Letter* attached as *Exhibit I* thereto. Counsel did so, incorporating the claimed creation and publication dates Mag had supplied. A true and accurate copy of Mag's first crystal angel copyright, Registration VA 758-661, claiming a creation date and first publication date of June 1, 1995, is attached to Style's *Rule 12.1*

---

[3] The copyright application form requires an applicant to declare both dates in order to secure registration.

*Statement* as *Exhibit* J.[4] *Id.* at ¶ 23.

Beginning that same week, Mag began writing a series of cease-and-desist letters, through counsel, to what would eventually be *dozens* of companies and individuals who, according to letters themselves, were at that time already selling similar crystal angels. Over the next six months, through the middle of 1996, Mag sent at least nineteen letters demanding that recipients stop making and selling purportedly similar crystal angels and declaring that Mag had created its crystal angel on the date reflected on its Design Log and in its copyright registration – June 1, 1995. The letters typically began with the statement:

> "On June 1, 1995, our client completed designs for [sic] Austrian Crystal Angel . . . ."

Attached as *Exhibit K* to the *Rule 12.1 Statement* is a copy of the first such letter, dated November 21, 1995. *Id.* at ¶¶ 24, 26. Mag directed similar, largely identical letters, incorporating the June 1, 1995 creation date, to the following persons or entities on the following dates:[5] [*Rule 12.1 Statement* at ¶ 25]

| | | | |
|---|---|---|---|
| OLIT, Inc., Warwick, RI | Nov. 21, 1995 | D.M. Merchandising, Chicago, IL | Feb. 14, 1996 |
| Novelty Distributors, Greenfield, IN | Nov. 21, 1995 | ZUBLERS, Houghton Lake, MI | Feb. 14, 1996 |
| A S Manufacturing, E. Prov., R | Mar. 14, 1996 | Luc-co, Inc., Lincoln, RI | Feb. 15, 1996 |
| Bo'Tique Creations, Providence, RI | Jan. 3, 1996 | Lauren Creations, Providence, RI | Feb. 16, 1996 |
| Barry-Owen Co., Los Angeles, CA | Jan. 24, 1996 | Walter Heimler, Inc., New York, NY | Feb. 28, 1996 |
| Colorfuls, Inc., Dover, NJ | Jan. 24, 1996 | Wallace Brothers, Wilkes Barre, PA | Mar. 13, 1996 |
| Alan Gregerman, Inc., Warwick, RI | Jan. 29, 1996 | Dale Jewelry Co., Providence, RI | Apr. 1, 1996 |
| Royal of America, Providence, RI | Jan. 31, 1996 | Ocean State/Anatone, N. Providence, RI | May 1, 1996 |
| Oriental Trading Co., Omaha, NE | Feb. 1, 1996 | Sanford White, Central Falls, RI | May 1, 1996 |
| | | Eden Jewelry Co., Brooklyn, NY | May 8, 1996 |

The cease-and-desist letters not only incorporate Mag's original claimed creation date, but they evidence, by Mag's own admission, that the named recipients were selling "virtually

4 The date of registration for a copyright is generally the date on which the Copyright Office receives a fully completed application, deposit material showing the work for which registration is sought, and the registration fee. Registration VA 758-661 has an effective registration date of November 29, 1995.

5 Defendants have copies of each of the listed letters, and others.

identical" crystal angel pieces at times preceding the dates of the letters.

One such letter was directed to Rhode Island jewelry manufacturer Alan Gregerman. Gregerman recognized the crystal angel design was one he had himself created, nearly a year prior to the date cited in Mag's letter. Moreover, Gregerman knew that he had records of having sold his crystal angel in September 1994, and that it had been photographed and included in a catalog that winter, well before Mag's claimed creation date. *See Affidavit of Alan Gregerman ("Gregerman Aff.")*, a copy of which is attached to Style's *Rule 12.1 Statement* as *Exhibit F*. Gregerman retained legal counsel to rebut Mag's demands.

**The Gregerman Creation**

Alan Gregerman independently created his crystal angel during the Summer of 1994. *Rule 12.1 Statement* ¶ 12. He does not recall having seen any other crystal angel of similar design before making his. *Exhibit F* at ¶ 4. He first shipped his crystal angel in September, 1994, as reflected in his company's sales records.[6] *Rule 12.1 Statement* at ¶ 14. Mr. Gregerman at that time began selling his crystal angels to Treasure Chest, a catalog sales company that published a catalog under the trade name "Monarch Creations." Treasure Chest distributed up to 5,000 copies of that catalog beginning in January, 1995. *See Affidavit of David Beaupre ("Beaupre Aff.")*, a copy of which is attached to Style's *Rule 12.1 Statement* as *Exhibit G*, ¶¶ 2-4. A copy of the Monarch Creations catalog clearly depicting the Gregerman crystal angel is attached to the *Beaupre Affidavit*. *Rule 12.1 Statement* ¶ 15.

After receiving Mag's cease-and-desist letter, Gregerman instructed his counsel to rebut Mag's demands. His counsel at first notified Mag that Gregerman had independently

---

[6] Mr. Gregerman's angel is depicted at Tab 1 to the *Gregerman Affidavit*. Sales records are attached at Tab 2.

created the crystal angel Mag was then claiming and had done so "before 1995." *Rule 12.1 Statement* ¶ 26.

**Mag's Supplemental Registration**

Mag soon changed its story. After receiving and exchanging further correspondence with Mr. Gregerman's counsel (indeed, after asking Gregerman's counsel for more information),[7] Mag directed its copyright counsel to file an amendment to its original registration, which counsel did in June 1996. In its supplemental registration, Mag took the position that it had actually created the crystal angel not in June 1995, but more than three years earlier, in March, 1992. A copy of Mag's supplemental registration (indicating a "correction" of item 3(a) and item 3(b) to the original application), is attached to Style's *Rule 12.1 Statement* as *Exhibit M*.[8]

Mag's principal had apparently also seen a Monarch Creations sales catalog depicting Mr. Gregerman's crystal angel on page 9. Some time after the catalog's initial distribution, Beaupre received a telephone call from Mag, asking questions about the catalog and about Monarch itself. Mag never challenged Treasure Chest concerning the origin of or the right to sell its (Gregerman) crystal angels. *Rule 12.1 Statement* ¶ 17. Mag and Gregerman both eventually decided not to make claims against the other, each permitting the other to make and sell the crystal angel without interference. *Rule 12.1 Statement* ¶ 29. Mag later requested that Gregerman execute an assignment of his crystal angel rights over to Mag; Mr.

---

[7] *See* Letter from attorney Thomas A. Tarro to attorney Joseph Avanzato dated February 13, 1996, a true and accurate copy of which is attached to the Style *Rule 12.1 Statement* as *Exhibit L*.

[8] Mag offered no explanation to the Copyright Office how it misstated the date of creation or first publication – by more than three years – in its first application. Mag's later cease-and-desist letters jettisoned the earlier claimed "June 1, 1995" date of creation.

Gregerman did not do so. *Rule 12.1 Statement* ¶ 30. Gregerman began selling his crystal angels to Style in March 1996. *Rule 12.1 Statement* ¶¶ 7-8.

**Distribution of the Mag Angel**

Mag presently claims that it "published" its crystal angel by displaying it in its booth at jewelry shows beginning in March 1992. Despite this claimed display and publication, it didn't sell for three years. Though Mag claims it was displayed at jewelry shows beginning in March 1992, no one even requested a *sample* of the crystal angel until September 1994, and Mag has no records of sales of a piece it claims to be the crystal angel before March 1995. *Rule 12.1 Statement* ¶¶ 31-33.

**Other Crystal Angel Creations**

Aside from the Gregerman creation, there are other independent creations of similar crystal angel jewelry designs – some predating Mag's claimed creation -- and there were widespread sales of crystal angel pieces both prior to and contemporaneous with Mag's first sales.

In 1992, the year Mag now claims to have created its design, Catalogue Ventures, a Massachusetts company, produced a gift catalog depicting a similar four-stone crystal angel. Catalogue Ventures distributed approximately one million copies of its catalog during 1992. *Deposition of Robert Piro* ("*Piro Depo.*"), portions of which are attached to Style's *Rule 12.1 Statement* as *Exhibit* O, p. 31. The Catalogue Ventures crystal angel is depicted on page 75 of the catalog. *Rule 12.1 Statement* at ¶ *34*. Catalogue Ventures first obtained a sample of the crystal angel from its supplier, known as DMB Manufacturing, now believed to be defunct, *during the Spring of 1992*, in order to be ready for its 1992 catalog production:

Q. Okay. Now, before you started ordering samples, you had to select what samples that you wanted to consider. Would that be fair?

A. Yes. So that process would probably have been April and May of 1992 that we looked at items either, you know, at vendor showrooms or in their catalogs, and I don't know how we came to see that product. I would have ordered a sample, and that would have taken a few weeks to get. The next step is finalizing the selection of what we wanted to go into that, and on what page it was going to go, and all of that preparation. And that would have been in June to turn it over to our creative staff to produce the photography and do the layouts of the photography, et cetera.

*Rule 12.1 Statement* at ¶ *35*. That was just days or weeks after Mag's claimed March 1992 creation date, and nearly three years before Mag claims to have sold *any* of its angels. Mag never accused Catalogue Ventures of selling an item infringing a Mag creation. *Rule 12.1 Statement* at ¶ 35.

Nicholas Verrechia is a Rhode Island jewelry designer and jewelry model maker who worked in the jewelry business for more than twenty-five years. Mr. Verrechia has testified that he designed essentially the same crystal angel, comprised of four Swarovski crystal stones and a metal jump-ring halo -- in 1978 or 1979.[9] It appears similar in all respects to the later Mag angel, and Mr. Verrechia, upon inspecting the Mag angel, described the two designs as "substantially identical." *Rule 12.1 Statement* at ¶ 36-38. *Verrechia Aff.*, ¶ 9.[10]

One of the first lawsuits brought by Mag was against Bharat Dass, who obtained a copyright registration on a crystal angel design with a creation date of 1989, three years earlier than Mag's. Independent evidence demonstrates that Dass sold his crystal angels as

---

[9] *See Affidavit of Nicholas Verrechia* ("*Verrechia Aff.*"), attached to Style's *Rule 12.1 Statement* as *Exhibit P*. A copy of a sketch Mr. Verrechia had made of his angel is attached to his affidavit.

[10] Mr. Verrechia testified that he recalls designing the crystal angel while employed by a company called Empire Jewelry, and that he thinks the company made and shipped some quantity of the angels, though he had no first-hand knowledge of sales. Mag obtained testimony of one of the company's former owners who says Empire did not make or sell such items (and could not remember Mr. Verrechia as an

early as 1989, through a company he ran in Atlanta. Copies of Dass's copyright registration and the deposit filed with the Copyright Office showing his design are attached to Style's *Rule 12.1 Statement* at *Exhibit Q*. *Rule 12.1 Statement* at ¶ 39.

Dass settled the Mag lawsuit by assigning to Mag whatever rights he had in the crystal angel he had created. Dass, deposed in a later case, however, reaffirmed his earlier testimony against Mag,[11] identifying the crystal angel in his copyright application as his own. *Rule 12.1 Statement* at ¶ 40. Comparing the design features of a Mag crystal angel with the one he had created, Dass testified that the designs appeared to be "99 percent" the same. *Rule 12.1 Statement* at ¶ 41.

The issue of the competing Dass and Mag copyright registrations is less important than the simple *uncontroverted* fact that Dass was selling crystal angels as early as 1989 and continued selling them through the mid-1990's. Dass in fact did not exhaust his company's crystal angel inventory until after settling with Mag in 1997. Dass was questioned about two invoices showing 1990 sales of the "angelic crystal pin" by Dass's shop, "The Watch Factory." Dass ultimately relied on his testimony from the prior deposition to link the invoices with the crystal angel pins he had designed in 1989.[12] *Rule 12.1 Statement* at ¶ 41-42.

---

employee). Nevertheless, Mr. Verrechia's testimony concerning his creation of the crystal angel is clear and otherwise uncontradicted.

[11] *See Deposition of Bharat Dass ("Dass Depo.")*, relevant parts of which are attached to the *Rule 12.1 Statement* as *Exhibit R*. Mag's counsel had gone so far as to file a motion to quash the subpoenas issued for the Atlanta depositions, claiming they would be *irrelevant*.

[12] *See Dass Depo.(Exhibit R),*at pp. 36-41, and *Dass Depo. Exhibits 4 and 5* appended thereto.

A former Dass employee, Janice Wells, confirmed in deposition testimony in 1999 that she not only sold the crystal angels but also purchased one or two-dozen of them from Dass' Watch Factory as early as 1989, giving them out with holiday cards that season:[13]

Q. Do you recall purchasing crystal angel pins from Mr. Dass or The Watch Factory?

MR. TARRO: Objection.

A. Yes.

. . . . .

Q. Can you tell me what that date is?

MR. TARRO. Objection.

A. Around and about 1989.

Q. (By Mr. Noel) Can you tell me why you remember that specifically?

MR. TARRO: Objection.

A. Because my friend - a person that I gave one to, I just remember a circumstance happening in her life, the reason why I thought it would be good to give it to her. I remember that because she was pregnant and her daughter is ten so it must have been around that time.

*Rule 12.1 Statement* at ¶¶ 43-44. *Exhibit S* at pp. 12-14. Ms. Wells testified that she sold the same crystal angels when she became employed by Mr. Dass in the mid 1990's (*Rule 12.1 Statement* at ¶ 44; *Exhibit S* at p. 21), and she identified the angel depicted in the Dass copyright application as the same angel she had bought and sold. *Rule 12.1 Statement* at ¶ *44; Exhibit S* at pp. 15-16.

This uncontroverted evidence places Mag's claimed creation date -- whether taken to be June 1995 or March 1992 – *squarely in the middle* of the considerably crowded world of

---

13 *See Deposition of Janice Wells ("Wells Depo.")*, relevant portions of which are attached to the *Rule 12.1 Statement* as *Exhibit S*, at p. 21. *Rule 12.1 Statement* at ¶ 43.

crystal angel creations, crystal angel sales, and existing crystal angel copyrights. Though Mag claims to have created its crystal angel design independent of this flurry of other crystal angel activity, one fact remains uncontroverted: Mag cannot claim to have been the exclusive creator of this design. Additionally, Style obtained its angel from Gregerman; there is no evidence of copying of the Mag crystal angel.

## IV. ARGUMENT

### A. <u>The Legal Standard for Summary Judgment.</u>

Summary judgment must be granted where "there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Though a court must view a motion for summary judgment in the light most favorable to the non-moving party, if "the moving party has carried its burden under Rule 56(c), [the party] opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case "necessarily renders all other facts immaterial." *Id.* at 322-23.

### B. Style Is Not Liable for Copyright Infringement and Is Entitled to Summary Judgment As a Matter of Law.

In order to succeed on its claim of copyright infringement, Mag must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Calvin R. Johnson v. Allen Gordon, Jr.*, 409 F.3d 12 (1st Cir. 2005), *quoting Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). The plaintiff "bears the burden of proof as to both elements." *Id., citing Grubb v. KMS Patriots, L.P.*, 88 F.3d 1,3 (1st Cir. 1995). Mag must also prove "that the copying of copyrighted material was so extensive that it rendered the ... works substantially similar." *Yankee Candle Company, Inc. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001), *citing Segrets, Inc. v. Gillman Knitware Co.*, 207 F.3d 56, 60 (1st Cir. 2000). The essential elements of Mag's copyright case are therefore (1) ownership, (2) copying of protectible elements, and (3) substantial similarity. A copyright plaintiff must prove each element by a preponderance of the evidence.[14] Mag cannot do so.

A copyright, unlike a patent, does not prevent all others from making, using, or selling the protected material. A copyright prevents only the unauthorized *copying* of the *plaintiff's* protected work. "A copyright is not violated because a second work is similar when the two works stem from a common source" or are similar due to "coincidence, common source derivation or independent creation." *Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C.1978), *aff'd*, 607 F.2d 494 (D.C. Cir. 1979), *cert. denied sub nom.*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980). "[F]or just as a [copyright holder] is no

---

[14] A litigant, upon presentment of a copyright registration certificate in court, enters with a presumption of ownership, but such presumption is rebuttable by the defendant. *Id*; *Midway, supra,* 146 F. Supp. at 139.

less an 'author' because others have preceded him, so another who follows him is not a tort-feasor unless he pirates his work." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936). *See Allegrini v. DeAngelis*, 59 F. Supp. 248, 250 (E.D. Pa. 1945) (elements of plaster statuettes of religious symbols taken from a common source).

Independent creation of the accused work is therefore a defense to copyright infringement. *Grubb v. KMS Patriots,* 88 F.3d at 3. This principal arises from the axiom that "copyright protection has been extended only to the particular expression of an idea and not to the idea itself." *Franklin Mint, supra*, 575 F.2d at 64. "[C]opyright does not confer upon the owner a monopoly in the intellectual conception which it expresses." *Allegrini, supra.* This is why a copyright plaintiff must prove not only similarity, but also *copying* of the plaintiff's work.

The problem for Mag is that there is no evidence whatsoever that the crystal angels Style sold were copies of Mag crystal angels. Additionally, even if the uncontroverted evidence of the actual source of the defendants' angel were to be ignored, in light of the crowded nature of the crystal angel market, it could not be inferred that Style's access to Mag's work was more likely than access to one of the numerous other crystal angels on the market.

**1. Mag Is Unable to Prove Copying of the Mag Crystal Angel.**

In order for Mag to prevail in this action, it must establish that it was a *Mag* crystal angel, not some other crystal angel, that Style obtained. "To show actionable copying … a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter." *Lotus Development., supra*, 49 F.3d at 813. "If there is no copying, there can be no infringement." *Franklin Mint, supra,* 575 F.2d at 64, citing *Mazer v. Stein*, 347

U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630 (1954). "No matter how similar the two works may be (even to the point of identity), if the defendant did not copy the [copyrighted] work, there is no infringement." *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976).

The evidence is uncontroverted that Style obtained, from Alan Gregerman, the Gregerman angel. Style *Rule 12.1 Statement*, ¶¶ 7-8. There is no evidence whatsoever contradicting that position, and there is no evidence whatsoever that Style ever obtained a Mag angel or had the Mag angel copied. *Rule 12.1 Statement* at ¶ 11. Neither is there any evidence contradicting the position that Gregerman created his crystal angel independently, without reference to or knowledge of the Mag creation, whenever it occurred.[15] *Rule 12.1 Statement* at ¶ 12. In the summary judgment arena:

> absent specific facts discrediting testimony from a witness associated with the movant, and absent a direct conflict in the testimony, the opponent (although entitled to have his or her evidence taken as true) is not entitled to have the defendant's evidence positively disbelieved.

*Grubb v. KMS Patriots,* 88 F.3d at 4. Mag simply cannot satisfy its burden on the critical element of copying.

It is true that a plaintiff need not rely on direct evidence of copying. Copying may, in an appropriate case, be inferred from a showing that a defendant had access to the copyrighted work and that the allegedly infringing work is substantially similar:

> [A plaintiff] may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity). The plaintiff must then prove that the copying of copyrighted material was so

---

[15] Indeed, Gregerman's angel appeared in the Treasure Chest catalog during the Winter of 1994-95, significantly before Mag ever sold its first piece. Style *Rule 12.1 Statement*, ¶ 15.

> extensive that it rendered the offending and copyrighted works substantially similar.

*Lotus Development., supra*, 49 F.3d at 813. In order to satisfy its burden of proving access, however, the plaintiff "*must produce evidence* from which a reasonable finder of fact could infer that the defendant had a reasonable opportunity to copy his or her work.... Evidence that only creates a 'bare possibility' that the defendant had access is not sufficient to create a factual issue as to copying." *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996)(emphasis added; citations omitted).

In this case, the inference of copying is unavailable to Mag as a matter of law. The crowded nature of the crystal angel market at all relevant times renders any inference of copying based on evidence of access meaningless. Style, which began purchasing and reselling the crystal angels from Gregerman in 1996, had the same theoretical access to all of the crystal angels in a crowded market. The uncontradicted record demonstrates that:

- Mr. Verrechia made crystal angels twenty years ago;
- Mr. Dass was selling them in 1989;
- Mr. Piro distributed a million catalogs depicting another angel in 1992-1993; and
- Mr. Gregerman was selling his angels (and Mr. Beaupre was advertising them) in 1994.

Not only were the Verrechia, Dass, Gregerman and Catalog Ventures angels on the market, so too were dozens of others as demonstrated by the plethora of Mag's own cease-and-desist letters commencing in 1995.[16]

---

[16] Mag will no doubt respond that *all* of the angels targeted in its cease-and-desist letters were in reality knock-offs of the Mag angel, but Mag has never provided evidence from which such a conclusion could be made.

Mag must not be permitted to speculate that, if any crystal angel was copied, it *must* have been theirs. "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." *Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 505 (D.N.J. 1990), citing *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988). *See Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C. 1978), *aff'd*, 607 F.2d 494 (D.C.Cir. 1979), *cert. denied sub nom.*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980) (Proof of access "requires sufficient, affirmative and probative evidence to support that claim.") Speculation and conjecture is the only thing Mag has in this case regarding access to or copying of a *Mag* angel.

Of importance under the facts presented, the existence of other, similar works has been held relevant to *rebut* an inference of copying based on a suggestion of access and copying. *See Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978) (bare claim of access was "negated," as copyrighted musical work "had precursors and predecessors"); *Granite Music Corp.*, 532 F.2d at 720 ("evidence demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great"). Here the evidence conclusively establishes a number of several independent creations of similar crystal angel jewelry designs, further tipping the scale away from any suggestion that Mag's design was copied.[17]

---

[17] Where other similar works exist, Mag alternatively could attempt to prove that the Style copied from works that were themselves infringing copies of the Mag piece, but Mag has not done so. *See Kepner-Tregoe, Inc., supra*, 203 U.S.P.Q. at 127 (plaintiff, "while arguing that Defendants' copying from others who, in turn, copied from [plaintiff] is no defense, did not offer proof that any of the third-party materials had been copied from [plaintiff]"). Mag has adduced no evidence tracing the origins of the suppliers' crystal angels at all. It cannot be permitted to rely on unsupported, self-serving speculation that a Mag crystal angel was copied.

**2. Mag's Copyright Registrations Are Invalid As a Matter of Law.**

"The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist*, 499 U.S. at 345, 111 S.Ct. at 1287. "Originality" in the copyright context is taken to mean "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* The record simply belies Mag's claim of original authorship, and summary judgment is required on both points as a matter of law.

a. Mag Cannot Claim That Its Work Is Original.

If access and similarity gives rise to an inference of copying as against a copyright defendant, then as a matter of law, Mag is subject to the same inference – that it copied its piece from a substantially similar pre-existing work.

> Upon proof by a defendant that a plaintiff had access to similar prior works, the burden of proving originality shifts back to plaintiff. … To show a lack of originality and thereby rebut a plaintiff's registration certificate, a defendant should, in the absence of direct proof of copying, make the same showing of copying by plaintiff required in a prima facie infringement case, i.e., access and substantial similarity….

*Midway*, 546 F. Supp. at 139-140. The inference of copying based on access and substantial similarity, as a matter of logic as well as of law, is no less likely to be true as against Mag than the inference that Style copied a Mag piece rather than one or more of the many crystal angels on the market.

Mag sought copyright registration in 1995, claiming that its principal had made an original creation of the crystal angel earlier that year. Mag even took the defensive measure of having four of its officers and employees execute a design log as evidence of a June 1995 creation. After it was confronted with the news that Mr. Gregerman had created a similar

crystal angel "before 1995," Mag amended its registration to claim creation more than three years earlier.

Regardless of which of Mag's two claimed dates of creation one selects, however, *uncontroverted* facts demonstrate the existence of virtually identical crystal angel designs, created and sold on the market prior to and contemporaneous with either creation date:

- the Verrechia and Dass angel activity predates all activity claimed by Mag;
- the Piro (Catalogue Ventures) angel activity is contemporaneous with Mag's claimed 1992 date; and
- the Gregerman and Beaupre activity predates Mag's claimed 1995 date.

If Mag copied from one of the above-listed works or any other work, Mag's copyright is invalid due to lack of originality. Mag will attempt to inject its claim of *independent* creation as a disputed fact on this point, but Mag has no more evidence, and no less, to support its contention that Style copied the Mag piece than there is to support the contention that Mag copied any one of the number of pieces in the crowded crystal angel market prior to Mag's claimed creation. As a matter of law, therefore, Mag cannot establish "originality" in the copyright context by a *preponderance* of the evidence, and its claim must fail.

b. Mag's Crystal Angel Is Not Subject to Copyright Protection Because It Contains An Insufficient Degree of Creativity.

The principal that "copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity" is "a constitutional matter." *Feist*, 499 U.S. at 363, 111 S.Ct. at 1297. The Mag crystal angel, like so many others, depicts in its most basic form a simple representation of a common theme in the mind's eye: an angel. Mag did no more than juxtapose four preset stones -- common, off-the-shelf rhinestones that Mag regularly kept in stock purchased from a major supplier -- to depict the head, body, and

two wings of an angel. The angel is utterly featureless; it has no expression, no appendages, no wardrobe, no ornamentation, and no accessories. Mag's crystal angel is devoid of all artistic or creative features and is, in effect, a stick figure composed of shapes.

In Yankee Candle, the court found that a "collection of common geometric shapes ...[is] not sufficiently original to qualify for copyright protection." 259 F.3d at 35 (candle jar label artwork). Similarly, the simple and mechanical assemblage of four commonly available crystal stones by Mag does not rise to the level of the "minimal degree of creativity" required for copyright protection. In *M&D Int'l Corp. v. Chan*, 901 F. Supp. 1502 (D. Hawaii 1995), the court found that the competing copyright registrations of the plaintiff and defendant were invalid. The works at issue: simple representations of common Hawaiian themes such as hibiscus flowers, pineapples, a rose, and an oyster, comprised of arrangements of stock Swarovski crystal stones. 901 F. Supp. at 1506. The court explained:

> The selection and arrangement of the stock pieces comprising these crystal sculptures lack the necessary degree of creativity and originality to give rise to original works of authorship.... The selection and arrangement of these works are limited by the structural simplicity of the natural subject matter -- i.e., the ideas -- they depict, ... and, at the other end, by the limited array of *prefabricated components* used for their expression. Given these constraints, *the manner in which the parties selected and arranged these parts was more mechanical and inevitable than creative and original.*

*Id.*, at 1509 (citations omitted)(emphasis added). The court found that the existence of similar "preexisting works previously and widely published, registered or released into the public domain" by competitors further undermined any claim of originality. *Id.*, at 1516.

Similarly, in *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971), the court upheld a finding of non-infringement in a case involving two "jeweled bees":

> We think the production of jeweled bee pins is a larger private preserve than Congress intended to be set aside in the public market without a patent. A

> jeweled bee pin is therefore an 'idea' that defendants were free to copy.... There is no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both.

446 F.2d at 742. The court found the work to have been so simple as to be a merger of idea and expression.

The Mag crystal angel depicts the most basic form of an angel. The same generic angel features present in the Mag design appear in numerous other angel jewelry designs and also commonly appear outside the jewelry context.[18] Indeed, the shape of Mag's crystal angel is akin to the shape created when a child makes a "snow angel." Mag did not "create" its design; it merely arranged four commonly available off-the-shelf rhinestones into a form depicting the head, body, and wings of an angel, and added a common jump ring for the halo. The arrangement of the stones was "more mechanical and inevitable than creative and original," and many others have conceived of the exact same arrangement. Accordingly, the Court should find Mag's copyright registration invalid as a matter of law. Further, the field of crystal angels is so crowded with similar designs as to negate any presumption that Mag's design contains the minimum degree of creativity necessary for copyright protection.

**3. Mag's Claim Fails Because Any Similarity Between the Works Is Based on Unprotectible Design Elements.**

Even if Mag's copyright is not held to be invalid -- and as demonstrated herein it should be -- the copyright is virtually unenforceable. That is because ideas themselves are not protectable under copyright law. The comparison between a plaintiff's work and the defendant's in assessing substantial similarity "must be informed by a key theoretical

---

[18] Merely translating a public domain design into a different medium does not rise to the level of originality necessary to support copyright protection. *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir. 1976).

foundation of copyright law: that ideas cannot be copyrighted.... Because of this dichotomy between 'idea' and 'expression,' only the 'protected expression' is relevant to an evaluation of substantial similarity." *Yankee Candle*, 259 F.3d at 33-34 (citations omitted). The court must perform a "dissection" of the plaintiff's work to eliminate non-protected elements from the substantial-similarity comparison. *Id.* Where, as here, the idea merges with the expression of the idea, there can be no infringement:

> Some ideas admit of only a limited number of expressions. When there is essentially only one way to express an idea, the idea and its expression are inseparable and copyright is no bar to copying that expression....When the idea and its expression are not completely inseparable, there may still be only a limited number of ways of expressing the idea.

*Concrete Machinery*, 843 F.2d at 606 (realistic-looking lawn ornaments such as lifesize deer).

Any similarity between the Mag work and the piece Style sold arises from a similarity of unprotectible elements in the Mag piece that are present as a matter of necessity to depict a simple angel shape. See *Gemmy Industries Corp. v. Chrisha Creations Ltd.*, 2004 U.S. Dist. Lexis 11468, *17, 72 U.S.P.Q.2d 1409 (D.S.N.Y. 2004)(no infringement because "stereotypical features of a Santa, pumpkin, and snowman are not protected by copyright as a matter of law"); *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500-01 (2d Cir. 1982)(stuffed snowmen of similar size with traditional snowmen features); *Herbert Rosenthal, supra* (pin of a jeweled bee); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc.*, 509 F.2d 64, 65 (2d Cir. 1974) (no infringement of gold turtle pin where similarities were result of fact that "all turtles are created more or less along the same lines"); Country Kids 'N City Slicks, Inc. v. Carousel Kids, 77 F.3d 1280 (10th Cir. 1996)(wooden paper-doll-shaped figures with "typical" paper doll features); *Trifari, Krussman & Fishel,*

*Inc. v. B. Steinberg-Kaslo Co.*, 144 F. Supp. 577, 580 (S.D.N.Y. 1956) (jeweled pin representing hansom cab was unprotectible idea).

The crowded crystal angel field is relevant in this analysis. Evidence of similar third-party creations demonstrates "that many minds laboring on the same problem have been unable to produce greatly different expressions of the ideas at issue . . . [and] implies limited range of expression is possible. . . ." *See Kepner-Tregoe, Inc. v. Carabio*, 1979 U.S. Dist. LEXIS 12910 *4 n.2 (E.D. Mich. 1979). This is particularly true where, as here, the design reflects a common or generic image and requires the plain conclusion as a matter of law that Mag's work is not properly subject to copyright protection.[19]

Permitting Mag to protect its angel would invite jewelry designers to seek monopolies over other generic designs, like a snowman made of three circular stones, a pumpkin, a generic Santa, or a Christmas tree. The First Circuit has warned against giving a party the ability to "exhaust all possibilities of future use" of a design for which there are only a limited number of expressions as it would render "copyright a game of chess in which the public can be checkmated." *Concrete Machinery*, 843 F.2d at 607 n.7. Mag should not be permitted to claim an exclusive market in the idea of an angel form comprised of stock crystal stones. Doing so would contravene the purpose of copyright law to the detriment of artisans and designers and to the consuming public.

[19] Other non-culpable sources of similarities in works include the public domain or folk custom. *Alexander v. Haley*, 460 F. Supp. 40, 45 (S.D.N.Y. 1978)(discussing the literary work *Roots* and the sources Haley drew from in devising his scenes; "where common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement").

## V. CONCLUSION

Summary judgment must be granted as there is absolutely no evidence that Style copied a Mag crystal angel, and given the crowded crystal angel market, no inference of copying is permissible in this case. Additionally, the registration by which Mag claims rights should be ruled invalid as a matter of law as the copyright laws were never intended to grant monopolies over ideas so crudely expressed as the Mag angel. The crowded nature of the crystal angel market renders meaningless any inference of validity that Mag may have obtained from the mechanical act of copyright registration.

Dated: July 29, 2005

STYLE ACCESSORIES, INC.

By Their Attorneys,

[signature]

Thomas R. Noel (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

## CERTIFICATION

I do hereby certify that on the 29th of July, 2005, I served a true copy of this document to the following counsel of record by First Class Mail: Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

Ellen M. Brunelle