**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | |

**DEFENDANT STYLE ACCESSORIES, INC.'S**
**RULE 12.1 STATEMENT OF UNDISPUTED FACTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Style Accessories, Inc. ("Style") submits that the following facts are undisputed facts in the above-captioned action, for which summary judgment is sough on behalf of the defendants.

1. Mag Jewelry Co., Inc. ("Mag") alleges that the defendants are liable to Mag under 17 U.S.C. § 101 *et seq*. (the "Copyright Act"), for selling a common piece of costume jewelry widely known as a "crystal angel." [*See* Mag's Amended Complaint]

2. Mag claims that its principal was the original and first creator of the crystal angel piece cited in plaintiff's Amended Complaint. [*See* Mag's Amended Complaint]

3. The "Mag Angel" is formed by four Swarovski crystal rhinestones – a circular stone for the head, a teardrop or pear-shaped stone for the body, and two oblong or "navette" shaped stones for the wings. The Mag crystal angel is depicted in *Exhibit A*, attached hereto. [Mag's Answers to Interrogatories dated December 23, 2004 ("Mag Int. Ans."), relevant portions of which are attached to this *Statement* as *Exhibit* B, at Ans. No. 4.]

4. The crystals used are stock, pre-set, off-the-shelf crystal stones, obtained by Mag and available commercially from a supplier of crystal rhinestones (either Swarovski or another dealer of Swarovski stones). [*Id.*] Mag does not cut or reshape the crystal stones it purchases for the Mag angel in any way. A circular, metal "jump ring," also purchased from a commercial supplier, is attached as a halo. [*Id.*]

5. The Mag Angel has no added artistic elements such as facial expression, facial features, hair, hands, feet, robes, garments, wand or musical instrument. [*See Exhibit A*]

6. Defendant Style Accessories, Inc. ("Style") supplied a quantity of crystal angel pieces, in the form of necklace pendants, to co-defendant Target Stores, Inc. ("Target"), for approximately ten months beginning in August, 2001. [*See Answer;* Deposition of Chad R. Mollica ("*Mollica Depo.*"), relevant portions of which are attached hereto as *Exhibit C*; Interrogatory Answers of Style Accessories, Inc. ("*Style Int. Ans.*"), relevant portions of which are attached hereto as *Exhibit D*, Ans. No. 9.]

7. Style had been selling crystal angels as a pin and as earrings to another customer since March 1996. [*Style Int. Ans. No 7 (Exhibit D.*] A true and accurate copy of an invoice to Seta Corporation is attached hereto as *Exhibit E.*

8. Style obtained the crystal angel pieces it first sold from a Rhode Island supplier called the Alan Gregerman Company. [Style Int. Ans. (*Exhibit D*), Nos. 5, 7, and 9; *Mollica Depo*. (*Exhibit* C) at pp. 33-34]

9. Style later had the Gregerman piece supplied by another Rhode Island entity, and then by a South Korean supplier. [*Style Int. Ans*. (*Exhibit D*), Nos. 5, 7, and 9.]

10. The pieces Style sold to Target were adaptations of the Gregerman piece. [*Style Int. Ans*. (*Exhibit D*), No. 9]

11. Style did not copy a Mag angel, and there is no evidence to support Mag's assertion that the Style copied a Mag angel. Style's principal, Mr. Mollica, the individual who obtained the Gregerman angel, in fact did not know of Mag or its copyright when he obtained the Gregerman angel from Gregerman. [Mollica Depo. (*Exhibit* C) at p. 46]

12. The principal of the Alan Gregerman Company, Mr. Alan Gregerman, independently created the crystal angel piece in mid-1994. Gregerman's creation was original; he had not seen a similar piece of jewelry prior to creating his crystal angel. [Affidavit of Alan Gregerman (*"Gregerman Aff."*), attached hereto as *Exhibit F*, ¶¶ 2-4]

13. The Gregerman angel is comprised of four Swarovski crystal stones – one each to represent the head, body, and two wings of an angel. The head was a round stone, the body was pear-shaped (wider end downward), and the wings were matching navette stones. [*Gregerman Aff.* (*Exhibit F*) at ¶ 4] The Gregerman angel is shown at Tab 1 to the *Gregerman Affidavit.*

14. Gregerman first sold his crystal angels in 1994, to Treasure Chest, Inc., a company in Rumford, Rhode Island that sells jewelry, gift, religious, and ornamental items under the trade name of "Monarch Creations." Gregerman first shipped a quantity of his angels to Treasure Chest in September, 1994. [*Gregerman Aff.* (*Exhibit F*) at ¶ 5; Affidavit of David Beaupre ("*Beaupre Aff.*"), attached hereto as *Exhibit G*, ¶¶ 1-3] A "Delivery Receipt" dated September 20, 1994 is attached to the *Gregerman Affidavit* at Tab 2.

15. Treasure Chest photographed the Gregerman angel in September 1994 for inclusion in its "Monarch Creations – Retail Catalog 1995," of which distribution began in January 1995. Relevant portions of that catalog are attached to the *Beaupre Affidavit* (*Exhibit G*) at ¶¶ 3-4. The Gregerman angel appears on page 9 of the Monarch Creations catalog.

16. The defendants' piece is therefore derived from an independent creation of another crystal angel (not Mag's crystal angel), sales of which began months before Mag's first claimed sale, and Mag has presented no evidence to the contrary.

17. Mag became aware of Gregerman's creation in 1995, and Mag was aware of Gregerman's subsequent sales. [*Exhibit G* at ¶ 5] Some time after the catalog's initial distribution, Mr. Beaupre received a telephone call from Mag, asking questions about the catalog and about Monarch itself. Mag never challenged Treasure Chest concerning the origin of or the right to sell its Gregerman crystal angels.

18. Mag first applied for copyright registration of its crystal angel, through its copyright attorney, in November, 1995. In that application, Mag claimed the "year of creation" of the work as 1995, and the "date of first publication" of the work as June 1, 1995. [*Amended Complaint*]

19. Mag had made a record of these critical dates. Nearly six months earlier, in June 1995, Mag president Daniel Magnanimi, its sales contractor, Donald Donnelly, and two Mag employees including its production manager executed a design log verifying that Mr. Magnanimi had designed the crystal angel, and that a model had been made on June 1, 1995. A true and accurate copy of the Mag Design Log, as produced by Mag in discovery, is attached hereto as *Exhibit H*.

20. The Design Log states in relevant part as follows:

> "Enclosed is a design that was produced by **Mag Jewelry Co. Inc.**. This design was designed by _Daniel Magnanimi_ an employee of Mag Jewelry Co. Inc. on the Day Of _1_ Month of _June_ Year Of. _95_. This is an original design and the model was made by:
> _Mag Jewelry Co._ for a cost of ______ on the Date of _6/1/95_. Copy of Design Enclosed. Angel Lapel Pin & Necklace & Earrings
> Daniel J. Magnanimi, President"

[*Exhibit H*]

21. Mr. Magnanimi had in fact drawn up the Design Log form himself. All four individuals executing the Design Log did so on June 1, 1995. [*Exhibit H*]

22. Six months later, in November, 1995, Mag provided the Design Log to its copyright attorney, directing that an application for registration be submitted on Mag's behalf. A true and accurate copy of a letter from Mag to Elliot Salter, Esq., as produced by Mr. Salter in discovery, is attached hereto as *Exhibit I.* The letter notes: "All paper work enclosed as to when this design was produced." [*Id.*]

23. Counsel applied for copyright of the Mag crystal angel incorporating the claimed creation and publication dates Mag had supplied. A true and accurate copy of Mag's first crystal angel copyright, Registration VA 758-661, with an effective registration date of November 29, 1995, claiming a creation date and first publication date of June 1, 1995, is attached hereto as *Exhibit J.*

24. The same week as its copyright application was submitted, Mag began writing a series of cease-and-desist letters, through counsel, to companies and individuals who Mag claimed were at that time already selling similar crystal angels. The letters typically began with the statement:

> "On June 1, 1995, our client completed designs for [sic] Austrian Crystal Angel . . . ."

Attached as *Exhibit K* hereto is true and accurate copy of the first such letter, dated November 21, 1995.

25. Through May, 1996, Mag sent at least twenty similar, largely identical cease-and-desist letters, incorporating the June 1, 1995 creation date, to the following persons or entities on the following dates:[1]

| | | | |
|---|---|---|---|
| OLIT, Inc., Warwick, RI | Nov. 21, 1995 | ZUBLERS, Houghton Lake, MI | Feb. 14, 1996 |
| Novelty Distributors, Greenfield, IN | Nov. 21, 1995 | Luc-co, Inc., Lincoln, RI | Feb. 15, 1996 |
| Bo'Tique Creations, Providence, RI | Jan. 3, 1996 | Lauren Creations, Providence, RI | Feb. 16, 1996 |
| Venue, Inc, Warwick, RI | Jan 19, 1996 | Walter Heimler, Inc., New York, NY | Feb. 28, 1996 |
| Barry-Owen Co., Los Angeles, CA | Jan. 24, 1996 | Wallace Brothers, Wilkes Barre, PA | Mar. 13, 1996 |
| Colorfuls, Inc., Dover, NJ | Jan. 24, 1996 | A S Manufacturing, E. Prov., RI | Mar. 14, 1996 |
| Alan Gregerman, Inc., Warwick, RI | Jan. 29, 1996 | Dale Jewelry Co., Providence, RI | Apr. 1, 1996 |
| Royal of America, Providence, RI | Jan. 31, 1996 | Ocean State/Anatone, N. Providence, RI | May 1, 1996 |
| Oriental Trading Co., Omaha, NE | Feb. 1, 1996 | Sanford White, Central Falls, RI | May 1, 1996 |
| D.M. Merchandising, Chicago, IL | Feb. 14, 1996 | Eden Jewelry Co., Brooklyn, NY | May 8, 1996 |

26. Gregerman, after receiving Mag's cease-and-desist letter, instructed his counsel to rebut Mag's demands. Gregerman's counsel first notified Mag that Gregerman had independently created the crystal angel "before 1995." A true and accurate copy of the letter from attorney Joseph Avanzato to Mag's counsel is attached at Tab 4 to the *Gregerman Affidavit* (*Exhibit F*).

27. A true and accurate copy of the response letter from Mag's counsel to Mr. Avanzato, requesting more information, is attached hereto as *Exhibit L.*

28. Mag thereafter directed its copyright counsel to file an amendment to its original registration, which counsel did in June 1996. A copy of Mag's supplemental registration, Reg. VA 787-020 (indicating a "correction" of item 3(a) and item 3(b) to the original application), is attached hereto as *Exhibit M.*

29. Mag and Gregerman both eventually decided not to make claims against the other, each permitting the other to make and sell the crystal angel without interference, as

---

[1] Copies of the letters, obtained from Mag in discovery, will be made available at the Court's request. Defendants assume Mag does not dispute the above identification of the letters.

evidenced by a letter written by Mr. Magnanimi to Mr. Gregerman in September 1996 (attached to the *Gregerman Affidavit (Exhibit F)* at ¶ 9).

30. Mag later attempted to get Gregerman to execute an assignment of his crystal angel rights over to Mag and sent him a blank assignment form (attached to the *Gregerman Affidavit*). Mr. Gregerman did not execute the assignment. [*Gregerman Affidavit* at ¶ 9.

31. Mag presently claims it first "published", i.e., displayed its crystal angel in February 1992, by including it in its line of jewelry at industry trade shows. Mag has absolutely no records, photographs, or documents of any kind evidencing this claim.

32. Mag presently claims to have first shipped a sample of its crystal angel two-and-one-half years later, in September 1994, to a company known as Merlite, as reflected in a document titled "Purchase Order" produced by Mag in discovery, attached hereto at *Exhibit N* (first three pages thereof, "Bates" stamped 009-011). The crystal angel is not identified by name thereon.

33. Mag claims its first record of sales of its crystal angel occurred six months later, in March 1995, more than three years after the date Mag claims it was created and first published for sale, as reflected in another "Purchase Order" attached hereto as *Exhibit N* ("Bates" stamp 012).

34. In 1992, Catalogue Ventures, a Massachusetts company, produced a gift catalog depicting a similar four-stone crystal angel. Catalogue Ventures distributed approximately one million copies of its catalog during 1992. [*Deposition of Robert Piro* ("*Piro Depo.*"), portions of which are attached hereto as *Exhibit* O, pp. 27-31.] The Catalogue Ventures crystal angel is depicted on page 75 of the catalog.

35. Catalogue Ventures first obtained a sample of the crystal angel from its supplier, known as DMB Manufacturing, now believed to be defunct, *during the Spring of* 1992 (*Id.*), just days or weeks after Mag's claimed March 1992 creation date, and nearly three years before Mag claims to have sold *any* of its angels. Mag did not accused Catalogue Ventures of selling an item infringing a Mag creation.

36. Nicholas Verrechia is a Rhode Island jewelry designer and jewelry model maker who worked in the jewelry business for more than twenty-five years. Mr. Verrechia designed essentially the same crystal angel, also comprised of four Swarovski crystal stones and a metal jump-ring halo in 1978 or 1979. [*Affidavit of Nicholas Verrechia* ("*Verrechia Dep.*"), and the affidavit he had supplied to counsel *("Verrechia Aff.")*, attached hereto as *Exhibit P.*]

37. A copy of a sketch Mr. Verrechia made of his angel is attached to his affidavit. Mr. Verrechia, upon inspecting the Mag angel, described the two designs as "substantially identical." *Verrechia Aff.*, ¶ 9.

38. Mr. Verrechia testified that he recalls designing the crystal angel while employed by a company called Empire Jewelry, and that he thinks the company made and shipped some quantity of the angels, though he admitted he had no first-hand knowledge of sales. [*Exhibit P* at ¶ 6]

39. Bharat Dass obtained a copyright registration on a crystal angel design he made in 1989, three years earlier than Mag's. Copies of the Dass copyright registration and the deposit filed with the Copyright Office showing his design are attached as *Exhibit Q*.

40. Dass sold his crystal angels as early as 1989, through a company he ran in Atlanta. [Deposition of Bharat Dass ("*Dass Depo.*"), relevant portions of which are attached

hereto as *Exhibit R*.] Mag sued Dass but later dropped its claims in return for an assignment by Dass of his rights to the crystal angel he had created. *Id.*

41. Dass, deposed in a later case, reaffirmed his earlier testimony against Mag, identifying the crystal angel in his copyright application as his own. [*Exhibit R* at p. 65] Comparing the design features of a Mag crystal angel with the one he had created, Dass testified that the designs appeared to be "99 percent" the same. [*Exhibit R* at pp. 66-67]

42. Dass was selling crystal angels as early as 1989. Dass identified two invoices showing 1990 sales of the "angelic crystal pin" by Dass's shop, "The Watch Factory," in Atlanta. [*Exhibit R* at pp. 36-41, and *Dass Depo. Exhibits 4 and 5* appended thereto]

43. A former Dass employee, Janice Wells, confirmed in deposition testimony in 1999 that she not only sold the crystal angels but also purchased one or two-dozen of them from Dass' Watch Factory as early as 1989, giving them out with holiday cards that season. [*Deposition of Janice Wells ("Wells Depo.")*, relevant portions of which are attached hereto as *Exhibit S* at pp. 12-14 and p. 21]

44. Ms. Wells testified that she sold the same crystal angels when she became employed by Dass in the mid 1990's [*Exhibit S* at p. 21], and she identified the angel depicted in the Dass copyright application as the same angel she had bought and sold. [*Exhibit S* at pp. 15-16]

Dated: July 29, 2005

STYLE ACCESSORIES, INC.

By Their Attorneys,

TRN

Thomas R. Noel (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

**CERTIFICATION**

I do hereby certify that on the 29th of July, 2005, I served a true copy of this document to the following counsel of record by First Class Mail: Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

Ellen M. Brunelle