**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. | : | |
| Plaintiff | : | |
| VS. | : | C.A. NO.: 04-174T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC. | : | |
| Defendants | : | |

**OBJECTION TO DEFENDANT, CHEROKEE, INC.'S, MOTION FOR SUMMARY JUDGMENT**

Now comes your Plaintiff, Mag Jewelry Co., Inc., and objects to the Motion for Summary Judgment filed by the Defendant, Cherokee, Inc., on the grounds that the Defendant is not entitled to judgment from this Court based on the facts and circumstances of this case and the applicable law.

In support of its Objection, Plaintiff relies on the accompanying Memorandum of Law.

MAG JEWELRY CO., INC.
By its Attorney,

Thomas A. Tarro III, Esq. #2046
THE LAW FIRM OF THOMAS A. TARRO III
The Summit East, Suite 330
Centerville Road
Warwick, RI 02886
(401) 737-7200
(401) 732-3362 (facsimile)

Of Counsel:

Robert W. Clarida Esq. #3190
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9266
(212) 575-0671 (facsimile)

**CERTIFICATION**

I hereby certify that I mailed a copy of the above Objection regular mail on the 9th day of September, 2005 to:

Craig M. Scott, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas R. Noel, Esq.
NOEL & GYORGY, LLP
50 South Main Street
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MAG JEWELRY CO., INC. :
:
VS. : C.A. NO.: 04-174T
:
CHEROKEE, INC., ROBERT MARGOLIS :
AND TARGET CORPORATION d/b/a :
TARGET STORES and STYLE ACCES- :
SORIES, INC. :
Defendants :

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CHEROKEE, INC.'S MOTION FOR SUMMARY JUDGMENT**

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered in favor of the moving party:

> "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Summary judgment is an extreme remedy and will not be granted unless the moving party can establish that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. In ruling upon a motion for summary judgment, the Court does not pass upon the weight or the credibility of the evidence but must consider the affidavits and other pleadings and all reasonable inferences to be culled therefrom in the light most favorable to the non-moving party. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Dunfey v. Roger Williams University, 824 F.Supp. 18, 21 (D. Mass. 1993).

As this court has recently held, "at the summary judgment stage, there 'is no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood.'" Doyle v. Huntress, Inc., 301 F.Supp. 2d 135, 141 (D.R.I. 2004) (quoting Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d

932, 936 (1st Cir. 1987)). Therefore, "when hearing a motion for summary judgment, it is the responsibility of the trial judge to determine whether a reasonable trier of fact could find for the nonmoving party based on the admissible evidence, and to refrain from invading the province of the jury by weighing the evidence or making credibility determinations." Tanya Creations, Inc. v. The Talbots, Inc., 356 F. Supp.2d 97 (D.R.I. 2005) (copyright case, denying summary judgment motion).

Under this standard, the motion here must fail. Defendant Cherokee raises defenses predicated on disputed factual issues, including Cherokee's right and ability to supervise the infringing conduct, its financial benefit derived from the infringing conduct, its actual or constructive knowledge of the infringing conduct, and the degree to which it participated in or facilitated the infringement. As in Tanya Creations, however, which also involved a claimed infringement of a jewelry pin design, these issues are the subject of genuine factual dispute between the parties and are not amenable to resolution on summary judgment. The court cannot here accept Cherokee's position as to any of these issues, without invading the province of the jury to evaluate the credibility of Cherokee's factual claims.

## II. SUMMARY JUDGMENT IS INAPPROPRIATE AS TO BOTH VICARIOUS LIABILITY AND CONTRIBUTORY INFRINGEMENT

### A. Summary Judgment Is Inappropriate As To Vicarious Liability

It is well settled that a person will be held vicariously liable for copyright infringement "when the right and ability to supervise [the direct infringement] coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials." Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2nd Cir. 1963). Thus, the focus in a vicarious infringement

claim is on the alleged infringer's right to control and benefit from the direct infringer's activities.[1]

The record in this case demonstrates that there are at the very least genuine issues of material fact as to Cherokee's right to control its trademark licensee's goods, and the nature and degree of its financial benefit from those activities. Thus, summary judgment would be inappropriate with respect to vicarious infringement.

As stated above, "[v]icarious liability exists when two elements are present. First the defendant must possess the right and ability to supervise the infringing conduct. Second that defendant must have a 'obvious and direct financial interest in the exploitation of copyrighted materials." Nimmer on Copyright § 12.04(a)(1) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)); Broad. Music, Inc. v. Old Colonial Corp., 2002 U.S. Dist. LEXIS 1464, at *5 (D. Mass. Jan. 29, 2002) ("The cast of the vicarious liability net is wide, for 'even in the absence of an employer-employee relationship one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'")(quoting Gershwin Publishing Corp. v. Columbia Artists Mgmt., 443 F.2d 1159, 1162 (2d Cir. 1971)).

"Courts should impose vicarious liability when the facts indicate that the defendant has the 'right and ability to supervise' the infringer coupled with 'an obvious and direct financial interest in exploitation of the copyrighted materials.'" Polygram Int'l Publishing v. Nevada/TIG, Inc., 855

---

[1] Cherokee twice cites to Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 380 F.3d 1154 (9th Cir. 2004) in support of its arguments on vicarious liability and contributory infringement. See Cherokee Mem. at 5, 9. This decision was unanimously reversed by the U.S. Supreme Court more than a month before Cherokee submitted its memorandum. 125 S. Ct. 2764 (2005).

F. Supp. 1314, 1324 (D. Mass 1994). "This two-pronged test has been widely adopted, although courts often refer to the two elements by the shorthand terms 'control' and 'benefit.'" Id.

**1. Cherokee Has "the right and ability to supervise the infringing conduct"**

The "right and ability to supervise" is a flexible standard to be applied to the facts of the individual case. Generally, parties have been found to have the requisite "right and ability to supervise" when they have chosen to associate with the direct infringer, bound the direct infringer to a set of rules and regulations, and have had the ability to police the direct infringer.

For example, in Polygram Int'l Publishing v. Nevada/TIG, Inc., 855 F. Supp. 1314 (D. Mass. 1994), the court held that a trade show organizer had the necessary "right and ability to supervise" the exhibitors at the show because it (1) "exercised authority and control over its exhibitors through its Rules and Regulations," which the exhibitors "were bound to follow," (2) checked on the exhibitors to ensure "rules compliance," and (3) maintained the ability to restrict activities or exhibits that it deemed objectionable. 855 F. Supp. at 1328-29.

Similarly, in Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 308 (2d Cir. 1963), the court held that a department store was vicariously liable for infringing sales made by a record concessionaire which licensed space on the department store's premises. The court held that the department store as licensor of the space had "the ultimate right of supervision" over the concessionaire. The court reasoned that the department store "has the power to police carefully the conduct" of the licensees and that placing vicarious liability on the department store would encourage it to police more carefully. Id. The court also reasoned that without the possibility of vicarious liability, there would be an incentive for "dummy" intermediary companies to be set up to shield liability, while the licensor could reap the benefits of the infringement. Id. at 309.

In Realsongs, v. Gulf Broadcasting Corp., 824 F. Supp. 89, 91-92 (M.D. La. 1993), the court held that the owners and directors of a radio station that sold airtime to ministers who chose their own content were vicariously liable for copyright infringements by the ministers. The court reasoned that the question was "not whether the [defendants] exercised or delegated responsibility to another individual, but whether the [defendants] retained the right to control the copyright activities. The [defendants] had the ultimate authority to determine whether to sell air time to individuals who may be primary infringers. . . . The [defendants] can be deemed to have acquiesced in the program because [they] allowed the ministers to select the program's content, even if the ministers were instructed not to perform copyrighted music." Id. at 92.

Cherokee has fulfilled the necessary requirements of being vicariously liable through a licensee: Cherokee has (1) selected whom to license, (2) required that the licensee adhere to the rules of the license, and (3) required that it be able to police the licensee. See e.g., Polygram, 855 F. Supp. at 1328-29 (discussing factors); Shapiro, 316 F.2d at 309 (same).

(1) Cherokee has chosen to license to Dayton Hudson Corporation. Further, the license agreement prevents Dayton from assigning its rights or duties under the license without the prior written consent of Cherokee. License Agreement ¶ 8f.

(2) In the License Agreement, Cherokee lists various rules and requirements that all licensees must follow. For example, licensees, including Dayton, are required to maintain specific levels of quality control on the items bearing Cherokee's trademark. License Agreement ¶ 6a. Thus, Cherokee has fulfilled the requirements that it have rules and regulations that its licensees are required to follow. Polygram, 855 F. Supp. at 1328-29.

(3) Cherokee also requires that it be allowed to police the products and manufacturing facility of its licensees, including Dayton. Dayton must provide samples of its products to Cherokee upon demand, and allow Cherokee to inspect its manufacturing facilities upon request. License Agreement ¶ 6a. Thus, Cherokee has fulfilled the requirement that it be authorized to police its licensee. Polygram, 855 F. Supp. at 1328-29; Shapiro, 316 F2d at 309.

Though not necessary, Cherokee's involvement in promoting the infringing goods through the use of Cherokee's goodwill further supports finding vicarious liability. See Gershwin Publishing Corp. v. Columbia Artists Management, 443 F.2d 1159, 1162 (2d Cir. 1971) (noting that a person who promotes an infringing activity may be liable as a vicarious infringer). The License Agreement states that Dayton's involvement was materially induced by the goodwill that Cherokee has built in the trademark used on the infringing item. License Agreement ¶ 7. Thus, Dayton's reliance on the goodwill and promotional power of Cherokee to sell the infringing product supports finding vicarious liability.

Cherokee's right to terminate the license is another factor supporting the imposition of vicarious liability. See Shapiro, 316 F.3d at 306 (ability to discharge concessionaire supported finding vicarious liability of store); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996)(right to terminate vendor at swap meet supported finding vicarious liability of organizer). Cherokee retains the ability to terminate the license if the licensee "uses the Trademark in any manner likely to endanger the validity of the Trademark or to damage or impair the reputation or value of the Trademark." License Agreement ¶ 8a(ii). This right to terminate a licensee if it does anything to "impair the reputation or value of the Trademark" is a

broad right, and certainly indicative of Cherokee's "right and ability to supervise" its licensees.[2] Moreover, the right to supervise and control need not be exercised; some courts emphasize that vicarious liability is a judicial means by which those who have the power to police for infringement will do so diligently. See Davis v. Dupont, 240 F. Supp. 612, 631 (S.D.N.Y. 1965).

Thus, for the reasons stated above, Cherokee has fulfilled the "supervision" or "control" requirements of the vicarious liability test.[3] At the very least, there are genuine issues of material fact as to Cherokee's right and ability to supervise and control which should be wieghed by the jury. See Drexel v. Union Prescription Centers, Inc., 582 F.2d 781 (3d Cir. 1978)(summary judgment denied as to control where franchise agreement granted right to control).

**2. Cherokee Has An "Obvious and Direct Financial Interest" In The Infringement**

The second element of vicarious liability is that the defendant has an "obvious and direct financial interest in the exploitation of [the] copyrighted materials." Shapiro, 316 F.2d at 307. This can be fulfilled if the vicarious infringer is "a for-profit enterprise and [the vicarious

[2] Cherokee asserts without supporting authority that it "cannot simply pull allegedly infringing products off Target's shelves in the event that it does identify infringing products being sold under the Cherokee mark." Cherokee Mem. at 7. In the first place, this argument is a red herring because no court has ever required a vicarious infringer to have such power. Second, Cherokee's factual basis for making this statement is at the least unclear, since the Licensing Agreement gives it broad power to act to protect the goodwill of its trademark, including the termination of the License. Once the license is terminated, the licensee no longer has any authority to sell the branded goods. The scenario of "pulling products off the shelves" is thus not inconsistent, in practical effect, with the remedy clearly spelled out in the License Agreement. Third, the nature and scope of Cherokee's right to supervise and control the sale of its licensed goods is properly a fact question for the jury to resolve.

[3] In fact, if Cherokee really has no control over its licensed products, as it claims here, it has forefeited its trademark. See Haymaker Sports Inc. v.Turian, 581 F.2d 257 (C.C.P.A. 1978)(registration of trademark canceled because licensor had no quality control); First Nat'l Bank of Omaha v. Autoteller Syst. Serv. Corp., 9 U.S.P.Q.2d 1740 (T.T.A.B. 1988)(mark deemed abandoned by reason of uncontrolled licensing); First Interstate Bancorp. v. Stenquist, 16 U.S.P.Q.2d 1704 (N.D. Cal. 1990)(mark deemed abandoned where licensor failed to make any significant attempt to control quality of licensee's work).

infringer] benefit[s] from [the infringing activity's] operation." Realsongs v. Gulf Broadcasting Corp., 824 F. Supp. 89, 92 (M.D. La. 1993)(where defendants were owners of a for-profit radio station and received a per-minute fee for licensing use of the radio station to a third party, they had a sufficiently direct financial interest in the infringing broadcasts by the third party); see Polygram, 855 F. Supp at 1331 (trade show organizer received a sufficient financial benefit from performances of copyrighted music by exhibitors, to have the "direct financial interest" necessary for vicarious liability); RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781-82 (8th Cir. 1988) (manufacturer of audiocassette duplicating machine and blank audiocassettes had the necessary financial benefit from customers using the machine and buying blank audiocassettes used to copy copyrighted materials).

When a licensor receives a royalty based upon a total number of sales, that clearly qualifies as a "direct financial interest." In Shapiro, for example, the Second Circuit held that by "reserving for itself a proportionate share of the gross receipts from [the direct infringer's] sales [of all of its merchandise], [the vicarious infringer] had a most definite financial interest in the success of the [the licensee];" that percentage of the sales price of every piece of merchandise, whether infringing or legitimate, was passed on to the vicarious infringer. 316 F.2d at 308.

Here, as Cherokee concedes, it receives a royalty based on the total volume of retail sales of Cherokee-branded products each fiscal year. Cherokee Undisputed Facts ¶ 9. Thus, this royalty of a percentage of sales of the infringing merchandise is a "direct financial interest" in the infringement. See Shapiro, 316 F.3d at 308; Polygram, 855 F. Supp at 1331 (vicarious infringers received a commercial gain from the overall operation and a financial benefit from the infringing activity itself). At the very least, Cherokee acknowledges a factual issue to be

resolved by the jury when it concedes, Cherokee Mem. at 8, that "Cherokee does not know whether it received any royalty payments for sales of the allegedly infringing product."

**3. Knowledge is Not a Necessary Element**

A party may be held vicariously liable for copyright infringement "even though he has no actual knowledge" of the direct infringement. Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). In Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assoc., 554 F.2d 1213 (1st Cir. 1977), the court held that the owner of a racetrack was liable for copyright infringement violations by the company hired to supply music over the public address system. The infringements arose from the unauthorized broadcasting of music administered under an ASCAP license, when the owner of the track did not have such a license. The court held the track owner vicariously liable even though the owner claimed to be unaware of the infringement and had even instructed the company playing the music not to play ASCAP music. The court stated that the owner could not escape liability "by merely claiming ignorance" of the copyright violations. Id. at 1215.

**4. The Policy of Copyright Act Is Served by Imposing Vicarious Liability Here**

Imposing vicarious liability on a licensor serves the underlying purpose of the Copyright Act, and will induce those who license products or services to be vigilant in policing their licensees' activities. In the License Agreement, Dayton Hudson Corporation agreed to indemnify and hold harmless Cherokee for claims by third parties arising out of Dayton's products. License Agreement ¶ 10a. A similar provision was provided between the licensor and licensee in Shapiro. 316 F.2d at 309. In Shapiro, the court stated that "[s]urely the beneficent purposes of the copyright law would be advanced by placing the jeopardy of [the licensee's]

insolvency upon [the licensor] rather than upon the proprietor of the copyright." Id. Similarly, Cherokee should bear the risk of its licensees' actions, not the copyright holder.

**B. Summary Judgment Is Inappropriate As To Contributory Infringement**

To be liable for contributory infringement, the plaintiff copyright owner must prove that the alleged infringer, "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another." Gershwin Publ. Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2nd Cir. 1971). In other words, the plaintiff must prove both knowledge of and participation in the infringing activity.

**1. Genuine Factual Issues Exist As To Cherokee's Knowledge**

The knowledge element of contributory infringement is a highly fact-specific inquiry. Even with no direct knowledge of specific infringements, a defendant can be a contributory infringer, as the Seventh Circuit recently confirmed in In re Aimster Copyright Litigation, 334 F.3d 643 (7th Cir. 2003). There, Judge Posner affirmed the entry of a preliminary injunction against an internet service on contributory infringement grounds, finding that its "willful blindness" as to the conduct of users was sufficient to establish knowledge. See, e.g., id. at 650 ("Willful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant should have known of the direct infringement) as it is in the law generally")(citations omitted, emph. in original). See also R&R Recreation Products, Inc. v. Cook, 25 U.S.P.Q.2d 1781 (S.D.N.Y. 1992); Encyclopedia Britannica Educ. Corp. v. Crooks, 558 F. Supp. 1247 (W.D.N.Y. 1983); Atari Corp. v. J.S. & A., 597 F. Supp. 5 (E.D. Ill. 1983) (contributory infringer need merely be aware of "activity," not of its infringing nature).

Here, it is for the jury to decide what Cherokee knew or should have known about the copyright status of the merchandise being sold under its name. Under its License Agreement with Style, Cherokee secured an indemnity against the possibility that Style's jewelry might infringe a prior copyright. See ¶ 10.a. (Indemnification of Licensor). Tellingly, however, the License Agreement does not even purport to require a warranty and representation from the licensee that the merchandise to be sold is not infringing. Trial testimony will establish that such representations and warranties are absolutely standard in trademark licensing agreements, and Cherokee will have an opportunity to explain why it chose not to require them of Style, and why this failure is not a form of willful blindness. To date, Cherokee has not disclosed what due diligence, if any, it did into the copyright status of the infringing Style jewelry, nor what its due diligence practices have been at other times or with respect to other items or other vendors. Until such testimony is heard and evaluated by the finder of fact, there can be no legitimate determination as to whether Cherokee possessed actual or constructive knowledge of the infringement by Style, or whether it engaged in "willful blindness" to avoid acquiring such knowledge.

**2. Cherokee Had "Substantial Participation" In The Infringement**

The element of substantial particpation has been held to exist when, because of the defendant's involvement, the magnitude of the infringement is significantly greater than it otherwise might have been. In Fonovisa Inc. v. Cherry Auction Inc., 76 F.3d 259 (9th Cir. 1996) for example, relied on by Cherokee in its own brief, the Ninth Circuit held that a swap meet operator had "substantial participation" in the sale of infringing recordings by a vendor. The benefits the operator provided to the vendors, such as customer parking, general advertising,

plumbing and utilities, materially contributed to the vendors' infringing activities, though they were not of specific assistance to any particular infringing act. Rather, liability was warranted because "it would be difficult for the infringing activity to take place in the massive quantities alleged without the support services." 76 F.3d at 264 (emph. added).

The same is true with Cherokee. But for Cherokee's involvement, defendants' infringing wares would not have landed on the shelves of Target and millions of unauthorized pins, necklaces and earrings would not have changed hands.

**CONCLUSION**

Based on the reasons and authorities set forth above, Plaintiff respectfully submits that Defendant Cherokee's motion for summary judgment should be denied in all respects.

Dated: September 8, 2005

MAG JEWELRY CO., INC.
By its Attorney,

Thomas A. Tarro III

Thomas A. Tarro III, Esq. #2046
THE LAW FIRM OF THOMAS A. TARRO III
The Summit East, Suite 330
Centerville Road
Warwick, RI 02886
(401) 737-7200
(401) 732-3362 (facsimile)

Of Counsel:

Robert W. Clarida Esq. #3190
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9266

## CERTIFICATION

I hereby certify that I mailed a copy of the above Memorandum regular mail on the 9th day of September, 2005 to:

Craig M. Scott, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas R. Noel, Esq.
NOEL & GYORGY, LLP
50 South Main Street
Providence, RI 02903