**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174T |
| CHEROKEE, INC.,<br>TARGET CORPORATION D/B/A<br>TARGET STORES and STYLE<br>ACCESSORIES, INC.<br>Defendants | : | |

**REPLY MEMORANDUM OF DEFENDANT STYLE ACCESSORIES, INC. TO PLAINTIFF'S OBJECTION TO SUMMARY JUDGMENT**

Defendant Style Accessories, Inc. ("Style") hereby responds to the Objection Memorandum of the plaintiff, Mag Jewelry Co., Inc. ("Mag"), objecting to Style's Motion for Summary Judgment. Mag throws up a smattering of "disputed facts" but wholly ignores the *legal bases* on which the defendants bring their motion. Style does not contend that there are *no* disputed facts in this case. Style's position is that no facts in dispute stand in the way of what the Court must do: dismiss the plaintiff's claims based on the *legal* arguments outlined in Style's Motion for Summary Judgment because, as a matter of law, Mag cannot satisfy its burden.

**I. <u>Mag Finally Admits that It Has No Evidence of Direct Copying.</u>**

Most notable in Mag's papers is a critical admission: Mag no longer alleges that Style copied a Mag crystal angel. (Mag never had evidence that Style copied a Mag jewelry piece but alleged so in its Amended Complaint nonetheless.) Mag now fully admits that Style obtained the accused piece from another entity, the Alan Gregerman Company.[1] Mr. Gregerman, despite Mag's best attempt to cloud the issue now, has attested to his own

[1] Style had answered as much in interrogatory answers in December, 2004.

independent creation of his crystal angel in 1994, and Gregerman sold and advertised his angel months before Mag's first sale.

The admission means that Mag cannot satisfy the "copying" prong of the infringement analysis[2] by either of two accepted means: (1) direct evidence of actual copying; or (2) "evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity)." *Lotus Development Corp. v. Borland Intl., Inc.*, 49 F.3d 807, 813 (1st Cir. 1995). The first method of proving copying is unavailable as Mag now admits that Style's product did not emanate from Mag but instead was purchased by Style from Gregerman.[3] The second method of proof of copying, in the absence of direct proof of access, is equally unavailable because an inference of "probative similarity" is not possible in this case.

First, the Court would be drawing an inference that is directly contrary to the now undisputed fact that Style sourced its piece from Gregerman. Second, even if the Court were to ignore that fact, which is undisputed, "probative similarity" could be shown with any number of crystal angel pieces on the market – including the Gregerman piece sold through the Monarch Creations catalogue in 1994-1995, the crystal angel piece sold through the

---

[2] To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991).

[3] Mag would have to *prove* that Gregerman illicitly copied his piece from Mag in order to hold Style responsible for copying, ultimately, the Mag piece. Mag has never attempted to do so, and the court should reject absolutely any suggestion that Mag can simply speculate as to such copying-on-copying now. *See Kepner-Tregoe, Inc. v. Carabio*, 203 U.S.P.Q. 124, 127 (E.D. Mich. 1979)(plaintiff, "while arguing that Defendants' copying from others who, in turn, copied from [plaintiff], is no defense, did not offer proof that any of the third-party materials had been copied from [plaintiff]").

Catalog Ventures catalog beginning in 1992 (one million copies distributed)[4], and the Dass and Verrechia pieces. Mag must not be allowed to speculate now that the Gregerman piece and the Catalog Ventures piece were somehow derived from Mag's. (Objection Memo, p. 17-18). Mag backed off its assertion that Gregerman had copied its piece nine years ago (*Rule 12.1 Statement* ¶ 29) and later even asked Gregerman to assign *his* rights to *his* crystal angel to Mag. (*Rule 12.1 Statement* ¶ 30). Mag has *never* alleged that the Catalog Venture's piece was an infringement. (*Rule 12.1 Statement* at ¶ 35; *Piro Deposition*, attached to Style's *Rule 12.1 Statement* as *Exhibit* O, pp. 27-31.) Mag has *no* evidence to contradict Dass' sales, which began in 1989 (*Rule 12.1 Statement* at ¶¶ 40-44; *Dass Depo.*, attached to Style's *Rule 12.1 Statement* as *Exhibit R,* at pp. 36-41, and *Dass Depo. Exhibits 4 and 5* appended thereto; *Wells Depo.*, attached to Style's *Rule 12.1 Statement* at *Exhibit S,* at pp. 12-14; *Rule 12.1 Statement*, ¶¶ 43-44. ), and Mag has *no* evidence to contradict that Mr. Verrechia created a substantially similar crystal angel piece out of stock crystal stones in 1979. (*Rule 12.1 Statement* at ¶¶ 36-38; *Verrechia Affidavit,* attached to Style's *Rule 12.1 Statement* as *Exhibit P,* ¶ 9). A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**II. Gregerman's Claim of Independent Creation Remains Undisputed.**

Despite Mag's suggestions to the contrary, Gregerman did not repudiate his claim of independent creation, and Mag has raised no facts to dispute that position. There is simply no evidence for a jury to consider for the proposition that Gregerman acquired his crystal angel rights from Mag. Nothing in the Gregerman statement put forth by Mag's counsel with Mag's objection contradicts his earlier affidavit testimony (*see Gregerman Affidavit*, filed as

---

[4] *Rule 12.1 Statement* at ¶ 34.

*Exhibit F* to Style's *Rule 12.1 Statement*) that he independently created his crystal angel in 1994. Gregerman therein had explicitly declared, in relation to his own angel:

> I do not recall having seen a piece of similar design. I continue to believe that this design is a wholly original expression, created by me, and I have always considered it to be my design.

*Gregerman Affidavit* (*Rule 12.1 Statement*, *Exhibit F*), ¶ 4. Gregerman simply did not contradict this testimony in the statement Mag obtained from him. Any suggestion that Gregerman admits having acquired rights from Mag is wholly misleading, and Mag's attempt to hold up "disputed facts" on the issue is a ruse.[5]

The Court need not resolve, in deciding this motion for summary judgment, the factual question of when or whether Mag actually "created" its crystal angel. The evidence Style sets forth concerning other independent creations of similar angels demonstrates (1) that the crystal angel design was a common one, suggesting the limited range of possible expression, and (2) that as a matter of law, Mag cannot simply step forward and insist that, because Style sold a crystal angel arguably similar to its own, Style must now pay damages to Mag. Mag must submit evidence, not speculation, in order to defeat summary judgment.

## III. Defendants Have Not Waived the Defense of Independent Creation.

Mag makes a surprising attempt to circumvent the substance of the case by arguing waiver of the so-called "independent creation" defense. First, Style did in fact include "independent creation" as an affirmative defense. Style's Answer included the following:

---

[5] Facts that Mag does not attempt to contradict which therefore must be taken as true include the following, and belie any suggestion that Gregerman's crystal angel rights derive from Mag: Gregerman began selling and shipping his angel in September 1994 (*Rule 12.1 Statement* at ¶¶ 36-38), and it was photographed and included in the Winter 1994-95 publication of retail catalogue Monarch Creations, of which five-thousand copies were distributed. *See Beaupre Affidavit* (*Rule 12.1 Statement*, *Exhibit G*), ¶¶ 2-5. When Gregerman received a cease-and-desist letter from Mag's counsel more than a year later, he hired an attorney to refute the allegation that he had copied the Mag piece (*Rule 12.1 Statement* at ¶¶ 36-38) continued making and selling the piece, and later declined a request from Mag to assign *his* copyright rights over to Mag. (*Rule 12.1 Statement* at ¶ 30).

Eleventh Affirmative Defense

> There exist on the market numerous claimed independent creations of angel jewelry designs utilizing juxtaposed crystal stones that are substantially similar to plaintiff's claimed design and plaintiff cannot, as a matter of law, identify its own piece as that which was copied, if any copying occurred by any person or entity.

*See Answer*, filed on or about October 26, 2004.[6] To the extent Mag implies this language was somehow insufficient to place Mag on notice, Mag's argument is, at best, disingenuous. Style identified Alan Gregerman as its original source for the jewelry pieces in interrogatory answers in December 2004. Gregerman is one of the several independent creation sources known to the plaintiff, if not accepted by it, for years.

The cases cited by Mag regarding waiver do not support its position. Both concern parties who had failed to raise critical defenses *by the time of trial*. The precluded party in *Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corp.*[7] had failed to raise a critical defense until the "ninth and final day" of trial. *Id.* at p.1226. *See Wolf v. Reliance Standard Life Insurance Co.*, 71 F.3d 444, 446 (1st Cir. 1995)(ERISA preemption defense raised "on the eve of trial"). Here, independent creation was explicitly raised in Style's Answer, and has been front and center of much of the discovery and proceedings in this matter throughout,[8] not to mention several prior cases involving Mag.

**IV. <u>Conclusion</u>**

Even if the Court declines to invalidate Mag's copyright due to the crudeness of the

---

[6] Moreover, the Answer of defendants Target Corporation d/b/a Target Stores and Cherokee, Inc. includes the following Tenth Affirmative Defense: "None of the elements of plaintiff's 'Crystal Angel' is an original creation, each element having been created by persons or entities other than plaintiff prior to plaintiff's claimed creation date."

[7] 15 F.3d 1222 (1st Cir 1994).

[8] Mag's counsel himself brought up Mr. Gregerman and his role in the history of crystal angel creations and sales at an initial pretrial conference held between counsel and Judge Torres in early 2005.

subject matter, the limited range of expression available, and the limited variety of off-the-shelf crystal stones available with which to express it, Mag has failed to raise material facts for a jury to consider to rebut the undisputed facts set forth by Style. Copying of Mag's piece cannot be shown, speculation is not permitted, and summary judgment is required as a matter of law.

Dated: September 26, 2005

STYLE ACCESSORIES, INC.

By Its Attorneys,

[signature]

Thomas R. Noel (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

**CERTIFICATION**

I hereby certify that on September 26, 2005 I served a copy of the foregoing by First Class Mail to Thomas A. Tarro III, Esq., and Kris Macaruso Marotti, Esq., The Law Firm of Thomas A. Tarro, III, The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and to Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

Ellen M. Brunelle

TRN/