UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | |

**DEFENDANT CHEROKEE, INC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**A. Mag Concedes that Cherokee is not a Direct Infringer.**

Plaintiff Mag Jewelry, Inc.'s ("Mag") sole allegation in its Amended Complaint directed specifically to Cherokee, Inc. ("Cherokee") is that it "manufactured, marketed, distributed and sold" infringing jewelry. *See* Amended Complaint, ¶ 15. Mag presented no arguments in its Opposition Memorandum to support this allegation or to demonstrate that Cherokee is anything other than a licensor of a trademark. As the only facts before the Court on the issue of direct infringement are that Cherokee did not design, manufacture or sell the allegedly infringing product, Cherokee is entitled to summary judgment on this claim. *See* Cherokee's Rule 12.1 Statement of Undisputed Facts, ¶ 5.

**B. Cherokee Lacks the Requisite Control to be Vicariously Liable.**

In its opposition, Mag dilutes the standard for the first of two required elements a plaintiff must prove to succeed on a claim of vicarious copyright infringement: the "right and ability to control" the infringement.[1] The "control" required to impose vicarious liability, however, is

[1] Mag offers no evidence as to the second element either: that Cherokee had an "obvious and direct financial interest" in the alleged infringement. The Court need not address this prong of the test as Mag cannot show that Cherokee possessed the right and ability to control the alleged infringement.

established by proving that the defendant had broad rights to police the direct infringer's activities and the ability to stop the sale of the infringing products. *See Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 263 (9th Cir. 1996). Mag creates a different standard altogether, one that finds control where the defendant has: "(1) selected whom to license, (2) required that the licensee adhere to the rules of the license, and (3) required that it be able to police the licensee." *See* Mag Opposition at 5. In Mag's view, any licensor is liable under the doctrine of vicarious infringement if its licensee is an alleged infringer. This cannot be, and Mag's relaxed standard of proof finds no support in the cases upon which it relies.

In *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963), the court characterized the "control" inquiry as one that "depends merely upon a legal conclusion to be drawn from a consideration of the parties' relationship." The court held that the defendant's involvement with the infringing sales demonstrated the requisite control because the relationship was tantamount to an employer-employee relationship. *See Shapiro*, 316 F.2d at 306 (defendant collected revenue from infringing sales, issued its own sales receipt for each infringing sale and deducted its own commissions and the direct infringer's employees' withholding taxes before turning over any sums to the direct infringer). The pseudo employer-employee relationship in *Shapiro* supported vicarious liability, while the arms-length licensing relationship in this case does not. Moreover, Cherokee's right to demand samples under the License Agreement to verify the quality of its licensee's products puts Cherokee in a very different and more remote position than the *Shapiro* defendant's involvement with the actual infringing sales.

In *Polygram Int'l Publishing, Inc. v. Nevada/TIG*, 855 F. Supp. 1314, 1328-29 (D. Mass. 1994), the defendant's rules and regulations governing the direct infringer's conduct related to the infringement itself and are not comparable to the quality control mechanisms in Cherokee's

License Agreement. *Compare Polygram*, 855 F. Supp. at 1328-39 (prohibiting unlicensed performance of copyrighted music) *with* Cherokee License Agreement at 6, "Standards of Quality" (right to request samples for quality control purposes)(attached as Exhibit 2 to Cherokee's Rule 12.1 Statement of Undisputed Facts).

The remainder of Mag's citations further illustrate this point. In *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162-63 (2d Cir. 1971), the court found that the defendant's "pervasive participation in the formation and direction" of the concerts where the infringement occurred, coupled with advance knowledge of the infringement, was ample control for vicarious liability purposes. Similarly, in *Davis v. E.I. DuPont deNemours & Co.*, 240 F. Supp. 612, 631-31 (S.D.N.Y. 1965), the defendant approved production of the infringing television program before production began, reviewed drafts and participated in conferences regarding the content of the program. The court properly characterized this extensive level of control as "the ultimate power to determine the content of the program. . . ." *Id.* at 632. Finally, in *Fonovisa*, the defendant swap meet organizer knew about the infringement before it occurred, actively promoted and managed the swap meet, agreed in advance to provide the sheriff's office with identifying information on each vendor and then patrolled the vendors' sales locations while the sale of the infringing goods occurred. *See* 76 F.3d 259, 261-262.

Unlike the defendants in the cases cited by Mag that are discussed above, Cherokee had no knowledge of the alleged infringement, did not promote or organize the infringement itself and lacked the right and ability to exercise supervisory control over its licensee to prevent the alleged infringement. *See* Cherokee's Rule 12.1 Statement of Undisputed Facts. Mag has failed to establish that Cherokee possessed the type of control required to impose vicarious liability and, accordingly, Cherokee is entitled to summary judgment on this claim.

**C. <u>Mag Presented No Evidence to Support its Claim of Contributory Infringement.</u>**

Rather than present evidence that Cherokee knew of the alleged infringement and played a substantial role in it, as it must to prove that Cherokee is a contributory infringer, Mag argues that willful blindness can constitute knowledge and that substantial participation in infringement can be established where a defendant provides extensive support services unrelated to the infringement itself. *See* Mag Opposition at 10-12. As with its arguments on vicarious liability, Mag relies on cases with such dramatically different facts that the propositions Mag seeks to draw from the cases have no weight here.

Mag's "willful blindness" cases involve defendants that actively sought to avoid acquiring knowledge of the infringement,[2] or defendants that admitted their knowledge and encouragement of the infringing activities while claiming that they believed their actions were legal.[3] Here, Mag's counsel deposed Cherokee under Fed. R. Civ. P. 30(b)(6) and failed to elicit any testimony indicating that Mag knew about the alleged infringement or took steps to avoid such knowledge. Accordingly, Mag's argument that the knowledge element of contributory infringement turns on a highly fact specific inquiry that should be performed by the jury is inapplicable here. There are no disputed material facts for the jury to consider.

Mag's substantial participation argument is equally infirm. Mag elicited testimony from Cherokee's Fed. R. Civ. P. 30(b)(6) designee that Cherokee was not involved with the design, manufacture or distribution of the allegedly infringing product. *See* <u>Exhibit 1</u> to Cherokee's Rule 12.1 Statement of Undisputed Facts at 18:24-19:2. Notwithstanding that this testimony is the only evidence before the Court on the issue of Cherokee's so-called participation, Mag relies

---

[2] *See In re Aimster*, 334 F.3d 643, 650 (7th Cir. 2003) and *R&R Recreation Products, Inc. v. Cook*, 25 U.S. P.Q.2d 1781 (S.D.N.Y. 1992).

[3] *See Encyclopedia Britannica Educ. Corp. v. Crooks*, 558 F. Supp 1247, 1255 (W.D.N.Y. 1983) and *Atari, Inc. v. JS&A Group, Inc.*, 597 F. Supp. 5, 5 (N.D. Ill. 1983).

on *Fonovisa* to argue that a defendant that provides extensive support services unrelated to the infringement itself, such as customer parking, advertising, plumbing and utilities, can be deemed to have participated in the infringement by facilitating it. *See* Mag Opposition at 11-12. The problem with this argument is that there is no evidence that Cherokee provided any such services and, consequently, no merit to Mag's claim of contributory infringement.

**D. <u>Mag Failed to Oppose Properly Cherokee's Motion for Summary Judgment.</u>**

Local Rule 12.1 requires a party opposing summary judgment to "serve and file, together with the opposing memorandum of law required under Rule 12 of these Rules, a concise statement of all material facts as to which he contends there is a genuine issue necessary to be litigated." D.R.I. Local Rule 12.1(2). The Rule provides further that "the court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion, or by other evidentiary materials which the court may consider under Rule 56 of the Federal Rules of Civil Procedure." *Id.* at 12.1(2)(d). Mag failed to file a Rule 12.1 Statement of Disputed Facts and, accordingly, has admitted the facts Cherokee set forth in its Rule 12.1 Statement.

In addition, it is well settled that "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Cherokee did not, as Mag contends, raise "defenses" in its Summary Judgment Motion. Rather, Cherokee identified Mag's failure to establish the elements of its own claims, and that failure entitles Cherokee to summary judgment. *See* Mag Opposition at 2.

**E. Conclusion.**

For the foregoing reasons, Cherokee's Motion for Summary Judgment should be granted.

CHEROKEE, INC.
By its Attorneys

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 (Tel)
(401) 455-0701 (Fax)

Dated: September 26, 2005

**CERTIFICATION**

TO:

Thomas A. Tarro, III, Esq.
Kris R. Macaruso Marotti, Esq.
The Law Firm of Thomas A. Tarro III, Esq.
The Summit East, Suite 330
300 Centerville Road
Warwick, RI 02886

Thomas R. Noel, Esq.
Noel & Gyorgy
50 South Main St.
Providence, RI 02903

I hereby certify that I caused a true copy of the within *Defendant Cherokee's Reply Memorandum of Law in Support of its Motion for Summary Judgment* to be sent via First Class Mail to the above named counsel of record on the 26th day of September, 2005.

Linda A. Cardente

*H:\Clients\Target Corporaton.MAG\Style Fashion Jewelry - Mag\Pleadings\Cherokee Summary Judgment Reply.doc*