**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| v. | : | C.A. No. 04-174T |
| CHEROKEE, INC.,<br>TARGET CORPORATION D/B/A<br>TARGET STORES and STYLE<br>ACCESSORIES, INC.<br>Defendants | : | |

**DEFENDANT STYLE ACCESSORIES, INC.'S**
**OBJECTION TO MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**

Defendant Style Accessories, Inc. ("Style") hereby objects to and appeals the Memorandum and Order issued by Magistrate Judge Lincoln Almond and entered on December 15, 2005 upholding the work-product claims of plaintiff over materials exchanged with a third-party witness after the close of discovery.

The Memorandum and Order is clearly erroneous. The Magistrate Judge applied an incomplete legal standard in ruling that work-product protection had not been waived, and made a factual determination that the witness to whom the purportedly work-product materials were given was not actually or potentially adverse to the plaintiff, which is utterly contrary to the facts of this matter. Plaintiff is in fact disputing the witness' truth and veracity – the suggestion is that the witness perjured himself – in presenting a second affidavit that plaintiff's counsel suggests repudiates earlier testimony of the same witness. Plaintiff's claim of work-product protection cannot stand.

Defendant relies further on the Memorandum In Support filed contemporaneously herewith.

WHEREFORE, defendant requests that the court overturn the Memorandum and Order and order plaintiff to produce all documents exchanged with the witness.

Dated: December 30, 2005

STYLE ACCESSORIES, INC.

By Its Attorneys,

Thomas R. Noel, Esq. (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
(401) 272-7400
(401) 621-5688 (Facsimile)

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 30th of December, 2005, I served a true copy of this document to the following counsel of record by First Class Mail: Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| v. | : | C.A. No. 04-174T |
| CHEROKEE, INC., ROBERT MARGOLIS<br>TARGET CORPORATION D/B/A<br>TARGET STORES and STYLE<br>ACCESSORIES, INC.<br>Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OFDEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**

## I. INTRODUCTION

Defendant Style Accessories, Inc. ("Style") is compelled to appeal the *Memorandum and Order* entered on December 15, 2005 denying its Motion to Compel Production of Documents from the plaintiff. The *Memorandum and Order* is not only clearly erroneous and contrary to law – the Magistrate Judge applied the incorrect legal standard for waiver of work-product protection -- but it would deprive the defendants of the opportunity to prepare for trial on a remarkable factual assertion raised by the plaintiff after the close of discovery. It would allow the plaintiff to withhold documents exchanged with a central witness following the close of discovery under the guise of work-product protection. The decision, wrong under the law, sets poor public policy and contravenes the purpose and intent of the rules of discovery.

The Magistrate Judge, after an *in-camera* review, concluded that the materials submitted by plaintiff's counsel were subject to work-product protection, and that plaintiff had not waived the same. In doing so, the Magistrate Judge not only applied the wrong legal standard for waiver of work-product protection, he compounded that error by the factual

determination that the witness is not an adversary or potential adversary of the plaintiff, despite the fact that the witness is a competitor in the jewelry industry whom the plaintiff threatened to sue for infringing the same copyright at issue in this case.

This is not the court's first exposure to this witness. The materials at issue are those exchanged between the plaintiff or its counsel and a central non-party witness, Mr. Alan Gregerman, from whom Style obtained some of the crystal angel jewelry in question. The defendants filed for summary judgment in July, 2005, and submitted an earlier affidavit from Mr. Gregerman (the "First Affidavit") concerning his early, independent creation of the crystal angel piece. Mag has characterized the Gregerman piece as "virtually identical and infringing." *See* fn. 8.

In September, 2005, Mag submitted a "supplemental" Rule 12.1 Statement in opposition to defendants' then pending summary judgment motion containing an affidavit it obtained from Mr. Gregerman. Plaintiff's counsel represented to the court at hearing that the second Gregerman affidavit (the "Second Affidavit") *repudiates* earlier sworn statements made by Mr. Gregerman concerning the origin and creation of the "crystal angel" jewelry piece. It was upon discussion of that affidavit that the court denied defendants' motion for summary judgment. Now the plaintiff is trying to shield communications with a witness it claims has repudiated earlier testimony, along with, apparently, versions of the affidavit given to that witness.

## II. ARGUMENT

### A. The Memorandum and Order Is Clearly Erroneous and Contrary to Law.

Upon appeal of a magistrate judge's order on a non-dispositive motion, Rule 72(a) of the Federal Rules of Civil Procedure, implementing 28 U.S.C. § 636(b)(1)(A), requires that a

district court judge "modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." *Blinzler v. Marriott International, Inc.*, 857 F.Supp. 1, 2 (D.R.I. 1994). "A finding is clearly erroneous when it is against the clear weight of the evidence, or when the court has 'a definite and firm conviction that a mistake has been committed.'" *Id., quoting Holmes v. Bateson*, 583 F.2d 542, 552 (1st Cir. 1978).

As an initial matter, defendants herein challenge the determination that correspondence and documents presented to a non-party witness may be withheld from discovery as "work-product" at all. Defendants respectfully request the Court to conduct an independent review of all materials at issue, and urge that the Court should serve as "gatekeeper," restricting a litigant's access to witness preparation materials, only sparingly. It ought to be left to litigants and counsel to decide what use, if any, should be made of documents presented to a witness prior to trial, with a Court making admissibility determinations at the time of and in the full context of trial.[1]

**1. <u>The Magistrate Judge Applied an Incorrect Legal Standard Concerning the Waiver of Work-Product Protection</u>.**

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975). "The doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992), cert. denied, 113 S. Ct. 2997 (1993). The work product doctrine does not exist to

---

[1] The Magistrate Judge stated at hearing that he had been handed, by plaintiff's counsel, correspondence and affidavits for his in-camera review. The Memorandum and Order, however, references only "two letters (dated August 23, 2005 and September 9, 2005) from Mag's counsel to Mr. Gregerman *regarding* an Affidavit…." Memorandum and Order, p. 2. Defendants respectfully request the court to clarify the materials under review in its decision upon this appeal. Defendants' motion explicitly concerned *all* materials exchanged between the plaintiff or its counsel and Mr. Gregerman.

protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393-94, 91 L. Ed. 451 (1947).

The privilege derived from the work-product doctrine is not absolute, however. "Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (U.S. 1975). The question a court must ask concerning waiver of work-product protection is whether the party seeking protection "disclos[ed] material in a way inconsistent with keeping it from an adversary." *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997).

The Memorandum and Order mischaracterized the standard for waiver, ruling that "*only* 'disclosure to an adversary, real or potential, forfeits work product protection.'" Dec. 13, 2005 order at 3 (quoting *Massachusetts Inst. of Tech.*, 129 F.3d at 687) (emphasis added). The language quoted by the Magistrate Judge from the *MIT* case is taken out of context and presents a much narrower standard than that which should have been applied. Waiver is not brought about *only* by disclosure to an adversary. The selected quote is merely the MIT court's application of the correct legal standard -- "disclosing material in a way inconsistent with keeping it from an adversary" -- to the fact situation at issue in that case: disclosure that had occurred directly to the potential adversary.[2]

In the paragraph immediately preceding the language quoted by the Magistrate Judge,

---

[2] The MIT Court clearly found that MIT had made a disclosure directly to a potential adversary: "MIT"'s disclosure to the audit agency was a disclosure to a potential adversary. The disclosures did not take place in the context of a joint litigation where the parties shared a common legal interest. The audit agency was reviewing MIT's expense submissions. MIT doubtless hoped that there would be no actual controversy between it and the Department of Defense, but the potential for dispute and even litigation was certainly there." *Id.*

the MIT court set forth the true legal standard governing waiver, expounded on the reasons for the standard, and cited to near universal acceptance of that standard:

> [W]ork product protection is provided against 'adversaries,' so only disclosing material in a way *inconsistent with keeping it from an adversary* waives work product protection. At least five circuits have adopted this rule in some form. See also 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2024, at 368-69 (1994) (citing cases).

*Massachusetts Inst. of Tech.*, 129 F.3d at 687 (emphasis added).[3]

The waiver standard expressed in *MIT* does not require actual or direct disclosure to an actual or potential adversary – the standard applied by the Magistrate Judge herein -- but rather examines whether the disclosure *allows or enables* an actual or potential adversary (i.e., the named defendants here) to gain access to the information. This standard is universally adopted. *See* 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2024, at 368-69 (1994) (citing cases); Epstein, Edna, *The Attorney Client Privilege and the Work Product Doctrine*, 612-13 (4th 2001) ("Actual disclosure to an adversary need not necessarily have occurred in order for a waiver to occur. It is often enough if a substantial risk of disclosure has been created."... "[T]he focus of the inquiry is on the extent to which the relationship is an adversarial one and the efforts made to keep adversaries from obtaining the material.") Thus, examining only whether Gregerman himself is an actual or potential adversary does not conclude the required analysis.[4]

As a result of formulating the incorrect standard for waiver, the Magistrate Judge

---

3 *See also In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) ("[W]hen an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.")

4 The magistrate's reliance on an incorrect standard for waiver is magnified by his addition of the word "only" before the out-of-context quotation. At no point in its decision did the MIT court limit is decision, as the magistrate does here through the addition of the word "only," to situations involving direct disclosure to actual or potential adversaries.

engaged in a faulty analysis of the issue presented. The Magistrate Judge found that "Style has not shown that Mr. Gregerman is an adversary to Mag."[5] Notwithstanding the fact that Style disagrees with that conclusion, *see below*, it is a critical point that such a showing is not required in order to find waiver of work-product protection.

The Magistrate Judge should have also examined – and failed to examine -- whether Mag's disclosures to Mr. Gregerman, a critical fact witness in this case, regardless of his own adversarial or non-adversarial position *vis-à-vis* Mag, substantially increased the risk of Style and the other defendants, *actual adversaries*, obtaining the information. Mr. Gregerman, a third-party witness in this case, had no interest in -- nor any entitlement to -- the disclosed materials, and is under no obligation to maintain their confidentiality. The materials could be obtained from Mr. Gregerman by way of subpoena in discovery or at trial, and he may certainly be freely cross-examined thereon. Mag's disclosure to Mr. Gregerman was at odds with the purposes behind the work product rule, and Mag could not have reasonably expected to limit the future use of the material. *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1429 (3rd Cir. 1991) ("[A] party who discloses documents protected by the work-product doctrine may continue to assert the doctrine's protection only when the disclosure furthers the doctrine's underlying goal.")

---

5 Moreover, the magistrate's cited support for this proposition, *Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.)*, 9 F.3d 230, 235 (2d Cir. 1993), is misplaced. While it is true that the court in *Steinhardt Partners* found an adversarial relationship between the defendants and the Securities and Exchange Commission, which had earlier received the otherwise protected material from the defendants, that point was not critical to the court's analysis. The *Steinhardt Partners* court analyzed whether the defendants could selectively disclose the material to the SEC and still maintain their claim of work-product protection as to the plaintiffs in the civil litigation at issue. The court rejected the defendant's "attempt to use the doctrine to sustain the unilateral use of a memorandum containing counsel's legal theories voluntarily submitted to an investigatory body." Id. at 235. The court noted that "[v]oluntary disclosure is generally made because a [party] believes that there is some benefit to be gained from disclosure," and declared that the discloser "cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Id.* That analysis and rationale directly supports defendant's claims in this case.

Indeed, Mag presumably sent some of the materials (i.e., drafts of the affidavit) to Mr. Gregerman *with the intent and purpose* that they be disclosed; Mag intended to obtain execution of the affidavit drafts and file them in this action. It should be of no import that the third-party to whom disclosure was made simply refused or declined to adopt the earlier statements put before him by plaintiff's counsel. The determination of this issue also should not rest on whether the deadline for discovery had passed at the time the disclosures were made. At an earlier stage of the litigation, defendants would be free to subpoena Mr. Gregerman and whatever documents he had maintained. Discovery closed in this matter before the documents sought even came into existence. Accepting a determination that Mag's disclosure did not increase the likelihood that actual adversaries – the defendants -- could obtain the materials simply because the disclosure occurred after discovery sets a poor and unreliable standard for determination of work-product protection.[6] Mag's voluntary disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials. Under the correct waiver analysis, it is clear that Mag's voluntary disclosures waived any claim of work-product protection.

In similar factual cases, other courts have reached the conclusion that the disclosing party has waived work-product protection. *See e.g., Ricoh Co. v. Aeroflex, Inc.*, 219 F.R.D. 66, 70 (D.N.Y. 2003) (holding that work-product protection was waived for e-mails sent to a third party who was likely to be an independent witness in the case); *Behnia v. Shapiro*, 176 F.R.D. 277, 279-280 (D. Ill. 1997) (finding waiver of work product protection when party disclosed memorandum to a fact witness because it "substantially increases the possibility for potential adversaries to obtain the information"). Accordingly, Mag's voluntary choice to

---

[6] Indeed, it would mean that any party desiring the benefits of work-product protection need only wait until discovery ended to eliminate the possibility of waiver.

disclose material to a critical fact witness, made with full knowledge that an actual adversary could obtain the documents through discovery, waives any claim to work-product protection on those documents. *See Massachusetts Inst. of Tech.*, 129 F.3d at 687 ("[D]isclosing material in a way inconsistent with keeping it from an adversary waives work product protection").

### 2. __The Magistrate Judge's Finding that Mr. Gregerman is Not An Adversary of Mag is Clearly Erroneous.__

The Magistrate Judge found that while Mag and Gregerman may have been adversaries in the past, "it appears that they are no longer adversaries and resolved any dispute they had." That determination is belied by the facts of this case and is clearly erroneous.

Mr. Gregerman previously testified that he *independently created* his crystal angel, that he did so in 1994, and that he began selling his crystal angels that same year.[7] Mag began selling its crystal angels in 1995, applied for copyright registration in 1995, and in January 1996 wrote a cease and desist letter to Mr. Gregerman demanding that Gregerman stop making and selling, in Mag's counsel's words, Gregerman's "virtually identical and infringing" crystal angels.[8] In June 1997, Mag requested that Gregerman execute an assignment of his crystal angel rights over to Mag. Mr. Gregerman ignored that request,[9] and the issue of the countervailing claims of independent – and indeed, first – creation of the crystal angel piece, as between Mag and Mr. Gregerman, *has never been resolved.*

---

7 Indeed, records submitted by Mr. Gregerman with his first affidavit document 1994 sales and extensive advertising by way of catalogs of his customers. The first Gregerman affidavit ("First Affidavit") was submitted, with corresponding attachments, as Exhibit F to Style's Summary Judgment Rule 12.1 Statement.

8 *See* letter from Mag's counsel attached at Tab 3 to the original Gregerman Affidavit, Exhibit F to Style's Summary Judgment Rule 12.1 Statement.

9 *See* first Gregerman affidavit, ¶ 10, and Tab 5 thereto.

In September 2005, presumably after communicating with Mr. Gregerman and exchanging the materials at issue herein, Mag submitted a second affidavit signed by Mr. Gregerman. At the summary judgment hearing, Mag claimed that Mr. Gregerman's Second Affidavit *repudiated* his testimony in the original affidavit in that the crystal angel supplied by Gregerman to Style was somehow not the one independently created by Mr. Gregerman, but rather the crystal angel purportedly created by Mag, which Mag had "permitted" Gregerman to sell. Despite the logical inconsistency of this position,[10] Mag utilized the second affidavit to oppose Style's motion for summary judgment.

Importantly, despite Mag's counsel's assertions, nowhere in Second Affidavit submitted by Mag does Mr. Gregerman repudiate his earlier claim of independent creation. Mag claims a copyright on a crystal angel, and is suing Style for infringing that copyright by distributing substantially similar crystal angels. Style purchased and resold a quantity of the crystal angels from Gregerman, who in turn has always maintained that he independently created the crystal angel. The competing claims of independent creation of Mag and Gregerman are claims that are clearly adverse to each other. There remains the potential for direct litigation between Mag and Gregerman to determine the validity of their respective claims. Moreover, if the assertion by Mag's counsel at summary judgment hearing is correct – that Gregerman's Second Affidavit contradicts and repudiates his First Affidavit – then Mag must believe and must assert at trial that Mr. Gregerman committed perjury in his earlier testimony.

It is patent and obvious that Mag and Gregerman have been and remain *actual and*

---

[10] Reference is made to Mag's earlier characterization of the Gregerman angel as "virtually identical and infringing." *See* fn 8. Yet Mag now argues, apparently for purposes of this motion only, that the piece Gregerman supplied to Style was somehow a different piece than that which Gregerman claims to have created. Mag should not be permitted to benefit by such inconsistencies.

*potential* adversaries. Mag's voluntary disclosure of otherwise protected work product to someone with interests adverse to his waives any work-product protection afforded those documents, even under the flawed test relied upon in the Memorandum and Order.

Finally, the Memorandum and Order concludes that Style's averment that it be allowed to probe the business relationship of Mag and Mr. Gregerman for witness bias is somehow not consistent with Style's claim that Mag and Gregerman are actual or potential adversaries. (Memorandum and Order, p. 4.) Such a conclusion is clearly erroneous and utterly illogical. The Magistrate Judge concluded that Mag and Gregerman are currently "cooperating" and are therefore not adversaries and then concludes that Style therefore should not be allowed to probe the relationship for witness bias. Cooperation between Mag and the witness and probing the relationship for bias are hardly mutually exclusive. The business relationship between Mag and Gregerman is essential to any examination of bias on the part of Gregerman. The purported current relationship of "cooperation" may be motivated and influenced by their business relationship, i.e., economic incentives or unequal bargaining power, and Style is entitled to probe the reasons why these two entities, with such clearly adverse claims, are now cooperating, if in fact they are doing so.

**B. It Is Unarguable that Defendants Have Substantial Need and that Denying Access to the Materials Would Create Substantial Hardship.**

To deprive the defendants of the opportunity to examine documents leading up to the Second Affidavit would be manifestly unjust. If Second Affidavit or Mr. Gregerman's "new" testimony (at least as interpreted by plaintiff) so utterly alters the factual landscape, then the defendants are entitled to explore the issue fully and to do so *prior to trial*. The inability to do so is obviously "substantial need" or "undue hardship" sufficient to overcome whatever claim of work-product protection has been asserted.

## III. CONCLUSION

Defendants would be entitled to inquire of Mr. Gregerman at deposition and will be able to inquire of him at trial concerning his communications with plaintiff's counsel. There is simply no just reason for denying defendants the opportunity to prepare fully for such inquiry or to require them to rely upon Mr. Gregerman's memory of those communications and documents. The court must overturn the Memorandum and Order and order that Mag immediately produce all materials exchanged with Mr. Gregerman, including correspondence and affidavit drafts.

Dated: December 30, 2005

STYLE ACCESSORIES, INC.

By Its Attorneys,

TRN

Thomas R. Noel, Esq. (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
(401) 272-7400
(401) 621-5688 (Facsimile)

## CERTIFICATE OF SERVICE

I do hereby certify that on the 30th of December, 2005, I served a true copy of this document to the following counsel of record by First Class Mail: Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

TRN