RECEIVED FEB 28 '06

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. | : | |
| Plaintiff | : | |
| VS. | : | C.A. NO.: 04-174T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC. | : | |
| Defendants | : | |

**PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS' FROM INTRODUCING ADDITIONAL EVIDENCE AT TRIAL AS TO COSTS REGARDING THE MANUFACTURE AND/OR SALE OF THE INFRINGING PIECE**

Now comes your Plaintiff, Mag Jewelry Co., Inc., and moves for an Order of this Court precluding the Defendants from introducing, at trial, any additional evidence as to costs, related to the sale of the infringing piece, aside from that which has been previously disclosed in response to discovery. In support of its Motion, Plaintiff relies on the attached Memorandum of Law, which is filed contemporaneously herewith.

**WHEREFORE**, the Plaintiff respectfully requests that its Motion be granted.

Plaintiff,
By and Through Its Attorney,

Thomas A. Tarro, III #2046
THE LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 737-7200
(401) 732-3362 (fax)

Robert W. Clarida Esq. #3190
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9266
(212) 575-0671 (facsimile)

**CERTIFICATION**

I hereby certify that I mailed a faxed a copy of the above ***Motion in Limine*** regular mail on the 28 day of February, 2006, to:

Craig M. Scott, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas R. Noel, Esq.
NOEL & GYORGY, LLP
50 South Main Street
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | C.A. NO.: 04-174T |
| | : | |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC. | : | |
| | : | |
| Defendants | : | |

**PLAINTIFF'S MEMORANDUM OF LAW MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING ADDITIONAL EVIDENCE, AT TRIAL, AS TO COSTS REGARDING THE SALE OF THE INFRINGING PIECE**

Now comes your Plaintiff, Mag Jewelry Co., Inc., and moves for an Order of this Court precluding the Defendants from introducing, at trial, any additional evidence as to costs, related to the sale of the infringing piece, aside from that which has been previously disclosed in response to discovery.

## I. FACTUAL BACKGROUND

This matter involves a copyright infringement action brought pursuant to 17 USC § 101 et. seq. against the Defendants Cherokee, Inc., Target Corporation d/b/a Target Stores and Style Accessories, Inc. arising out of the Defendant's infringement of the Mag's copyright in the subject "Crystal Angel" jewelry piece. With respect to the Plaintiff's damage claim, it seeks to recover all profits derived from the sales of the infringing piece by the Defendants, plus attorney's fees and costs, pursuant to 17 USC § 505.

With respect to the damage claim, the Plaintiff served interrogatories and document requests on each of the Defendants, as follows:

> **INTERROGATORY NO. 17**: Please set forth a breakdown of the cost, per piece, to this Defendant for the "Crystal Angel" necklace, including, but not limited to the cost for the

component parts (ie. stones, jump ring, etc.), the cost for platting or soldering or the cost for casting, and if casted, the cost for the gluing of stones into the piece.[1].

Plaintiff further made document requests against each of the Defendants as follows:

**REQUEST NO. 33:** All documents which refer to, relate to or concern a breakdown of the cost per piece for a) the crystal angel pin; b) the crystal angel earrings; c) the crystal angel necklace, including, but not limited to the cost for the component parts (i.e., stones, jump rings, etc.) for the crystal angel jewelry pieces which are the subject of this litigation.

With respect to the Defendant Target, it responded to the foregoing interrogatory and document request as follows:

**ANSWER NO. 17:** Defendant objects to Interrogatory No. 17 on the grounds that it is overly broad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Defendant further objects to responding to any part of Interrogatory No. 17 on the grounds that the number of interrogatories propounded exceeds the twenty-five (25) interrogatories permitted pursuant to Fed.R.Civ.P. 33. Without waiving said objections, and subject specifically thereto, this Interrogatory does not apply to Target because it did not manufacture the "Crystal Angel" necklace and therefore has no manufacturing costs, as identified.

**RESPONSE NO. 33:** Target has no documents in its possession custody or control responsive to Request No. 33.

As to Defendant Cherokee, Inc. it responded to the foregoing discovery requests as follows:

**RESPONSE NO. 7:** Defendant objects to Interrogatory No. 9 on the grounds that it is overly broad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Defendant further object to responding to any part of Interrogatory No. 9 on the grounds that the

[1] Plaintiff served identical interrogatories concerning manufacture and/or sale of the subject "Crystal Angel" piece in the form of earrings and/or pin to each of the Defendants. The Plaintiff will not belabor the Court with a reproduction of those interrogatories and document requests, which are identical with the exception that the interrogatories are directed to manufacture and/or sale of the infringing piece in the form of earring or pin.

number of interrogatories propounded exceeds the twenty-five (25) interrogatories permitted pursuant to Fed.R.Civ.P. 33.

Without waiving said objections, and subject specifically thereto:

a. Cherokee does not claim to have independently created or manufactured the "Crystal Angel" necklace;
b. Inapplicable;
c. Inapplicable;
d. Inapplicable;
e. None;
f. Cherokee was not involved in the design of the "Crystal Angel" necklace;
g. Cherokee was not involved in making any mold used to make the "Crystal Angel" necklace;
h. Cherokee did not sell the "Crystal Angel" necklace;
i. Cherokee did not sell the "Crystal Angel" pin and so did not derive profit from the sales of the "Crystal Angel" necklace;
j. Cherokee keeps no inventory of "Crystal Angel" necklaces;
k. No;
l. Inapplicable because Cherokee did not manufacture the "Crystal Angel" necklace;
m. Inapplicable because Cherokee did not manufacture the "Crystal Angel" necklace and no supplier provided Cherokee with component parts; and
n. Inapplicable because Cherokee did not manufacture the "Crystal Angel" necklace.

**RESPONSE NO. 33:** Cherokee has no documents in its possession, custody or control responsive to Request No. 33.

Lastly, as to Style Accessories, it provided the following response to the foregoing discovery requests:

**ANSWER NO. 7:** Style does not claim to have independently created a crystal angel pin. Style did not manufacture the piece, but purchased and resold a quantity of crystal angel pins to Seta Corp. at approximately $1.30 per piece. Invoices compiled by Style thus far total 23, 760 pins shipped to Seta; Style has located additional invoices and is compiling them. The additional invoices show combined

gross sales of $29,586.83 for additional pins *and* earring sets; the breakdown for this additional amount of sales (as between pins and earring sets) it is at the time not known, and Style will supplement this Answer in due course. Style did not design the piece, which was widely available on the market in the early 1990's and, upon information and belief, prior to that time. No molds were utilized by Style. The pin sold to Seta was manufactured and supplied by Alan Gregerman Co., and later by Dannik, Inc. Style paid Gregerman $.78 per piece and Dannik $.72 per piece. Style is in the process of calculating the profit, if any, it derived from the sale of this piece after accounting for its hard costs and a percentage of overhead. Style has a few samples of this piece in inventory at this time at its Rhode Island place of business. Style did not copy any piece sold or created by Mag jewelry.

**ANSWER NO. 8:** Style does not claim to have independently created crystal angel earrings. Style did not manufacture the piece, but purchased and resold a quantity of the earring to Seta Corp. at approximately $2.50 per pair. Invoices compiled by Style thus far total 11,349 earring pairs shipped to Seta; Style has located additional invoices and is compiling them. The additional invoices show combined gross sales of $29,586.83 for additional pins *and* earring sets; the breakdown for this additional amount of sales (as between pins and earring sets) it is at this time not known, and Style will supplement this Answer in due course. The earrings sold to Seta was manufactured and supplied by Alan Gregerman Co., and later by Dannik, Inc. Style paid Gregerman and Dannik $1.24 per pair. Style is in the process of calculating the profit, if any, it derived from the sale of this piece after accounting for its hard costs and a percentage of overhead. Style has a few samples of this piece in inventory at this time at its Rhode Island place of business. Style did not copy any piece sold or created by Mag jewelry.

**ANSWER NO. 9:** Style does not claim to have independently created crystal angel necklace. Style did not manufacture the piece, but purchased and resold approximately 170,430 pieces. Style did not design the piece, which was widely available in the early 1990's and, upon information and belief, prior to that time. No molds were utilized by Style. Style adapted a piece purchased from Alan Gregerman Co. by removing the post from the earring configuration and adding a bale to attach it to a necklace chain. Style sold the necklace to Target Stores, Inc. Style's

records indicate it shipped 173,430 pieces to Target Stores, Inc. at $1.50 per piece, to which a ten-percent (10%) discount applied, leaving an actual sales price of $1.35 per piece. The sale price included wrapping and carding. The necklace sold to Target was manufactured and supplied by Seigee Jewelry Corp., from which Style purchased the piece at $.47 per piece. Additional hard costs to Style included shipping at $.09 per piece, carding at $.03 per piece. Freight of $.12 per piece, and duty of $.05 per piece. Style is in the process of calculating the profit, if any, it derived from the sale of the piece after accounting for its hard costs and a percentage of overhead. Style has a few samples of this piece in inventory at this time at its Rhode Island place of business. Style did not copy any piece sold or created by Mag jewelry.

**RESPONSE NO. 33:** Style objects to this Request because it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents subject to the attorney-client privilege or protected at work-product. Without waiving the foregoing objection and subject to it, Style refers to documents produced in response to earlier Requests.

None of the Defendants filed supplemental answers to the interrogatories and document requests with respect to costs related to the infringing piece neither prior to the discovery closure nor since discovery closure to the present.

With respect to the Defendant Target, the Plaintiff noticed the 30(b)(6) Deposition of Target Corporation d/b/a Target Stores, which took place on June 17, 2005. Within its 30(b)(6) Notice, the Plaintiff specifically set forth the subject matters on which examination was to be conducted, including (specific to the instant motion) the cost; directly related to the sales of the infringing piece by the Defendant Target. Plaintiff further sought any and all documents not previously produce, which evidenced the purchase of the infringing angel piece by Target from any source.

At the 30(b)(6) deposition of Target a representative of the Defendant, Lourdes Sanchez, was identified most knowledgeable in response to the 30(b)(6) Notice. Ms. Sanchez offered testimony that the cost to purchase the piece by Target from Style Accessories, was $1.50 per piece. She offered no other

testimony at her deposition concerning any other costs related to the purchase and sale of the infringing piece by Target. A document summarizing the number of pieces sold, sales price, cost to purchase, and "direct cost" was produced. However, no underlying documentation supporting said "direct costs", such as identifying the specific cost or how the figure was calculated was ever produced by Target during discovery.

As to the Defendant Cherokee, a 30(b)(6) Notice of Deposition which took place on April 22, 2005. Within the Notice of Deposition, Plaintiff requested that the deponent bring with him to the deposition all documents not previously produced, which evidenced the purchase and sale of the infringing piece by the Defendant Cherokee.

An individual by the name of Russell Riopelle was designated by the Defendant Cherokee as the person most knowledgeable to testify in response to the 30(b)(6) Notice. Mr. Riopelle testified that pursuant to the trademark licensing agreement with Dayton Hudson Corporation – the predecessor to Target Corporation – Cherokee received a royalty from Target based on the number of pieces sold. Mr. Riopelle did not offer any testimony nor did he produce any documents at his deposition with respect to any costs to Cherokee related to the sale of the infringing piece by Target.

Lastly, as to the Defendant Style Accessories, it has provided specific costs directly related to the sale of the infringing piece; which are set forth in detail in the Plaintiff's Summary of Damages (Exhibit "A") attached to its Pre-Trial Memorandum filed with the Court. Aside from the costs set forth therein, the Defendant Style never supplemented its response to the individual interrogatories or requests for production setting forth any additional costs, which it alleges are directly or indirectly related to the manufacture and/or sale of the infringing piece prior to discovery closure.

On or about February 24, 2006 – 10 days prior to this matter being reached for trial – defense counsel for Style faxed a correspondence to Plaintiff's counsel enclosing Income Statements of Style Accessories, Inc. and net revenue calculation sheets that Style "may utilize at trial". Attached to the fax were six

pages, which appear to set forth other costs to Style related to the sale of the infringing jewelry piece. The fax transmission to Plaintiff's counsel at approximately 4:32 p.m. on Friday, February 24, 2006 was the first time that Plaintiff's counsel received the purported income statements and net revenue calculation sheets of Style Accessories.

The aforestated documents were never produced previously in response to specific discovery requests during the discovery period and prior to discovery closure on May 16, 2005. As a result, Plaintiff's counsel was entirely precluded from conducting any inquiry as to the documents and how the specific figures were calculated therein, with respect to net revenue and income of the Defendant Style Accessories. The documents were not produced to Plaintiff's counsel at the time of the 30(b)(6) Deposition of Style Accessories, which took place on June 15, 2005.

Based on the foregoing, your Plaintiff now seeks an Order of the Court precluding any additional evidence of costs – direct or indirect – at trial, on behalf of the Defendant Style Accessories, including, but not limited to those six (6) documents faxed to Plaintiff's counsel for the first time on February 24, 2006 setting forth income statements and net revenue calculations of Style. Moreover, Plaintiff seeks an Order of the Court precluding the Defendants Cherokee and Target from introducing any evidence – aside from Target's cost to purchase the piece – at the trial in this matter, where they have failed to timely supplement their discovery to include any such further additional costs.

## II. LEGAL ARGUMENT

Plaintiff submits that the law is clear that in determining damages, under the Copyright Act 17 USC § 101 et seq, the Plaintiff may recover the profits from the sale of the infringing piece by the Defendant(s). Along these lines, the Defendants' profits consist of the amount of money that Defendant has made due to the infringement after deducting the Defendants' expenses directly related to the production and marketing of the infringing product.

With respect to the latter, it is clearly the Defendants' burden to prove what expenses, if any, are directly related to the production and sale of the infringing

piece. To meet the burden of proving any expenses to be deducted from the profits awarded to the Plaintiff, the Defendant must prove that each category of expenses it claims as a deduction is directly related to the production or sale of the infringing product. Accordingly, the law requires the Defendant to show evidence of a sufficient connect between each category of the expenses claimed and the production and sale of the infringing product. Further, the Defendant bears a burden of proving that the method used to calculate its expenses is fair, reasonable and accurate. *Hamil AM, Inc. vs. GLFI*, 193 F.3d 92 (2nd Cir. 1999).

Your Plaintiff submits that it will be greatly prejudiced if the Defendants are permitted to introduce at trial any additional evidence of costs – direct or indirect – relating to the sale of the infringing piece, which costs have not been properly disclosed to Plaintiff's counsel pursuant to the Rules of Civil Procedure and in response to prior discovery requests. Along these lines, the Plaintiff urges the Court to recognize that the Defendant Style – within the past two days – has produced to the Plaintiff's counsel purported income statements and net revenue calculations which it "may utilize" at trial. These documents were never provided in response to prior discovery requests within the discovery phase of this matter, nor were they produced at the 30(b)(6) deposition of Style Accessories; despite the fact that the Plaintiff's 30(b)(6) Notice of Deposition clearly sets forth as a subject matter for examination the following:

3. The person most knowledgeable regarding the cost of manufacture of the Crystal Angel jewelry piece, which Mag Jewelry claims infringes upon its copyright by any outside source, to Style Accessories, Inc.
4. The person most knowledgeable regarding the cost of the purchase of the Crystal Angel jewelry piece, which Mag Jewelry claims infringes upon its copyright from any outside source, by Style Accessories, Inc.
5. The person most knowledgeable regarding the cost directly related to the sale of the Style Accessories' Crystal Angel jewelry piece, which Mag Jewelry claims infringes upon its copyright to customers of Style Accessories, Inc. other than Target Corporation d/b/a Target Stores.
6. The person most knowledgeable regarding the cost directly related to the sale of the Style Accessories' Crystal Angel

jewelry piece, which Mag Jewelry claims infringes upon its copyright to Target.

Plaintiff submits that Defendants Style's belated disclosure violates its obligations under Rule 26(e)(2). Rule 26 (e)(2) of the Federal Rules of Civil Procedure requires that a party who has responded to a request for discovery "seasonably" supplement or correct the response with information thereafter acquired if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. A party's failure to seasonably supplement *"shall not*, unless such failure is harmless, be permitted to use as evidence at a trial...any witness or information not so disclosed." Rule 37(c)(1) (emphasis added). This Rule is mandatory. *Klonski v. Mahlab,* 156 F.3d 255, 269 (1st Cir 1998). The Court in Klonski emphasized that "the new rule contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is *mandatory* preclusion." *Id.*

Furthermore, Rule 26(e) is to be read generously, in light of its dual purpose, the narrowing of issues and the elimination of surprise. *Pulin v. Greer*, 18 F.3d 979, 984 (1st Cir. 1994) (quoting *Johnson v. H.K. Webster, Inc.* 775 F.2d 1, 7 (1st Cir. 1985)). The presence of surprise and prejudice play a central role in the decision to preclude or not preclude testimony. *Id.* In reviewing the contention that discovery answers were not properly supplemented within the strictures of the rule, the court should look to the conduct of the trial, the importance of the evidence to the proponent, and the ability of the opposing party to formulate a response. *Thibeault v. Square D Co.,* 960 F.2d 239, 244 (1st Cir. 1992). The reason for the proponent's failure to update his discovery seasonably should also be carefully examined. *Id.* This Court is entitled to find that since this evidence will necessarily compromise Plaintiff's pretrial preparation, any supplementation came too late to be "seasonable" under the Federal Rules and must be precluded. *Fusco v. General Motors Corp.*, 11 F.3d 259 (1st Cir. 1993)

(excluding exhibits untimely produced even though there was no rigid deadline for production).

It is undisputed that the Plaintiff propounded Interrogatories and Request for Production seeking information related to costs to each Defendant regarding the "Crystal Angel" jewelry piece. The Defendants, Target and Cherokee, responded to the interrogatory indicating that it did not apply because it did not manufacture the subject "Crystal Angel", along with posing an objection to the request on the grounds that it was overly broad and duly burdensome and not calculated to lead to the discovery of admissible evidence.

Clearly information concerning costs related to the sale of the infringing piece are discoverable in a copyright infringement action. Accordingly, the objection of Cherokee and Target is without merit. As to the response to the Request for Production concerning costs, both Cherokee and Target indicated that they had no documents in their custody, care or custody responsive to the particular request. Moreover, as indicated previously herein, the only cost that the Defendant Target has set forth in discovery was the cost to purchase the piece from Style Accessories at $1.50, per piece. As to the Defendant Cherokee, no documents or response to other discovery requests have set forth any costs related to its sale of the infringing piece.

As to the Defendant, Style Accessories, it did provide information concerning costs in response to its Answers to Interrogatories; which costs have been calculated into the Plaintiff's claim for damages.

As to each of the Defendants, none of their responses to Interrogatories or Request for Production were ever supplemented in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.[2]

The Defendants have chosen not to comply with the mandates of Rule 26(e) with respect to supplementation concerning information regarding costs related to

---

[2] Plaintiff reiterates its prior argument that the Defendant, Style Accessories, six (6) page fax that was forwarded to Plaintiff's counsel on February 24, 2006 enclosing Income Statements of Style Accessories and net revenue calculation sheets that may be utilized at trial should clearly be precluded from being introduced at trial due to the late disclosure and failure of the Defendant Style to comply with the Federal Rules of Civil Procedure, as set forth herein.

the infringing piece. Accordingly, their failure warrants this Court's exclusion of any additional evidence being introduced by the Defendants as to costs regarding the sale of the infringing piece, including but not limited to the Income Statements of Style Accessories and Net Revenue Calculation Sheets that were provided to Plaintiff's counsel for the first time by fax on February 24, 2006.

Along these lines, Plaintiff submits that the harm and prejudice that would inure to the Plaintiff in permitting the Defendant to introduce evidence which was not previously disclosed in discovery is clear and obvious. The Plaintiff has requested this information by and through Interrogatories, Request for Production, as well as 30(b)(6) Notice of Deposition. Discovery closed in this matter on May 16, 2005. The introduction of additional information as to costs – which has not been properly and timely disclosed – made on the eve of trial is inappropriate and clearly not in accordance with the disclosure requirements under the Rules.

## III. CONCLUSION

Based on the foregoing, the Plaintiff's Motion to Preclude Defendants from introducing additional evidence at trial as to costs regarding the sale of the infringing piece should be granted in all respects.

Plaintiff,
By and Through Its Attorney,

Thomas A. Tarro, III #2046
THE LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 737-7200
(401) 732-3362 (fax)

Robert W. Clarida Esq. #3190
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9266
(212) 575-0671 (facsimile)

**CERTIFICATION**

I hereby certify that I fax and mailed a copy of the above Memorandum in Support of Motion in Limine to Preclude Defendants from Introducing Additional Evidence at Trial as to Costs, regular mail on the 28 day of February, 2006 to:

Craig M. Scott, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas R. Noel, Esq.
NOEL & GYORGY, LLP
50 South Main Street
Providence, RI 02903

Judy Iacco