UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | |

**DEFENDANTS CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION'S MOTION FOR AWARD OF ATTORNEYS' FEES**

On March 23, 2006, the Court entered Judgment in favor of Defendants Cherokee, Inc. and Target Corporation and against Plaintiff, Mag Jewelry Co., Inc. ("Mag). Pursuant to Fed. R. Civ. P. 54 (d)(2), LR Cv 54.1 and 17 U.S.C. § 505, Defendants Cherokee, Inc., Robert Margolis, and Target Corporation move for an award of prevailing party attorneys' fees in the amount of $164,018.65, which includes $162,129 in hourly attorneys' fees plus related non-taxable expenses in the amount of $1,889.65. As grounds for this Motion, Defendants rely on the Memorandum of Law and the supporting affidavits of Craig M. Scott, Esq. and William R. Grimm, Esq. filed herewith.

Respectfully Submitted,
Cherokee, Inc. and Target Corporation
By Their Attorneys,

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 (Tel)
(401) 455-0701 (Fax)

Dated: April 6, 2006

**CERTIFICATION**

TO:

Thomas A. Tarro, III, Esq.
Kris R. Macaruso Marotti, Esq.
The Law Firm of Thomas A. Tarro III, Esq.
The Summit East, Suite 330
300 Centerville Road
Warwick, RI 02886

Robert W. Clarida, Esq.
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036

Thomas R. Noel, Esq.
Noel & Gyorgy LLP
50 South Main St.
Providence, RI 02903

I hereby certify that I caused a true copy of the within *Motion for Award of Attorneys Fees* to be sent via First Class Mail to the above named counsel of record on the 6 day of April, 2006.

Theresa Benson

H:\Clients\Target Corporaton.MAG\Style Fashion Jewelry - Mag\Pleadings\Motion for Award of Fees.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff<br><br>vs.<br><br>CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | C.A. No. 04-174 T |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION'S MOTION FOR AWARD OF ATTORNEYS' FEES**

Over the last decade, Mag Jewelry Company, Inc. ("Mag") disseminated dozens of threatening letters and brought over sixteen (16) lawsuits in Rhode Island against local and national manufacturers and sellers of a piece of angel jewelry made out of four commonly available crystal stones. Mag threatens and sues armed with an amended Copyright registration with a "corrected" date of creation (from 1995 to 1992) that Mag revised after a Warwick businessman, Alan Gregerman, advised Mag that he independently created an identical 4-stone crystal angel in 1994.

In 2002, Mag sued Cherokee, Inc. ("Cherokee") and Target Corporation ("Target") in Brooklyn, New York to evade this Court and the local rumblings about its purported copyright and the Alan Gregerman piece. Confronted with a Motion to Transfer, Mag argued strenuously against having to litigate here, its home state and chosen forum in over a dozen other lawsuits. After the case was transferred in 2004 over Mag's objection, Mag pursued this case through summary judgment and trial despite knowing for years that Alan Gregerman independently created the 4-stone crystal angel, that Mr. Gregerman was not a licensee of Mag, and that Mr.

Gregerman sold the Alan Gregerman crystal angel to Style Accessories, Inc. ("Style") , which sold the product to Target.

This is perhaps the archetypical case that warrants an award of costs and fees per 17 U.S.C. § 505, both to deter Mag from future litigious bullying and pretrial discovery machinations and to compensate Defendants for having to fund a four year defense against Mag's infirm copyright infringement claim.

## FACTS AND PROCEDURAL BACKGROUND

On January 18, 2002, Mag sued Cherokee, Cherokee's Chief Executive Officer Robert Margolis ("Margolis"), and Target in the Eastern District of New York. On March 5, 2002, Cherokee, Target and Margolis moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) or transfer this action to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a) (the "Transfer Motion").

In support of the Transfer Motion, Defendants argued that Plaintiff should have brought the case here because, among other things, (1) Plaintiff is a Rhode Island company, (2) Style, a necessary party, is also a Rhode Island company, and (3) Rhode Island would be a more convenient forum because several non-party witnesses, including Alan Gregerman, would be outside the subpoena power of the trial court should the case remain in the Eastern District of New York. (See March 4, 2002 Affidavit of Jayne Trudell in Support of Defendants' Motion to Dismiss or Transfer, at ¶ 9) (A true copy of the Trudell Affidavit is attached hereto as Exhibit A.)

Plaintiff argued in opposition that since it purchased the accused works in New York, a substantial part of the events at issue took place there. In their Reply Memorandum, Defendants argued that the receipts attached to the Complaint confirm that on December 2, 2001, Mag went to Target's Warwick, Rhode Island store (store no. 1188) and purchased eight (8) accused works

from that store. (See Exhibit D to Complaint.) Six weeks later, Mag purchased three (3) more accused works from a Target store in Queens, New York. Mag then filed suit in New York, even though it first bought the accused works in Rhode Island. Defendants called the factual discrepancies about the origin of the accused works to the attention of the Court in the Reply Memorandum filed in support of the Transfer Motion.

While the Transfer Motion was pending, Mag propounded numerous interrogatories and document requests and noticed the deposition of Robert Margolis, a California resident, in New York. The influx of discovery and Mag's attempt to depose Mr. Margolis in New York forced Defendants to move to stay discovery during the pendency of the Transfer Motion. On October 11, 2002, the Court granted Defendant's Motion to Stay Discovery. A few months later, in May 2003, Plaintiff requested that the Court reconsider the Stay. The Court denied Plaintiff's Request.

On March 31, 2004, the Court granted Defendants' Motion to Transfer the case to the District of Rhode Island. Thereafter, Mag filed its First Amended Complaint, which added Style. At that point Mag knew that Target purchased the accused piece from Style and that Cherokee was a mere licensee of a trademark pursuant to a License Agreement with Target. Mag also knew that Mr. Margolis, a corporate executive of Cherokee, did not manufacture, sell or promote the accused piece; regardless, Mag reasserted its claims of copyright infringement against Cherokee and Mr. Margolis.

On December 22, 2004, Mag answered interrogatories propounded by Style and identified Alan Gregerman as a person with knowledge or information concerning the substance of the claims and defenses in this litigation. On December 30, 2004, Style responded to

Plaintiff's Interrogatory No. 5 and informed Mag that the accused piece was manufactured for Style by Alan Gregerman, Dannick, Inc. and Seigee Jewelry Corp. of South Korea.

After an unsuccessful mediation effort, the parties began deposition discovery. In response to a Rule 30(b)(6) deposition notice, Cherokee flew its Chief Financial Officer from California to Boston, Massachusetts. During that 45 minute deposition the Cherokee representative confirmed that Cherokee does not design, manufacture or sell any products and did not design, manufacture or sell the accused crystal angel piece. Cherokee's CFO also testified that because of the structure of the License Agreement with Target, Cherokee had no records reflecting what, if anything, Cherokee was paid as a royalty for sales of the piece at issue. Finally, on June 8, 2005, Plaintiff dismissed all claims against Robert Margolis with prejudice and without any remuneration, but Mag continued to press its claims against Cherokee.

Thereafter, Cherokee moved for summary judgment on Mag's infringement claims, arguing that it is not a direct infringer because it did not manufacture, market, distribute or sell the accused piece. Cherokee also argued that it is not a vicarious infringer because Cherokee did not have the right and ability to supervise the allegedly infringing activity, nor did it have an obvious and direct financial interest in the alleged infringement. Mag argued that the contents of the License Agreement raised questions of fact as to whether Cherokee is liable as a vicarious copyright infringer.

Style also moved for summary judgment on the grounds that Mag could not prevail on its infringement claims against any Defendant because it could not establish that Style copied the Mag crystal angel piece. [1] (See Memorandum of Law in Support of Style's Motion for Summary Judgment, p. 1.) Defendants asserted that Style obtained the accused crystal angel piece from

[1] On August 3, 2005, Defendants Cherokee and Target filed Notice that they joined Style's Motion for Summary Judgment.

Alan Gregerman and that Style sold the Alan Gregerman crystal angel piece to Target (see Style's Rule 12.1 Statement, ¶¶ 8, 10). Defendants also asserted that Style did not copy the Mag crystal angel piece and that Style's principal did not know of Mag or its copyright when it obtained the crystal angel piece from Alan Gregerman. (See Style's Rule 12.1 Statement, ¶ 11.) Defendants relied on a June 12, 2000 affidavit from Mr. Gregerman attesting to the fact that he independently created his crystal angel and started shipping the product in September 1994. (See Exhibit F to Style's Rule 12.1 Statement, ¶¶ 4, 5.)

In its Rule 12.1 Statement, Mag conceded that "The Crystal Angel piece Style Accessories, Inc. sold to Target Stores was obtained from Alan Gregerman." (See Mag's Rule 12.1 Statement, ¶ 7.) Thus, as of September 9, 2005, all parties agreed that the accused crystal angel piece Style sold to Target was obtained from Alan Gregerman.

To avoid summary judgment, however, Mag put forward an argument it knew to be wrong. Mag argued that Alan Gregerman did not independently create his crystal angel but, rather, he was a licensee of Mag. (See Mag's Rule 12.1 Statement, ¶ 5.) To support that claim, Mag attached to its Rule 12.1(2) Statement a so-called "license agreement." In fact, it was a September 15, 1996 covenant-not-to-sue letter from Daniel Magnamini to Mr. Gregerman. In its initial filing, Mag offered no deposition testimony, affidavits or interrogatory answers contradicting the sworn testimony offered by Defendants that established that Alan Gregerman independently created the crystal angel piece sold by Style. At that point, the case was ripe for summary judgment in favor of Defendants because Mag had failed to establish that Style copied the Mag crystal angel piece.

Three days later, Mag filed a Supplemental Memorandum in Opposition to Style's Motion for Summary Judgment, and a Supplemental Rule 12.1 Statement that attached and

referenced a new affidavit from Alan Gregerman. The new Gregerman affidavit does not retract Mr. Gregerman's 2000 statement that he independently created a crystal angel and sold that product to Style, but it does represent that "Based on an agreement with Daniel Magnamini, Alan Gregerman Company can make and sell the subject 'Crystal Angel' jewelry piece." From that statement, Mag argued at the hearing on the Motions for Summary Judgment that Mr. Gregerman manufactured and sold the accused crystal angel piece to Style pursuant to an agreement with Mag and suggested that Mr. Gregerman was a licensee of Mag:

> He [Alan Gregerman] is saying in this Affidavit that there is a Mag piece that is covered by the Mag copyright, and that is what he sold to Style. And pursuant to an agreement, which Mr. Noel says, well, it can't really be a license because it doesn't have this, that and the other things, that's simply not copyright law. It's a nonexclusive license as Mr. Noel points out[2] both Mag and Gregerman can sell this angel, it's a nonexclusive license.
>
> ***
>
> I think a reasonable jury looking at this second Affidavit might conclude, you know, he didn't independently create that.[3]

(Excerpts of the Transcript of the Summary Judgment proceedings "Tr." are attached hereto as Exhibit B.)

The Court denied Defendants' Motions for Summary Judgment. The Court cautioned, however, that "I hope we don't find out by the time this case comes to trial that all of this is a smoke screen and that plaintiffs are just grasping at straws here to keep the case alive, and I'm not suggesting that is so. I'm just saying I hope we don't find that out."[4]

---

[2] The transcript does not reflect such a statement from Mr. Noel, who, in fact, stated that "Mag attempts to argue and assert that there exists a license agreement between Mr. Gregerman and Mr. Magnanimi. The theory, I suppose, would be that a license implies superior rights. As a matter of law, your Honor, that license is inoperative. The only people calling this letter written by Mr. Magnanimi in 1996 a license are Mr. Tarro and his client. Mr. Gregerman has never called it a license." (Tr. 31:3-11.)

[3] Tr. 38:18-39:23.

[4] Tr. 43:17-21.

Immediately thereafter, Style moved to compel Mag to produce the documents exchanged between its counsel and Mr. Gregerman that had resulted in the new Gregerman affidavit. Mag objected to the Motion to Compel and argued that it should not be required to produce any communications with Mr. Gregerman because, it claimed, the communications were protected as "attorney work product." (See Mag's Objection to Style's Motion to Compel Production of Documents, p. 2.) The Motion to Compel was referred for consideration by a Magistrate Judge, and the Magistrate Judge denied the Motion to Compel.

Defendants objected to the Magistrate Judge's Order denying the Motion to Compel and also moved to modify the Pretrial Order to allow for additional discovery from Alan Gregerman. Again, Mag objected. Mag ignored the fact that it had created and produced the new affidavit after the close of discovery and argued that Defendants should have taken the deposition of Mr. Gregerman within the discovery period but had failed to do so.

On January 9, 2006, the Court entered an Order granting Defendants' Motion to modify the Pretrial Order to take discovery from Mr. Gregerman. Mag moved to vacate that Order. On February 16, 2006, the Court, after hearing, granted Defendants' motion to depose Mr. Gregerman, sustained Defendants' Objection to the Magistrate Judge's Order and granted Defendants' Motion to Compel Production for Documents from Mag concerning its counsel's communications with Mr. Gregerman. The documents showed that Mag sought out Mr. Gregerman and asked that he sign the new affidavit to assist with Mag's Objection to Defendants' Motions for Summary Judgment. Mag's counsel forwarded a draft affidavit that included proposed paragraph 5, which stated that "Based on an agreement with Daniel Magnamini, Alan Gregerman Company has a license to make and sell the subject 'Crystal Angel' jewelry piece." (Exhibit C.)

At his February 2006 deposition, Mr. Gregerman testified that he had refused to sign the draft affidavit proposed by Mag because the Alan Gregerman Company was not a licensee of Mag:

> Q: The date on this letter for identification is August 23, 2005?
> A: Yes, it is.
> Q: Did you review the affidavit?
> A: Yes, I did.
> Q: You did not sign it, correct?
> A: No, I did not.
> Q: Can you explain, for the record, why you did not?
> A: Well, there were certain things in the letter which I objected to.
> Q: Did you communicate your concerns or objections to anybody?
> A: Yes, I did.
> Q: Who?
> A: To Kris.
>
> ***
>
> Q: Would that be Kris Marotti?
> A: Yes. [5]
>
> ***
>
> Q: Can you recite that conversation? Do you recall that conversation?
> A: I just said that I wouldn't sign it the way that it was.[6]
>
> ***
>
> Q: What else in this document did you disagree with?
> A: Okay. Provision 5, I objected to that, the way it was written.
> Q: Why?
> A: Because in that provision it states that based on an agreement with Danny Magnanimi, Alan Gregerman Company has a license, and that was not the case.
> Q: You didn't understand that you had a license, correct?
> A: I did not have – as far as I was concerned, based on my definition or my understanding of a license, I did not have a license from Danny.
> Q: You were selling your Crystal Angel in the Summer of 2005, correct?

---

[5] Deposition of Alan Gregerman, 31:6-24. Cited excepts of the deposition of Alan Gregerman attached as Exhibit D.

[6] Deposition of Alan Gregerman, Exh. D, 32:4-7.

A: Correct.
Q: And that was your creation that you were selling, correct?
A: Correct.
Q: Do you recall telling Ms. Marotti in that or some other conversation that you didn't have a license?
A: I'd never been – I don't recall that I even used that word. I – I'm trying to think. I told her I would not sign it the way that it was and I objected to the word license because I didn't feel it applied.[7]
Q: And you told Ms. Marotti that?
A: Correct.

Thus, Mag advanced the "licensee" and "no independent creation" arguments at summary judgment knowing they were incorrect. In fact, as far back as June 1997, Mag's counsel acknowledged that Mr. Gregerman had rights in his crystal angel and tried to convince Mr. Gregerman to assign the rights to his crystal angel to Mag. (Exhibit E.) Mr. Gregerman never agreed to assign any of his rights to his crystal angel to Mag. (E.g. Exhibit D, 28:21-31:5.) Despite knowing that Mr. Gregerman would not sign the proposed affidavit because he did not have a license from Daniel Magnanimi, and despite knowing that Mr. Gregerman had never assigned his rights in the 4 stone crystal angel piece he independently created, Mag still made the licensee" and "no independent creation" arguments at the hearing.

Mag made the same "licensee" argument at trial. In its Pretrial Memorandum Plaintiff identified Alan Gregerman as a Mag licensee. (Plaintiff's Pretrial Memorandum, p. 5.) Mag went on to represent that "[i]n and around 1996, Daniel Magnanimi and Alan Gregerman entered into a license agreement." (Plaintiff's Pretrial Memorandum, p. 6.) Mag also represented that Mr. Gregerman "had the right to sell Mag's piece and that Mag would not sue Style Accessories if the piece was purchased from Gregerman." (Plaintiff's Pretrial Memorandum, p. 7.)

[7] Deposition of Alan Gregerman, Exh. D, 33:2-34:5.

Mag took other liberties in its Pretrial Memorandum. For example, it asserted that "[t]he Crystal Angel jewelry piece has been widely sold commercially throughout the United States since 1992." (Plaintiff's Pretrial Memorandum, p. 5.) Plaintiff's own evidence (Trial Exhibit 16) reflects that Mag sold its crystal angel no earlier than September 12, 1994.

On March 9, 2006, the third day of trial, Plaintiff called Alan Gregerman as a witness. Mr. Gregerman testified consistent with all of his prior testimony, namely that he independently created his crystal angel in response to a customer's request. He also testified that the Alan Gregerman Company had only ever sold the Alan Gregerman crystal angel piece and sold that piece to Style. Mag introduced no evidence that Alan Gregerman had access to or saw Mag's crystal angel piece before he designed the Alan Gregerman crystal angel.

With respect to Cherokee, Mag introduced the License Agreement. Mag elicited no evidence that Cherokee had the right or ability to exercise the requisite level of control and supervision over Target's allegedly infringing conduct. Mag also failed to introduce any evidence that Cherokee had an obvious and direct financial interest in the infringement – the second element of proof required to prevail on its claim of vicarious infringement.

Defendants moved for Judgment as a Matter of Law. Style argued on behalf of Defendants that Mag had failed to prove that Style copied the Mag crystal angel piece because the evidence established that Style purchased and copied the Alan Gregerman piece, which was independently created and sold by Alan Gregerman in 1994. Cherokee also moved for Judgment as a Matter of Law on the issue of vicarious infringement because Mag failed to introduce evidence that Cherokee had the right and the ability to supervise the infringing activity and had an obvious and direct financial interest in the infringement.

After hearing, the Court granted Style's Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50. The Court found that Mag had failed to introduce sufficient evidence that Style copied the Mag crystal angel for the case to go to the jury.

## ARGUMENT

### A. DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES.

The fee shifting provision of the 1976 Copyright Act states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

Unlike most fee-shifting statutes, section 505 allows attorney's fees to be awarded to defendants on an "even-handed" basis with plaintiffs. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 72-73 (1st Cir. 1998). The *Fogerty* Court confirmed that a fee award rests in "the [trial] court's discretion" and that there is no formula dictating when an award is appropriate. 510 U.S. at 534; *see also Lotus Dev*, 140 F.3d at 72-73 ("We will disturb a ruling under section 505 only if the record persuades us that the trial court indulged in a serious lapse in judgment"). The *Fogerty* Court did, however, also offer a non-exclusive list of factors that courts may consider when exercising that discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[8] 510 U.S. at 534 n. 19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986)); *see*

[8] The *Fogerty* Court expressly disapproved the practice of awarding fees to prevailing defendants only upon a showing of frivolousness or bad faith. *Id.* at 531-32.

*also Garcia-Goyco v. Law Envir. Consultants, Inc.*, 428 F.3d 14, 20 (1st Cir. 2005); *Lotus Dev.*, 140 F.3d at 72-73.

The First Circuit applies the *Fogerty* factors in affirming awards of attorney's fees where a plaintiff's copyright claim is "objectively weak" even if the claim is not frivolous or instituted in bad faith. *See, e.g., InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 20-21 (1st Cir. 2004); *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998). In *InvesSys*, the district court rejected a copyright claim and awarded fees because the evidence ultimately showed that the plaintiff company did not did not own the copyrighted software. In affirming the fee award, the First Circuit stated that "at first blush it might appear as if the plaintiffs had a colorable claim." 369 F.3d at 21. However, after further factual development, the plaintiffs' claim of ownership of the software appeared "more dubious." *Id.* The First Circuit noted that in determining whether to award attorney's fees, the district court's judgment as to the reasonableness of the original claim had to rest on what plaintiff knew when it made and pressed its claim and not merely on the unfavorable outcome. *Id.*

Similarly, in *Matthews*, plaintiff Denise Matthews made and sold a children's t-shirt with a design entitled, "Someone Went to Boston and got me this shirt because they love me Very much." 157 F.3d at 26. Defendant, Alan Freedman, a competing souvenir producer, offered a children's t-shirt with the slogan "Someone Who Loves Me Went to Boston and Got Me this Shirt."

Matthews sued Freedman for copyright infringement. After a non-jury trial, the district court granted judgment in defendant's favor. *Id.* Thereafter, the court considered defendant's request for attorneys' fees. The district court ruled that even though Matthews' claim was not frivolous and was not brought in bad faith, Matthews "did try to extend her copyright protection

far beyond what is allowed by law." *Id.* at 29. Thereafter, the district court awarded attorney's fees to defendant. Matthews appealed.

In reviewing the award of fees, the First Circuit characterized the district court's conclusion that plaintiff tried to "extend her copyright protection far beyond what is allowed by law" as a judgment call well within the district court's discretion. *Id.* The First Circuit reiterated that a "plaintiff's decision to bring a weak, if nonfrivolous, case and to argue for an unreasonable extension of copyright protection are relevant concerns," and agreed that a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable. *Id.*; *see also Garcia-Goyco*, 428 F.3d at 20 (affirming district court award of fees to a defendant where plaintiffs misused the copyright to leverage their position and the plaintiffs' copyright claim was an effort to bootstrap a state law contract action into federal court); *cf. Edwards v. Red Farm Studio Co.*, 109 F.3d 80, 82-83 (1st Cir. 1997) (reversing denial of fee award, finding it was an abuse of discretion to refuse to award attorneys fees where plaintiff's claim was unreasonable).

Based on established First Circuit law and the *Fogerty* factors (frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence), Defendants should be awarded fees. *See Fogerty*, 510 U.S. at 534 n. 19. Here, Mag knew that Warwick businessman Alan Gregerman claimed to have independently created his 4 stone crystal angel in 1994, years before Mag filed suit in the Eastern District of New York. In fact, Mag amended its copyright registration after learning of Mr. Gregerman's creation and perhaps sued in New York to evade this Court and the subpoena power it would have over Mr. Gregerman as a trial witness.

As of 1997, when its request for an assignment was rebuffed, Mag knew that Alan Gregerman retained rights to his crystal angel. By December 2004 at the latest, Mag knew that Style had purchased the accused crystal angel piece from Alan Gregerman. Because of what Mag knew concerning Mr. Gregerman's rights to his independently created crystal angel piece and Style's initial purchase of that piece, Mag's continued pursuit of its Amended Complaint was objectively unreasonable. As discovery progressed, Plaintiff's copyright claim bordered on the frivolous as there was ultimately no question Style first purchased the accused work from the Alan Gregerman Company. Faced with that incontrovertible evidence that eviscerated Mag's copying allegation, plaintiff prepared an inaccurate affidavit for Mr. Gregerman to sign that averred that the Alan Gregerman Company was a licensee of Mag. After Mr. Gregerman refused to sign the affidavit – telling plaintiff's counsel it was false because the Alan Gregerman Company was not a Mag licensee– plaintiff wasted four months of party and Court time trying to evade discovery of its attempts to manipulate the new Gregerman affidavit. Mag continued its "licensee" argument through trial, all the while knowing the argument lacked merit and Style did not copy the Mag crystal angel piece.

Not only did Mag pursue objectively weak claims against all Defendants, it also unreasonably kept Cherokee and its Chief Executive Officer, Robert Margolis, in this suit. Here, Mag knew from the outset of the case that Mr. Margolis was merely an executive at Cherokee. Regardless of the fact it had no evidence against Mr. Margolis of any type of infringement, Mag kept Mr. Margolis in this case until June 2005, at which point it appropriately agreed to dismiss Mr. Margolis with prejudice. Similarly, even after it adduced evidence that Cherokee did not have the right and the ability to supervise the alleged infringing activity and had no obvious and direct financial interest in the alleged infringement, Mag argued against Cherokee's Motion for

Summary Judgment and took Cherokee to trial, where it introduced no testimonial evidence against Cherokee. *See e.g., Op Art, Inc. v. B.I.G. Wholesalers, Inc.*, 2006 U.S. Dist. LEXIS 10641, at *6-7 (N.D. Tex. Mar. 15, 2006) (awarding defendant attorneys fees where plaintiffs were given every opportunity to develop their case against the defendant but failed to uncover any evidence to support their allegations, which belied plaintiffs' argument that they pursued their claims against defendant in good faith).

In sum, Mag's suit was objectively unreasonable – both factually and legally – and arguably frivolous in light of what it knew about Alan Gregerman's creation and Style's purchase and sale of the Alan Gregerman piece. Despite clear law that independent creation is an absolute defense to copyright infringement, and despite knowing that it could not prove that Style copied Mag's crystal angel, Plaintiff pursued Defendants through voluminous discovery, cross-country depositions, summary judgment, multiple motions in limine and three days of trial. Plaintiff wasted the judicial resources of two Courts and forced four defendants to incur attorneys' fees and costs to respond to Plaintiff's tenuous case and pretrial machinations. Under the circumstances of this "objectively weak" claim, awarding Defendants their attorneys' fees places the burden of these needless costs on Plaintiff, which plainly serves the purpose of the Copyright Act, both to deter Mag in the future and to compensate Defendants. *See InvesSys*, 369 F.3d at 22.

**B. <u>THE ATTORNEYS FEES AND COSTS REQUESTED ARE RESONABLE.</u>**

In determining a reasonable attorney's fee, courts consider the amount of work, the skill employed, damages at issue, and the result achieved. *E.g., OCG Microelectronic Mat'ls, Inc. v.* White, 40 F. Supp.2d 83, 86 (D.R.I. 1999); *see also Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir.

1983).[9] Here, Target and Cherokee were defendants in this suit from 2002 through trial; Mr. Margolis was a defendant from 2002 through mid-2005. The case involved copyright law, a specialized area of the law, in which defendants' counsel have a regular practice.[10] In its Pretrial Memorandum, Plaintiff sought $552,430.38 from Target and $11,048.61 from Cherokee, plus interest and attorneys fees, all of which confirm that this case involved a threat of significant damages to Defendants. With respect to the result achieved, Plaintiff dismissed its claims against Mr. Margolis with prejudice, and Cherokee and Target prevailed on a Rule 50 Motion after three days of trial, which required significant preparation.

In support of this Motion, Defendants have provided the billing invoices that reflect the work performed, rates charged and hours and expenses billed. Per LR Civ 54.1, Defendants have also provided the supporting affidavit of William R. Grimm, Esq., who practices locally and has focused part of his practice in intellectual property law. Accordingly, Defendants respectfully submit that the work performed, the hourly rate and the hours billed are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

As part of the costs and fees allowed by 17 U.S.C. § 505, Defendants also seek $1,889.65 in non-taxable costs for disbursements Defendants made for (1) Federal Express ($293.71); (2) on-line research ($385.60); (3) courier fees ($15.45); and (4) travel costs for the Minnesota, Massachusetts and Florida depositions noticed by Plaintiff ($1,194.89). The charges in question were incurred in connection with this case and charges of this nature are not included in firm overhead but rather customarily are billed to clients. These types of charges have been allowed

[9] Defendants are not seeking any fees or costs associated with preparing the instant Motion, nor are Defendants seeking fees paid to Cherokee, Mr. Margolis or Target's New York counsel in connection with the Transfer Motion prepared in response to the Complaint filed in New York.

[10] In fact, Plaintiff hired a New York lawyer, Robert Clarida, to assist with its copyright claims, which supports the suggestion that copyright is a specialized area of the law.

as part of attorneys' fee awards under the law of this Circuit, *InvesSys,* 369 F.3d at 22-23; *United Nuclear Corp. v. Cannon*, 564 F. Supp. 581, 591-92 (D.R.I. 1983), and should be allowed here.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court award Defendants $164,018.65 pursuant to Fed. R. Civ. P. 54(d)(2) and 17 U.S.C. § 505, which includes $162,129 as attorneys fees, plus $1,889.65 in related non-taxable expenses.

Respectfully Submitted,
Cherokee, Inc., Robert Margolis and
Target Corporation
By Their Attorneys,

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 (Tel)
(401) 455-0701 (Fax)

Dated: April 6, 2006

**CERTIFICATION**

TO:

Thomas A. Tarro, III, Esq.
Kris R. Macaruso Marotti, Esq.
The Law Firm of Thomas A. Tarro III, Esq.
The Summit East, Suite 330
300 Centerville Road
Warwick, RI 02886

Robert W. Clarida, Esq.
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036

Thomas R. Noel, Esq.
Noel & Gyorgy LLP
50 South Main St.
Providence, RI 02903

I hereby certify that I caused a true copy of the within *Memorandum of Law in Support of Motion for Award of Attorneys' Fees* to be sent via First Class Mail to the above named counsel of record on the 6 day of April, 2006.

Theresa Benson

H:\Clients\Target Corporaton.MAG\Style Fashion Jewelry - Mag\Pleadings\Mem Support Motion for Award of Fees.doc

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------x

MAG JEWELRY CO., INC., :

Plaintiff, :

v. : 02 Civ. 0466 (SJ)

CHEROKEE, INC., ROBERT MARGOLIS :
AND TARGET CORPORATION d/b/a
TARGET STORES, :

Defendants. :

------------------------------x

**AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

JAYNE G. TRUDELL, being duly sworn, deposes and says:

1. I am in-house counsel to defendant Target Corporation ("Target").

2. I have personal knowledge of the facts set forth herein except where the statements are upon information and belief, and I believe those statements to be true.

3. I am familiar with the claims asserted by Mag Jewelry Co., Inc. ("Mag") in this litigation and have investigated certain facts relating to those claims.

4. Cherokee, Inc. ("Cherokee") licenses certain trademarks to Target. Cherokee does not design, manufacture or distribute jewelry items for or to Target and did not sell to Target the accused works that are the subject of the Complaint.

5. Target purchased the accused works from a Rhode Island corporation, Style Accessories, Inc. ("Style").

6. If this matter is not resolved, it is anticipated that defendants' counsel will conduct discovery in Rhode Island, including reviewing documents produced by plaintiff Mag.

7. Defendants' counsel also expect to take the depositions of Mag's principals, representatives and employees, including Daniel Magnanimi, Donald Donnelly, Frank Vescera and Martha Medberry, all of whom are expected to testify as to Mag's purported rights in the accused work and its damage claims. Defendants expect that those depositions will be noticed for Rhode Island, where, upon information and belief, the above-referenced witnesses are located.

8. It is also anticipated that the depositions of certain principals and employees of Style, the distributor of the accused works, will be taken in Rhode Island because Style is based there. It is expected that the principals and employees of Style would testify as to defendants' right in and distribution of the accused work.

9. Finally, it is our understanding that Mag filed suit against a number of other manufacturers, distributors and/or sellers in Rhode Island involving the same putative copyright that is the subject of this complaint; defendants' counsel also intends to take the depositions of certain representatives of those defendants in Rhode Island, including Alan Gregerman of Warwick, Rhode Island, who, upon information and belief, has claimed to be the creator of the accused work, and Nicholas Verrechia, a former employee of Cathedral Art Manufacturing Co. (Providence, Rhode Island) who has, upon information and belief, claimed to be the creator of the accused work.

10. At this time, defendants do not foresee taking any discovery in, or calling any witnesses from, the Eastern District of New York.

11. Upon information and belief, Target has no documents relating to this action located in the Eastern District of New York.

12. For these reasons, it would be more efficient to transfer this matter to the United States District Court for the District of Rhode Island.

s/Jayne G. Trudell
JAYNE G. TRUDELL

SUBSCRIBED AND SWORN to before me this 4th day of March, 2002.

s/Susan D. Carlson
NOTARY PUBLIC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.A. No. 04-174T |
| MAG JEWELRY CO., INC., * | OCTOBER 21, 2005 |
| VS. * | 11:00 A.M. |
| CHEROKEE, INC., et al. * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF DISTRICT JUDGE

(DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)

APPEARANCES:

FOR THE PLAINTIFF: Cowan, Liebowitz & Latman
By: Robert Clarida, Esquire
1133 Avenue of the Americas
New York, NY 10036-6799

Tarro Law Offices
By: Thomas A. Tarro, III, Esq.
By: Kris Macaruso Marotti, Esq.
300 Centerville Road - Suite 330
Summit East
Warwick, RI 02886

copyright, I understand Danny Mag did create a crystal angel. That's of no import to this case.

Mag attempts to argue and assert that there exists a license between Mr. Gregerman and Mr. Magnanimi. The theory, I suppose, would be that a license implies superior rights. As a matter of law, your Honor, that license is inoperative, and the Court can decide that at this stage. The only people calling that letter written by Mr. Magnanimi in 1996 a license are Mr. Tarro and his client. Mr. Gregerman has never called it a license. He doesn't call it a license even in his second Affidavit, the one obtained by Mag's counsel. That letter does not ask for, does not contain Mr. Gregerman's assent, does not contain essential terms of the license, such as the identity of the subject matter, such as consideration, such as a term that the license, purported license is intended to have. It fails for indefiniteness and it fails under the statute of frauds for a number of reasons; never signed by Mr. Gregerman, signature was never asked for. For them to come forward now and say this is a license that Mr. Gregerman had, therefore, the Court should assume that Gregerman copied us and had admitted copying us is faulty and the Court should not accept that. Even if it were a license of some sort, at most

said?

MR. CLARIDA: Correct. Starting with what Mr. Noel concedes is not a disputed fact, "I acknowledge that Mag jewelry has a copyright registration for the subject crystal angel." When he talks about the subject crystal angel, he's talking about the Mag angel. Then he says, "Based on an agreement with Daniel Magnanimi, Alan Gregerman Company can make and sell the subject crystal angel jewelry piece." That is the Mag crystal angel jewelry piece that is covered by Mag's copyright registration. That is what "subject crystal angel piece" means here, it is a defined term, Mr. Noel is correct. Paragraph 6, "I inform any potential customers interested in purchasing the subject crystal angel that it has been copyrighted by Mag Jewelry Company." Paragraph 7, "Alan Gregerman Company sold the subject crystal angel jewelry piece to Style Accessories, Inc." He is talking about the piece that is covered by the Mag copyright. Now, whether he addresses prior independent creation or not, I think is not relevant. He is saying in this Affidavit that there is a Mag piece that is covered by the Mag copyright, and that is what he sold to Style. And pursuant to an agreement, which Mr. Noel says, well, it can't really be a license because it doesn't have this,

that, and the other thing, that's simply not good copyright law. It is a nonexclusive license as Mr. Noel points out, both Mag and Gregerman can sell this angel, it's a nonexclusive license. Nonexclusive copyright licenses can arise from conduct. They don't have to be written down at all, there don't have to be any terms. There are, in fact, some terms here, but it certainly doesn't have to be written, doesn't have to be signed by Mr. Gregerman because under section 204 of the Copyright Act, it would only have to be signed if it were an exclusive license, and even then it would have to be signed by Mr. Mag because he is granting the license. So all those formal --

THE COURT: What is the disputed question of material fact?

MR. CLARIDA: The disputed question of material fact is whether Mr. Gregerman independently created that piece, and I don't believe the evidence that Mr. Noel points to would convince a reasonable jury beyond a genuine issue of fact that he did so. I think a reasonable jury looking at this second Affidavit might conclude, you know what, he didn't independently create that.

THE COURT: First of all, Mr. Noel, where in the first Affidavit does he say he independently created

It's Exhibit 6 in Plaintiff's 4.1 Statement. Exhibit 6. It's a letter dated September 15, 1996. I have copies here.

THE COURT: I think I've heard enough here. This is a very good illustration of the problems with summary judgment in some of these cases. Summary judgment is not a substitute for trial, and in some cases, frankly, I think that counsel put more time and effort into summary judgment motions than it would take to try the case, as evidenced by the mountain of paper that's been generated here.

It seems to me that there are just too many factual links that have to be established here to be able to resolve this on summary judgment for the Court to say as a matter of law that this is not an infringing product.

Now, having said that, I would also say that I hope we don't find out by the time this case comes to trial that all of this is a smoke screen and that the plaintiffs are just grasping at straws here to keep the case alive, and I'm not suggesting that is so. I'm just saying that I hope we don't find that out. First of all, there is no point to it, all it does is generate a lot of extra expense that is unnecessary, and, secondly, it takes up the time of the Court and

THE LAW FIRM OF
THOMAS A. TARRO III, ESQ.
THE SUMMIT EAST – SUITE [illegible]
[illegible] CENTERVILLE ROAD
WARWICK, RHODE ISLAND [illegible]

THOMAS A. TARRO III
[illegible]@tarrolawfirm.com

ANTHONY S. BUGLIO
abuglio@tarrolawfirm.com

KRIS R. MACARUSO MAROTTI
kmarotti@tarrolawfirm.com

[illegible]
FAX [illegible]

August 23, 2005

Alan Gregerman
Alan Gregerman Company
23 . Elms Street
Warwick, RI 02888

Re: Mag Jewelry v. Cherokee, et al

Dear Mr. Gregerman:

Please find enclosed an Affidavit, which I have prepared based on our discussions concerning Mag's "Crystal Angel" jewelry piece. I believe it accurately reflects your position with regard to the piece.

I understand that you intend to review the Affidavit with your legal counsel prior to signing.

Upon doing so, I would ask you to forward the signed Affidavit in the enclosed stamped, self-address envelope, or contact my office to discuss the Affidavit further, if necessary.

I thank you for your kind cooperation with respect to this matter.

Very truly yours,

Kris Macaruso Marotti

KMM:jt
Enclosure

DEFENDANT'S
EXHIBIT
8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| VS. | : | C.A. NO.: 04-174T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC<br>Defendants | : | |

**AFFIDAVIT OF ALAN GREGERMAN**

I, Alan Gregerman, under oath do hereby state as follows:

1. I am the owner and principal of Alan Gregerman Company with a business address at 231 Elms Street, Warwick, RI 02888. Alan Gregerman Company is a corporation duly organized and existing under the laws of the State of Rhode Island in the business of jewelry manufacture and sales.

2. I have personal knowledge with respect to Mag Jewelry Co., Inc.'s "Crystal Angel" jewelry piece which is the subject of the instant matter.

3. Based on my knowledge the subject "Crystal Angel" jewelry piece was created and designed by Daniel Magnanimi of Mag Jewelry Co., Inc.

4. I acknowledge that Mag Jewelry Co., Inc. has a copyright registration for the subject "Crystal Angel" jewelry piece.

5. Based on an agreement with Daniel Magnanimi, Alan Gregerman Company has a license to make and sell the subject "Crystal Angel" jewelry piece.

6. As per company policy, I inform any potential customer interested in purchasing the subject "Crystal Angel" piece that it is the creation of Daniel Magnanimi of

Mag Jewelry Co., Inc. and that Alan Gregerman Company has the right to manufacture and sell the piece pursuant to a license agreement with Mag Jewelry CO., Inc.

7. Alan Gregerman Company sold the subject "Crystal Angel" jewelry piece to Style Accessories, Inc., which is located at 3 Acorn Street, Providence, Rhode Island for a short period of time from May, 1997 to August, 1998.

8. As per policy, and to the best of my recollection, I informed Chad Mollica of Style Accessories, Inc. of the fact that the subject "Crystal Angel" piece was the creation of Daniel Magnanimi of Mag Jewelry Co., Inc. and that Alan Gregerman Company had the right to manufacture and sell the piece pursuant to a license agreement with Mag Jewelry Co., Inc.

9. I have never challenged the copyright registration of Mag Jewelry Co., Inc. in and to the subject "Crystal Angel" jewelry piece, nor do I have any intention of challenging said copyright registration.

Further Affiant sayeth not.

Alan Gregerman

State of Rhode Island
County of

In said County on the day of August, 2005, before me personally appeared Alan Gregerman, each and all to me known, and known by me to be the party executing the foregoing instrument and he acknowledged said instrument, by his executed to be his free act and deed.

Notary Public
My Commission Expires:

THE LAW FIRM OF
THOMAS A. TARRO III, ESQ.
THE SUMMIT EAST SUITE 330
300 CENTERVILLE ROAD
WARWICK, RHODE ISLAND 02886

Kris Macaruso Marotti, Esq.
Law Firm of Thomas A. Tarro, III
300 Centerville Road
Summit East, Suite 330
Warwick, RI 02886

STATE OF RHODE ISLAND
PROVIDENCE COUNTY SUPERIOR COURT

MAG JEWELRY CO., INC.,

vs. C.A. No. 04-174T

CHEROKEE, INC., TARGET CORPORATION
D/B/A TARGET STORES,
and STYLE ACCESSORIES, INC.,

DEPOSITION OF ALAN GREGERMAN, a witness in the above-entitled cause, taken on behalf of the Defendant, before Devin J. Baccari, CSR, a Notary Public in and for the State of Rhode Island, at the Law Office of Peter P.D. Leach, 1 Charles Street, Providence, Rhode Island, on February 17, 2006 scheduled at 10:00 a.m.

PRESENT:

FOR THE PLAINTIFF

LAW OFFICE OF THOMAS A. TARRO
BY: THOMAS A. TARRO, ESQUIRE

FOR THE DEFENDANT STYLE ACCESSORIES

NOEL & GYORGY LLP
BY: THOMAS R. NOEL, ESQUIRE
JOHN HARRINGTON, ESQUIRE

FOR THE DEFENDANT TARGET & CHEROKEE

DUFFY & SWEENEY, LTD
CRAIG M. SCOTT, ESQUIRE

FOR THE WITNESS

LAW OFFICE OF PETER P.D. LEACH
PETER P.D. LEACH, ESQUIRE

ALSO PRESENT: DAN MAGNANIMI



2a921355-21c8-4d0b-a864-4113695699c9

But basically it was an agreement and the agreement was that I could continue making the Four Stone Angel without any repercussions if I would let him make and sell the -- my angel with the metal wings which I have a copyright on.
Q. When you use the word "repercussions," you're talking about litigation?
A. Litigation.
Q. Is that right?
A. Yes.
Q. At this point in time, you didn't give up your claim that you were the independent creator of your angel in Exhibit 1; is that right?
A. I didn't feel I did.
Q. Do you recall receiving at any time another document from Mag Jewelry?
A. Yes, I did.
(Defendant's Exhibit 7 was so marked.)
Q. We've placed before you Exhibit 7.
A. Uh-huh.
Q. Can you identify that?
A. Yes, it's a copyright assignment.
Q. When was the first time you saw that?
A. I don't remember.
Q. Do you remember how you came to have that?

A. I believe it was mailed to me.
Q. From?
A. Mr. Tarro's office.
Q. Do you remember if there was a letter along with this document?
A. I don't remember.
Q. You don't have that letter -- you don't have anything else that came with this document; is that correct?
A. I do not have that.
Q. Did you read this document when you received it?
A. Yes, I did.
Q. What did you do with it?
A. Pretty much ripped it up.
Q. Did you ever sign it?
A. Never.
Q. Did you have an understanding at the time what was being asked of you?
A. Yes, I did.
Q. What was that? What was your understanding?
A. That I would --
MR. TARRO: Objection. Go ahead.
A. That I would give up my right to the Four Stone Angel.
Q. The angel depicted in Exhibit 1?

A. Correct.
Q. Did you have any intention at this time of giving up those rights?
MR. TARRO: Objection.
A. Never.
Q. Did Mag or Mr. Tarro's office ever try to follow-up on this document?
A. I believe they did.
Q. Do you recall approximately when that was?
A. Had to be shortly after I received it.
Q. Do you remember who it was and what was said?
A. No, I don't.
Q. In any event, you didn't sign this, did you?
A. No.
Q. Were you contacted by Mr. Tarro's office in August of 2005?
A. Yes.
Q. Can you recall how you were first contacted?
A. I believe it was by mail.
Q. You received something in the mail?
A. Yes, I did.
Q. You think that was the first contact you had with Mr. Tarro's office in August of 2005?
A. I believe -- I believe so.
MR. NOEL: Exhibit 8, please.

(Defendant's Exhibit 8 was so marked.)
Q. I'm going to show you what's been marked as Exhibit 8, please.
A. Okay. This was the affidavit that was sent to me to sign.
Q. The date on this letter for identification is August 23, 2005?
A. Yes, it is.
Q. Did you review that affidavit?
A. Yes, I did.
Q. You didn't sign it, correct?
A. No, I did not.
Q. Can you explain, for the record, why you did not?
A. Well, there were certain things in the letter which I objected to.
Q. Did you communicate your concerns or objections to anybody?
A. Yes, I did.
Q. Who?
A. To Kris.
Q. Would that be Kris --
A. The paralegal or the other attorney.
Q. Would that be Kris Marotti?
A. Yes.
Q. Did you telephone her to do that?

A. They telephoned me. The office telephoned me.
Q. When approximately did they telephone you?
A. Shortly after I received that letter.
Q. Can you recite that conversation? Do you recall that conversation?
A. I just said that I wouldn't sign it the way that it was.
Q. What did Ms. Marotti tell you in that conversation at the time?
A. I don't recall the exact conversation. I just remember that I communicated that I wouldn't sign this affidavit, that I didn't -- there were some points that I didn't think were factual or represented the true circumstances.
Q. Can you just give me your understanding of what caused you not to sign the affidavit, what points?
A. Yeah. I mean, I -- there was Provision 3 which I objected to.
Q. Why did you object to that?
A. Because Provision 3 states that based on my knowledge the subject Crystal Angel jewelry piece was created and designed by Danny Magnanimi of Mag Jewelry Company, Inc. And I could not sign that because I don't know that he did. I wasn't

there when he did it.
Q. What else in this document did you disagree with?
A. Okay. Provision 5, I objected to that, the way it was written.
Q. Why?
A. Because in that provision it states that based on an agreement with Danny Magnanimi, Alan Gregerman Company has a license, and that was not the case.
Q. You didn't understand that you had a license, correct?
A. I did not have -- as far as I was concerned, based upon my definition or my understanding of license, I did not have a license from Danny.
Q. You were selling your Crystal Angel in the Summer of 2005, correct?
A. Correct.
Q. And that was your creation that you were selling, correct?
A. Correct.
Q. Do you recall telling Ms. Marotti in that or some other conversation that you didn't have a license?
A. I'd never been -- I don't recall that I even used that word. I -- I'm trying to think. I

told her that I could not sign it the way that it
was and I objected to the word "license" because
I didn't feel it applied.
Q. And you told Ms. Marotti that?
A. Correct.
Q. Did you ever tell that to Mr. Tarro?
A. I don't believe so.
Q. Were there further communications with you from
Mr. Tarro's office after that one?
A. Yes.
Q. Can you just tell me what those were.
A. I received many phone calls asking me to sign
this.
Q. Phone calls from whom?
A. From Mr. Tarro's office.
Q. Was it Ms. Marotti or somebody else?
A. Ms. Marotti and Mr. Tarro as well as Danny.
Q. Can you tell us what those conversations
entailed.
A. It was pretty much that they needed me to sign
this for some litigation that they were involved
in.
Q. Was that after you had told them you objected to
terms in the affidavit?
A. Yes.

Cowan, Liebowitz & Latman, P.C.
LAW OFFICES

1133 Avenue of the Americas • New York, NY 10036-6799

*Telephone* (212) 790-9200 • *Internet* law@cll.com • *Fax* (212) 790-9300

# Fax Cover Sheet

*Writer's Direct Dial*
(212) 790-9266

**Our Ref:** 21589

**To:** Alan Gregerman **Fax No:** (401) 785-4337
**Tel No:**

**From:** Robert W. Clarida **Date:** June 20, 1997

**No Confirmation Copy** **No. of Pages (Incl. Cover):** 4

**Message:** Dear Mr. Gregerman:

Further to your conversation this morning with Mr. Tarro and Mr. Magananimi, I attach a draft copyright assignment. In essence, this document conveys whatever rights you may have in the angel design to Mag Jewelry. Please review it with your attorney, and feel free to contact me directly if you have any questions. If the document is acceptable in its present form, please let me know and I will send you an execution copy by overnight mail.

Robert W. Clarida

Enclosures

Confidentiality Notice
This facsimile message is intended only for the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this fax is strictly prohibited. If you have received this fax in error, please notify the writer directly by telephone and return to us by mail the original fax at the above address.

RWC/RWC/21589/00/255981_01

# COPYRIGHT ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **Alan Gregerman**, acting both individually and as an officer of Alan Gregerman Co., with offices at 231 Elm Street, Warwick, Rhode Island, 02888 ("Assignor"), hereby sells, assigns and transfers to **Mag Jewelry Co., Inc.**, with offices at 838 Dyer Avenue, Cranston, Rhode Island, 02920 ("Assignee"), absolutely and forever, all right, title and interest of whatever kind Assignor may possess in and to the crystal angel jewelry design which is the subject of Assignee's copyright registration VA 758-661, as amended, a copy of which is annexed hereto as Exhibit A, including without limitation the copyright therein, the right to register the copyright therein, any and all renewals and extensions of any such copyright in the United States of America and every other country in the world, all causes of action for any and all previously occurring infringements of the rights being assigned, and the right to receive and retain the proceeds relating to those infringements.

IN WITNESS WHEREOF, Assignor has caused this Copyright Assignment to be duly executed and delivered as of the ____ day of June, 1997.

BY: ______________________________
Alan Gregerman

NOTARY PUBLIC:

______________________________

RWC/RWC/21589/00/253974.01