UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff<br><br>vs.<br><br>CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | C.A. No. 04-174 T |

**DEFENDANT STYLE ACCESSORIES INC.'S MOTION FOR AWARD OF COSTS INCLUDING ATTORNEYS' FEES**

On March 9, 2006, on the third day of trial, the Court granted defendants' motion for judgment as a matter of law, dismissing the plaintiff's case pursuant to Fed. R. Civ. P. 50. Judgment entered on March 23, 2006. Accordingly, pursuant to 17 U.S.C. § 505 and Local Rule 54.1, defendant Style Accessories Inc. hereby moves for an Order of this Court granting defendant's *Motion for Award of Costs Including Attorneys' Fees* in the amount of $158,798.76.

As grounds for this Motion, defendant relies on the *Memorandum of Law*, supporting *Affidavit of Thomas R. Noel, Esq.* and the itemized statement of expenses and attorney time attached thereto, and the supporting *Affidavit of Michael Feldhuhn, Esq.* as disinterested counsel under Local Rule 54(b)(2).

Dated: April 6, 2006

STYLE ACCESSORIES, INC.
By Its Attorneys,

TRN

Thomas R. Noel (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

**CERTIFICATION**

I hereby certify that on April 6th, 2006, I served a copy of the foregoing via First Class Mail to Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

Ann T. Kapielian

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STYLE ACCESSORIES, INC.'S MOTION FOR AWARD OF COSTS INCLUDING ATTORNEYS' FEES**

## I. INTRODUCTION

As set forth at trial, this action concerned alleged copyright infringement of a ubiquitous piece of costume jewelry known as the crystal angel. Despite a mountain of evidence to the contrary (only some of which was actually presented at trial), the plaintiff, Mag Jewelry Co., Inc. ("Mag"), claimed to be the first and only creator of the crystal angel design. Whether Mag's principal actually created the piece Mag claimed, and *when* he created it if he did so, were never determined at trial, but those determinations are not necessary for this motion.

Even assuming that Mag owns a valid copyright on its crystal angel design, the prosecution and maintenance of this claim against these defendants was, from the beginning, without basis. Given Mag's and its counsel's experience on the crystal angel infringement circuit and its knowledge of other, existing independent creations of the same crystal angel including the one that was central to the case, Mag's conduct of this litigation was egregious. Among other things, Mag defeated defendants' summary judgment motion by arguing that,

despite the refusal of witness Alan Gregerman to change his testimony for Mag, the crystal angel Mr. Gregerman had sold Style somehow wasn't his own crystal angel but was instead the Mag crystal angel, made and sold under a license from Mag. The Court's admonition to plaintiff's counsel at the time that the argument ought not be a mere "smoke screen" was in fact prophetic.

## II. FACTS AND PROCEDURAL BACKGROUND

On October 6, 2004, the plaintiff, Mag Jewelry Co., Inc. ("Mag") filed an *Amended Complaint* in this action adding Style Accessories, Inc. ("Style") as a party-defendant. In that pleading, Mag asserted, without evidence, that Style had manufactured and sold crystal angel jewelry items that were "*copied from*" Mag's crystal angel. In its *Answer*, Style admitted selling crystal jewelry depicting an angel design, but explicitly denied that it had copied the Mag crystal angel. *See Style Accessories, Inc.'s Answer to Amended Complaint*, filed on October 26, 2004, ¶¶ 17-19.

In addition to directly denying in its initial pleading that it had copied any work of Mag's, Style included the following Affirmative Defense:

> There exist on the market numerous claimed independent creations of angel jewelry designs utilizing juxtaposed crystal stones that are substantially similar to plaintiff's claimed design and plaintiff cannot, as a matter of law, identify its own piece as that which was copied, if any copying occurred by any person or entity.

*See Answer to Amended Complaint, Eleventh Affirmative Defense.*

Two months later, on December 30, 2004, Style provided answers to Mag's interrogatories. One answer, responding to a fourteen-part interrogatory concerning the crystal angel necklace, informed Mag about the origin of the crystal angel necklace at issue sold by Style to co-defendant Target Stores:

> Style adapted a piece purchased from Alan Gregerman Co. by removing the post from the earring configuration and adding a bale to attach it to a necklace chain. Style sold the necklace to Target Stores, Inc.… Style did not copy any piece sold or created by Mag jewelry.

*Style's Answers to Plaintiff's Interrogatories, Answer No. 9.*[1]

Mag was by that time well-aware of the Alan Gregerman Co., its owner, Mr. Alan Gregerman, and Mr. Gregerman's long-standing claim that he had independently created his crystal angel design:

- In 1996, Mag had threatened Mr. Gregerman with suit over the crystal angel design[2] (which Mag then claimed to have created, and which Mag first sold, in 1995), only to back off when Mr. Gregerman presented evidence of his creation and distribution of his piece in mid-1994. (Mag then amended its copyright application, claiming a creation date in early 1992, more than three years prior to its first claimed date.)
- On June 19, 1997, five years before the commencement of this suit against these defendants, Mr. Gregerman was deposed in the case of *Eden Jewelry Co., Inc., v. Mag Jewelry Co., Inc.,* which also involved the crystal angel design. Mr. Gregerman testified then that he independently created his crystal angel, did so in 1994,[3] and that he had an "agreement" with Mag whereby they agreed not to challenge each other in court but to "just continue what we were doing."[4]
- Also in June of 1997, Mag's litigation counsel attempted to get Mr. Gregerman to assign his rights to his crystal angel design over to Mag. As Mr. Gregerman testified at

---

[1] One part of the 14-part interrogatory, subpart k, had asked "whether, at any stage in the process of designing or manufacturing this item, you or anyone else copied any item of jewelry made or sold by Plaintiff, Mag Jewelry Co., Inc."

[2] See Cease and Desist Letter to Alan Gregerman Co. dated January 29, 1996, Trial Exhibit G7.

[3] Transcript of June 19, 1997 Deposition of Alan Gregerman, p. 14, ln. 8-14.

[4] *Id.* at p 43, ln. 20-24, p. 44, ln. 1-6.

trial, he declined to make any such assignment.

- Mr. Gregerman in 2000 executed an affidavit in prior litigation involving Mag in which he reiterated those same points. A true and accurate copy of the *Affidavit of Alan Gregerman* dated June 12, 2000 ("June 2000 Affidavit") is attached hereto as Exhibit A. In the June 2000 Affidavit, the affidavit that Style submitted in support of its summary judgment motion, Mr. Gregerman repeated that he independently created his crystal angel and began distributing it in 1994 (¶¶ 4-5). Of particular importance is Mr. Gregerman's characterization of his agreement with Mag. Mr. Gregerman therein stated:

> Mag's principal, Daniel Magnanimi, later proposed an agreement whereby Mag would not interfere with my production and sale of my crystal angel if I permitted Mag to make and sell two other angel jewelry designs I had created and was then selling. Mr. Magnanimi sent me a letter in September, 1996 reflecting this arrangement. I continued selling my crystal angel and still sell that product to this day.

June 2000 Affidavit, ¶ 9.

Mag never initiated an action against Mr. Gregerman, and Mag never thereafter disputed that Mr. Gregerman had independently created his crystal angel. *Id.*

Despite this history, and despite its own active participation in it, Mag continued its lawsuit against Style and the other defendants, whose liability hinged on the liability of Style, even after explicit disclosure that Style had obtained its piece from known independent creator Alan Gregerman.[5]

---

[5] Mag had initiated this lawsuit on January 18, 2002, in the Eastern District of New York, originally naming Cherokee, Inc., Cherokee's Chief Executive Officer Robert Margolis, and Target Corporation d/b/a Target Stores ("Target"). In March 2002, Cherokee, Target and Margolis moved to dismiss the action pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) or to transfer the action to Rhode Island pursuant to 28 U.S.C. § 1404(a). The three defendants then named in the action argued that Mag was a Rhode Island company, that Style Accessories, Inc. ("Style"), which had supplied the piece in question, was also a Rhode Island company, and that Mag had previously initiated numerous lawsuits on the same copyright registration in

Defendants were forced to mount a vigorous defense including significant discovery, depositions in Florida and Minnesota, the aforementioned unsuccessful motion for summary judgment (which was defeated based on Mag's misrepresentation concerning Gregerman's current testimony), and ultimately, jury selection, full trial preparation, and trial. On March 9, 2006, at the close of the plaintiff's case, the Court granted defendants' Rule 50 motion for judgment as a matter of law. The Court found that the only reasonable conclusion that could be drawn from the evidence plaintiff itself had presented was that the defendants obtained their crystal angel from Mr. Gregerman and that there was no evidence to support even a suggestion that Mr. Gregerman's angel was copied from Mag's.

## III. ARGUMENT

### A. The Court Should Award Full Costs and Attorneys' Fees to the Defendants Including Style Accessories, Inc. As the Defendants are Clearly the Prevailing Parties Under Section 505 of the Copyright Act.

Section 505 of the United States Copyright Act authorizes a court to award full costs and attorneys' fees to any party. The fee provision of the Copyright Act states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The district court is entrusted with considerable discretion to determine whether an award of attorneys' fees should be granted to the prevailing party, and, if so, whether the amount requested is reasonable under the circumstances. *See Garcia-Goyco v.*

---

this Court. Defendants also argued that Rhode Island would be a more convenient forum because several non-party witnesses, including Mr. Gregerman, who was explicitly identified in the motion as an independent creator of the crystal angel piece, would be more conveniently found in Rhode Island. After vigorous opposition from Mag, on March 31, 2004, the District Court in the Eastern District of New York granted defendants' motion and ordered the case transferred to the United States District Court for the District of Rhode Island.

*Law Envir. Consultants, Inc.*, 428 F.3d 14, 22 (1st Cir. 2005); *see also Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155-56 (3d Cir. 1986); *Lotus Dev. Corp. v. Borland Int'l., Inc.*, 140 F.3d 70, 72 (1st Cir. 1988) ("We will disturb a ruling under section 505 only if the record persuades us that the trial court indulged in a serious lapse in judgment").

In *Fogerty v. Fantasy*, 510 U.S. 517, 520-22, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994), the Supreme Court rejected a "dual" standard under which some courts had placed a greater burden on prevailing defendants than on prevailing plaintiffs applying for fees. The *Fogerty* Court recognized that "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527. The Court expressly rejected the practice of awarding fees to prevailing defendants only upon a showing of frivolousness or bad faith by the plaintiff, *Id.* at 531-32, while also rejecting the "British Rule" requiring fees as a matter of course for the winner. *Id.* at 533. Instead, the *Fogerty* Court opted for a middle ground, under which "prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* at 534.

The *Fogerty* Court declined to offer a precise rule or formula for determining whether to award attorneys' fees and instead offered a non-exclusive list of factors that courts could consider when exercising their discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534 n. 19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986)); *see also Garcia-Goyco*, 428 F.3d at 20; *Lotus Dev. Corp.*, 140 F.3d at 72-73. The

First Circuit has applied these *Fogerty* factors in affirming awards of attorney's fees where the plaintiff's copyright claim was neither frivolous nor instituted in bad faith but was, instead, "objectively weak." *See, e.g., InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 20-21 (1st Cir. 2004); *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998).

In *InvesSys*, the district court rejected a copyright claim and awarded fees because the plaintiff company had not purchased and therefore did not own the rights to the copyrighted software. On appeal, the First Circuit, in affirming the fee award, stated that while "at first blush it might appear as if the plaintiffs had a colorable claim," after further factual development, the plaintiffs' claim of ownership of the software appeared "more dubious." 369 F. 3d at 21. The appeals court found that the underlying copyright infringement claim was "objectively quite weak." *Id.*

Similarly, in *Matthews* the district court awarded fees to the prevailing party where both parties made colorable arguments regarding whether the phrase appearing on the defendant's t-shirt was substantially similar to the phrase on the plaintiff's t-shirt. 157 F.3d at 26. The *Matthews* court found a lack of similarity and awarded fees to the alleged infringer. The First Circuit affirmed, stating that, under section 505, the "district court could conclude that the losing party should pay even if all of the arguments it made were reasonable." *Id.* at 29; *see also Garcia-Goyco*, 428 F.3d at 20 (affirming district court award of fees to a defendant where plaintiffs misused the copyright to leverage their position and the plaintiffs' copyright claim was an effort to bootstrap a state law contract action into federal court).

**B. <u>Mag's Copyright Claims, From the Beginning, Were "Objectively Quite Weak."</u>**

In order to have succeeded on its claim of copyright infringement, Mag was required

to establish, in addition to ownership of a valid copyright, "copying of constituent elements of the work that are original." *Calvin R. Johnson v. Allen Gordon, Jr.*, 409 F.3d 12 (1st Cir. 2005). It is axiomatic, but worth highlighting here, that copyright infringement requires *copying*. The law is and was clear. "To show actionable copying ... a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter." *Lotus Development., supra*, 49 F.3d 807, 813 (1st Cir. 1995). "[I]f the is no copying, there can be no infringement." *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 64 (3d Cir. 1978). It is also axiomatic, as a corollary of the same rule, that *independent creation* of an accused work is a defense to copyright infringement. *Grubb v. KMS Patriots, LLP*, 88 F.3d 1, 3 (1st Cir. 1996).

Mag could have proven copying inferentially, showing that a defendant had access to the copyrighted work and that the allegedly infringing work was substantially similar.[6] In order to satisfy its burden of proving access, however, Mag was required to "*produce evidence* from which a reasonable finder of fact could infer that the defendant had a reasonable opportunity to copy his or her work.... Evidence that only creates a 'bare possibility' that the defendant had access is not sufficient to create a factual issue as to copying." *Grubb*, 88 F.3d at 3 (emphasis added).

At trial, plaintiff utterly failed to present *any* evidence that Style copied Mag's work, any evidence disputing Style's claim that it obtained the crystal angel from Mr. Gregerman, and any evidence contradicting Mr. Gregerman's claim of independent creation. Mag also failed to introduce any evidence from which a reasonable finder of fact could have inferred

---

[6] "[A plaintiff] may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity). The plaintiff must then prove that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Lotus Development., supra*, 49 F.3d at 813.

that any of the defendants or Mr. Gregerman had access to Mag's piece and therefore reasonable opportunity to copy the Mag piece.

The plaintiff has known since at least 1996 that Alan Gregerman claimed to have independently created the Crystal Angel. Mag never challenged Mr. Gregerman's claim of independent creation and even tried to obtain an assignment of Mr. Gregerman's rights in the crystal angel design in 1997. Furthermore, plaintiff was informed early in this matter that defendants originally obtained the accused piece from Mr. Gregerman. Plaintiff's knowledge and disregard for these facts makes the maintenance of this action objectively unreasonable. Further, its pretrial litigation tactics were wasteful, unfair, and egregious.

### C. <u>Mag Engaged In Egregious Conduct In Order to Maintain Its Action In Light of Overwhelming Evidence that It Should Fail.</u>

Defendants filed a motion for summary judgment on July 30, 2005 based in part on the undisputed fact that Style first obtained its piece from Mr. Gregerman who, it was further then undisputed, was an independent creator of the angel design. Without copying of the *plaintiff's* work, plaintiff's claims would have to fail. Plaintiff's strategy in response to defendants' summary judgment motion was two-fold: (1) attempt to get Mr. Gregerman to say that what he supplied to Style was not *his* crystal angel, but Mag's; and (2) suggest for the first time that Mr. Gregerman was *not* in fact an independent creator of the piece.

The first part of that strategy – the attempt to show that Mr. Gregerman sold *Mag's* piece, not his own -- was, objectively, fanciful. Mag's position back in 1996 and even at the time of trial was that the Gregerman angel was "virtually identical and infringing"[7] to Mag's claimed work. How Mag or anyone their counsel might enlist to testify could ever

[7] This was how the Gregerman angel was characterized by Mag's counsel in its January 1996 cease and desist letter demanding that Gregerman stop making and selling his crystal angel, before Gregerman pushed back with evidence of his own creation and sales prior to Mag's then-claimed 1995 creation date.

reasonably hope to distinguish between the "Gregerman angel" and the "Mag angel" to aver that Gregerman sold one and not the other was never answered.[8] More importantly, Gregerman's position and record testimony through the years had been entirely consistent – he was making and selling the four-stone crystal angel that *he* created. This was Gregerman's position when he rebuffed Mag's claim of infringement in 1996, it was his position when he was deposed in 1997, it was his position when he executed his affidavit in the year 2000, and it was his position at his deposition in this case in February 2006 and at trial a few weeks later.[9]

Nevertheless, in responding to defendants' summary judgment motion, Mag's counsel prepared an affidavit for Mr. Gregerman to sign in which he would purport to have sold the *Mag* crystal angel under a license from Mag, rather than his own independently-created crystal angel. After Mag refused to produce the affidavit draft and communications with Mr. Gregerman on a claim of "work product,"[10] defendants obtained the document from Mr. Gregerman directly. A true and accurate copy of the affidavit prepared by Mag's counsel, which Mr. Gregerman astutely refused to sign, is attached hereto as Exhibit B. It referenced a "license" between Mag and Gregerman Co. three times (¶¶ 5, 6, and 8), it stated that Mr. Gregerman had "personal knowledge" about Mag's crystal angel and attested to the claim that Mr. Magnanimi had "created and designed" it in 1992 (¶¶ 2-3), and it stated that Mr. Gregerman wasn't then or in the future going to challenge Mag's copyright (¶ 9). The

[8] Mag of course could not retreat from the analysis that the two pieces were "virtually identical" as the accused piece herein *was* the Gregerman piece; Mag was relying on the legal fiction that the Gregerman pieces were in reality Mag pieces because of a purported "license" between them.

[9] It was apparently also *Mag's* position in June, 1997, when its counsel, Mr. Clarida, sent Gregerman an assignment form for him to sign that would have assigned Gregerman's crystal angel rights to Mag. *See Trial Exhibit OO.*

[10] Defendants were forced to appeal the withholding of these documents. The Court eventually ordered them produced, denying plaintiff's work-product claim. Mag's counsel then claimed it hadn't retained a copy of the document. The Court permitted defendants to conduct limited additional discovery of Mr. Gregerman concerning the document and related events.

implication was that Mag possessed superior rights in the crystal angel.

Mr. Gregerman testified in deposition that he came under some pressure to sign it.

Referring to Exhibit B, the letter and draft affidavit he *did not sign*, his testimony is telling:

Q. When approximately did they telephone you?
A. Shortly after I received that letter.
Q. Can you recite that conversation? Do you recall that conversation?
A. I just said that I wouldn't sign it the way that it was.
Q. What did Ms. Marotti tell you in that conversation at the time?
A. I don't recall the exact conversation. I just remember that I communicated that I wouldn't sign this affidavit, that I didn't -- there were some points that I didn't think were factual or represented the true circumstances.
Q. Can you just give me your understanding of what caused you not to sign the affidavit, what points?
A. Yeah. I mean, I -- there was Provision 3 which I objected to.
Q. Why did you object to that?
A. Because Provision 3 states that based on my knowledge the subject Crystal Angel jewelry piece was created and designed by Danny Magnanimi of Mag Jewelry Company, Inc. And I could not sign that because I don't know that he did. I wasn't there when he did it.
Q. What else in this document did you disagree with?
A. Okay. Provision 5, I objected to that, the way it was written.
Q. Why?
A. Because in that provision it states that based on an agreement with Danny Magnanimi, Alan Gregerman Company has a license, and that was not the case.
Q. You didn't understand that you had a license, correct?
A. I did not have -- as far as I was concerned, based upon my definition or my understanding of license, I did not have a license from Danny.
Q. You were selling your Crystal Angel in the Summer of 2005, correct?
A. Correct.
Q. And that was your creation that you were selling, correct?
A. Correct.
Q. Do you recall telling Ms. Marotti in that or some other conversation that you didn't have a license?
A. I'd never been -- I don't recall that I even used that word. I -- I'm trying to think. I told her that I could not sign it the way that it was and I objected to the word "license" because I didn't feel it applied.
Q. And you told Ms. Marotti that?
A. Correct.
Q. Did you ever tell that to Mr. Tarro?
A. I don't believe so.
Q. Were there further communications with you from Mr. Tarro's office after that one?
A. Yes.

Q. Can you just tell me what those were.
A. I received many phone calls asking me to sign this.
Q. Phone calls from whom?
A. From Mr. Tarro's office.
Q. Was it Ms. Marotti or somebody else?
A. Ms. Marotti and Mr. Tarro as well as Danny.
Q. Can you tell us what those conversations entailed.
A. It was pretty much that they needed me to sign this for some litigation that they were involved in.
Q. Was that after you had told them you objected to terms in the affidavit?
A. Yes.
Q. At some point, did they send you a second document?
A. Well, I guess I -- there was a point where it just became so annoying to receive all these phone calls that I told Ms. Marotti that I would consider signing a letter for them if there were changes made to it, that they would change the document.

Deposition of Alan Gregerman, February 17, 2006, pp. 31-34.

The affidavit Mag supplied to Mr. Gregerman after he refused to sign the first removed all references to the word "license" and, Mr. Gregerman assumed, the implication that what he had sold to Style was the Mag piece, not his own. After "annoying" telephone calls, Mr. Gregerman executed the second affidavit supplied by Mag's counsel, and Mag filed that second affidavit in objection to defendants' motion for summary judgment. A true and accurate copy of the September 15, 2005 affidavit submitted by Mag with its *Objection to Motion for Summary Judgment* is attached hereto as Exhibit C. Mag's counsel used that affidavit, even in its watered-down form, to argue not only that Mr. Gregerman sold Mag's piece pursuant to a license, but also that Mr. Gregerman was repudiating his claim of independent creation.

As argued assiduously by defendants at the hearing on summary judgment, Mr. Gregerman had not retreated from his claim of independent creation, and never denied that he had been making and selling *his* crystal angels since 1994, which he had the right to do as an independent creator regardless of any stand-off agreement he might have had with Mag. Nevertheless, Mag's counsel, at oral argument on summary judgment in October 2005,

directly mischaracterized Mr. Gregerman's position, referring to the second affidavit and averring that Mr. Gregerman was "saying in this Affidavit that there is a Mag piece that is covered by the Mag copyright, and that is what he sold to Style." Transcript of Hearing on Summary Judgment, October 21, 2005 ("*SJ Hearing Transcript*"), relevant portions of which are attached hereto as Exhibit D, at p. 38, ln. 21-23. Mag's counsel also represented to the Court that Mr. Gregerman was in fact contradicting claims he had made in his June 2000 Affidavit:

The Court: .... So do those two [affidavits] really clash with one another?

Mr. Clarida: Well, I believe they do, your Honor. I believe there is conflict between the two affidavits, because as Mr. Noel says the angels are the same. He is talking about the same angel in both cases, in one situation saying he created it independently, and I think there is evidence to present to a jury that he didn't, But in another affidavit saying it's something he is selling pursuant to a licensing [sic] to Mag --

The Court: Where is the licensing agreement?

Mr. Clarida: Licensing agreement is here, your Honor. It is in the documents that were submitted. It's an agreement – it's a letter from Mr. Magnanimi....It's a letter dated September 15, 1996.

*SJ Hearing Transcript* (Exhibit D) at p. 42, ln. 11 – p. 43 ln. 2.[11] Though Mr. Gregerman had insisted on removing the term "license" from the affidavit he signed, counsel for Mag effectively added it back in, arguing that a license existed between Gregerman and Mag anyway, and stating affirmatively that Mr. Gregerman had sold a Mag piece, not his own.

Mag's counsel sought to twist Mr. Gregerman's position in one further critical respect, suggesting that Mr. Gregerman had repudiated his earlier, consistent testimony concerning independent creation:

---

[11] The "licensing agreement," so-called by Mag's counsel, was the September 1996 letter from Mr. Magnanimi to Mr. Gregerman (Trial Exhibit 35), which Mr. Magnanimi and Mr. Gregerman both characterized at trial as a "gentleman's agreement," and which is wholly silent as to any statement of rights concerning either claimed creation.

The Court: What is the disputed question of material fact?

Mr. Clarida: The disputed question of material fact is whether Mr. Gregerman independently created that piece, and I don't believe the evidence that Mr. Noel points to would convince a reasonable jury beyond a genuine issue of fact that he did so. *I think a reasonable jury looking at this second Affidavit might conclude, you know what, he didn't independently create that.*

*SJ Hearing Transcript* (Exhibit D) at p. 39, ln. 14-23 (emphasis added). The assertion was apparently based on the affidavit's use of the phrase "subject Crystal Angel" purportedly as a defined term. Despite this bold assertion that was contrary to every instance of Mr. Gregerman's prior testimony, and despite the fact that they had themselves spoken with Mr. Gregerman in order to procure the new affidavit from him, Mag's counsel made that representation to the Court at summary judgment, argued against any interpretation to the contrary, and then presented absolutely no evidence to back it up at trial. To the contrary, Mr. Gregerman testified unequivocally at trial – consistent with all prior testimony on the subject -- that he considered himself to be an independent creator of the crystal angel design and has *never* told anyone that he wasn't.

The Court, in denying defendants' summary judgment motion, was justifiably skeptical, questioning whether Mr. Gregerman's 2000 and 2005 affidavits were in fact "two ships passing in the dark," *SJ Hearing Transcript* (Exhibit D) at p. 41, ln. 21, and explicitly warning counsel in a statement that later proved prophetic:

> I would also say that I hope we do not find out by the time this case comes to trial that all of this is a smoke screen and that the plaintiffs are grasping at straws here to keep the case alive, and I'm not suggesting that is so. I'm just saying that I hope we don't find that out. First of all, there is no point to it, all it does is generate a lot of extra expense that is unnecessary, and, secondly, it takes up the time of the Court and perhaps a jury needlessly if we find out that this is just some kind of rearguard action that is being fought to forestall the inevitable.

*SJ Hearing Transcript* (Exhibit D) at p. 43, ln. 17-25 - p. 44, ln. 1-3.

The plaintiff never produced a copy of the unexecuted affidavit. After Style successfully sought reversal of the Magistrate Judge's denial of the motion to compel production of the document, Mag's counsel claimed no longer to possess a copy of the unexecuted affidavit. This was despite representing at the hearing before the Magistrate Judge in December 2005 that the documents were protected by the work-product privilege because the "correspondence had attached to them affidavits, and those affidavits did include certain, the theory of the plaintiff's case and that's why we're still seeking to enforce the work product privilege." Transcript of December 12, 2005 hearing before Magistrate Judge Lincoln Almond, p. 11, ln. 2-5. It appears that the plaintiff never provided the unexecuted affidavit to the Magistrate Judge, despite his request for the attachments and plaintiff's counsel apparent agreement that they were being provided.[12] Defendants were able to obtain a copy of the unexecuted affidavit from Mr. Gregerman, who had retained a copy.

After the defendants sought and received permission from the Court, Mr. Gregerman was deposed on February 17, 2006, and again testified that he independently created his crystal angel (Deposition of Alan Gregerman, p. 27, ln. 15-19), that any agreement he had with Mag was simply an agreement not to sue (*Id.* at p. 27-28), that the crystal angel he sold to Style was his crystal angel (*Id.* at p. 37, ln. 14-17), and that he continues to sell his angel even today (*Id.* at p. 12, ln. 21-22). Mr. Gregerman's testimony, at his 2006 deposition and at trial, was *entirely* consistent with all his prior testimony, which Mag and its litigation

---

[12] The following exchange took place between the Magistrate Judge and plaintiff's counsel at the hearing on Style's *Motion to Compel*:

Magistrate Judge: So I'm requesting an in camera submission of those two letters and the attachments. All right, do you have those today, Ms. Marotti?"

Ms. Marotti: I do, your Honor.

December 12, 2005 hearing transcript, p. 14, ln. 20-23.

attorneys had themselves witnessed since 1996. Nevertheless, although faced with undisputed factual evidence eviscerating its claim of copyright infringement, plaintiff continued the lawsuit.

In sum, despite clear law that independent creation is a defense to copyright infringement, faced with the undisputed fact that Style obtained the crystal angel from Mr. Gregerman, possessing no evidence to contradict Mr. Gregerman's claim of independent creation, and armed with nothing more than rank speculation about access to plaintiff's piece on the part of the defendants or Mr. Gregerman prior to Mr. Gregerman's creation, plaintiff maintained this lawsuit and pursued defendants through voluminous discovery and motion practice, cross-country depositions, summary judgment and three days of trial. Plaintiff wasted the judicial resources of the Court and forced defendants to incur attorneys' fees and costs to respond to unsupportable claims, while at the same time doing all it could to shield critical facts and information from discovery.[13]

Under these circumstances, awarding defendants their full costs including attorneys' fees places the burden of these needless costs on plaintiff, while plainly serving the purpose of the Copyright Act, namely, that "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527.

Even were the Court to view Mag's claims as reasonable, the Court may still award Style its attorneys' fees. As the Court in *Matthews* stated, the "district court could conclude that the losing party should pay even if all of the arguments it made were reasonable." 157

[13] Not only did Mag claim that documents exchanged with Mr. Gregerman constituted "work product," but Mag also objected to defendants' motion to conduct limited additional discovery surrounding Mr. Gregerman's position *vis a vis* the affidavit submitted by Mag to defeat summary judgment, despite the fact that Mag procured and submitted the affidavit containing the supposedly "new" positions of Mr. Gregerman well after the close of discovery.

F.3d at 29. In addition, the *InvesSys* Court interpreted section 505 of the Copyright Act as intended "to provide a potential incentive to the winner who asserts a successful copyright claim or *defends against an unworthy one*." 369 F.3d at 20 (emphasis added); *see also Fogerty*, 510 U.S. at 531-32 (explicitly rejecting the need for a showing of frivolousness or bad faith). Given the conduct of the plaintiff in maintaining a futile action and its ultimately fruitless outcome, the Court should award defendants their full costs including attorneys' fees.

**D. <u>Style's Costs and Attorneys' Fees Were Reasonable As Well As Necessary.</u>**

Style should be permitted to recover the full amount of the attorneys' fees detailed in the accompanying *Itemized Statement of Attorney Time and Expenses*, attached to the *Affidavit of Thomas R. Noel, Esq.*, and the supplied invoices and costs detail, filed contemporaneously herewith.[14] The attorney time expended was necessary to defend against plaintiff's allegations of copyright infringement and include services required to: (a) participate in discovery necessary for the preparation of defenses in this matter, (b) prepare and argue defendant Style's Motion for Summary Judgment, and (c) prepare for and participate in the trial of this matter.

The hourly rates of Style's attorneys in this matter were the attorneys' customarily charged hourly rates and are within the range of fees usually and customarily charged by attorneys in the community who have comparable experience in similar cases. *See Affidavit of Michael Feldhuhn, Esq.*, submitted contemporaneously herewith, as to the reasonableness

---

[14] The attorneys' fees are detailed on the accompanying invoices, which contain reasonable descriptions of the attorney time expended. The costs and expenses are also detailed therein. The costs recoverable under Style's Bill of Costs, submitted separately, are *not* duplicated on the attached *Itemized Statement of Attorney Time and Expenses.*

of counsel's hourly rates.[15]

Additionally, Style is entitled to an award of its total costs and expenses. The costs and expenses detailed in the *Itemized Statement of Attorney Time and Expenses* represent disbursements made by counsel and billed directly to Style, and are *not included* in Style's Bill of Costs application submitted separately. "[T]he Supreme Court has endorsed the view that disbursements made by an attorney and ordinarily billed directly to the client (that is, separately from the hourly or fixed fee) can properly be encompassed within the phrase 'attorney's fee.'" *InvesSys*, 369 F.3d at 22 (*citing W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991)). Such costs include "travel, long distance calls, and parking on top of the hourly fee," *Id.* (*citing Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 361, 367-68 (D. Mass. 1993)), "computer-assisted research," *Id.*, and other "out-of-pocket" expenses incurred by counsel and billed directly to Style such as "courier service," "meals," and "postage." *Data Gen. Corp.*, at 367-68.

As outlined above, Style was forced to expend significant time and effort in responding to plaintiff's argument in opposition to defendants' summary judgment that Mr. Gregerman sold Style the Mag piece. Mag defeated defendants' motion by mischaracterizing Mr. Gregerman's affidavit in order to set forth manufactured disputed issues of fact. Style was forced to expend significant effort in rebutting and responding to Mag's ultimately unsubstantiated averment. Style had to move to compel the production of correspondence and draft affidavits between plaintiff and Mr. Gregerman, to appeal the decision of the Magistrate Judge which, it appears, was made without full disclosure of the very documents the plaintiff was trying to shield, and to reopen discovery to take the deposition of Mr.

---

[15] The Court is also entitled to rely upon "its own knowledge and experience regarding attorneys' rates and the local market" in determining the reasonableness of the hourly rate. *Garcia-Goyco*, 428 F.3d at 22.

Gregerman to inquire into his supposedly "new" positions.

Moreover, faced with Mag's false arguments concerning Mr. Gregerman, Style was forced to expend significant time continuing to prepare its other defenses to the copyright infringement claim generally, including efforts to disprove plaintiff's own claim of independent creation of the crystal angel design and to invalidate plaintiff's copyright through evidence of the several other earlier and contemporaneous creations by others.[16] These efforts were extremely fact intensive and time consuming, and were necessitated by plaintiff's manipulation and mischaracterization of the facts – a point that became readily apparent at trial.

WHEREFORE, defendant Style Accessories, Inc., respectfully requests that the Court grant its *Motion for Award of Costs Including Attorneys' Fees.*

Dated: April 6, 2006

STYLE ACCESSORIES, INC.
By Its Attorneys,

[signature]

Thomas R. Noel (#4239)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

[16] Style was prepared to present evidence regarding these issues during its case in chief.

**CERTIFICATION**

I hereby certify that on March 6th, 2006, I served a copy of the foregoing via First Class Mail to Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.

Ann T. Kapnelian

# AFFIDAVIT

I, Alan Gregerman, a resident of Newport, Rhode Island do hereby depose and state as follows:

1. I am a designer and manufacturer of jewelry and other gift and novelty items, having been so for approximately 20 years. I am the President and owner of a company known as Alan Gregerman Co., a Rhode Island corporation with a business address of 231 Elm Street, Warwick, Rhode Island 02888, which I founded in approximately 1981. My company designs, manufactures, and sells jewelry and related items to wholesalers and other jewelry companies who often market my products under their own trade names or private labels.

2. During the Summer of 1994, I undertook to create some rhinestone designs for a Mr. David Beaupre, an individual with whom I had previously worked, for items to be offered for sale through a company known as "Treasure Chest."

3. I regularly work with pieces and material acquired from a company known as Swarovski. Swarovski is a supplier of jewelry parts and is known for its imported "Genuine Austrian Crystal" stones. The crystal stones can be arranged in patterns and designs and held together in several ways.

4. I created an original design expressing an angel incorporating four Swarovski crystal stones – one each to represent the head, body, and two wings of an angel. The head was a round stone, the body was pear-shaped (wider end downward), and the wings were matching navette stones. I believed this expression to be attractive, innovative, and unique. I do not recall having seen a piece of similar design. I continue to believe that this design is a wholly original expression, created by me, and I have always considered it to be

my design. Attached at Tab 1 is a photograph of a piece later produced representing the crystal angel design I created in July or August of 1994.

5. Attached at Tab 2 is an Alan Gregerman Co. delivery receipt showing delivery of what I believe is the first shipment of pieces (earring sets) incorporating my angel design. The receipt is dated September 20, 1994 and it documents delivery of thirty-six pairs of angel earrings on that date to Treasure Chest, 34 Delta Drive, Pawtucket, RI. Several other shipments to Treasure Chest followed in the months thereafter. I continued making and selling jewelry pieces incorporating my crystal angel design to Treasure Chest and to others in the jewelry trade.

6. In late January, 1996, I received a letter from an attorney representing another manufacturer, Mag Jewelry Co., Inc. The letter from Mag's attorney directed me to stop the manufacture and sale of my crystal angels, claiming that my crystal angels infringed a copyright held by Mag. The letter from Mag's attorney stated that the crystal angel I was making and selling was "virtually identical" to a crystal angel Mag had "completed designs for" on June 1, 1995. A copy of the January 26, 1996 letter from Mag's attorney is attached hereto at Tab 3.

7. I retained my own attorney to respond to Mag's letter and, specifically, to point out the fact that I had created my crystal angel prior to the date Mag claimed to have created its crystal angel. My attorney sent a return letter to Mag's attorney. A copy of my attorney's letter to Mag is attached at Tab 4.

8. I later became aware of an amendment to Mag's original certificate of registration claiming a creation date of March, 1992, some three years before its original claimed creation date.

9. Mag's principal, Daniel Magnanimi, later proposed an agreement whereby Mag would not interfere with my production and sale of my crystal angel if I permitted Mag to make and sell two other angel jewelry designs I had created and was then selling. Mr. Magnanimi sent me a letter in September, 1996 reflecting this arrangement. I continued selling my crystal angel and still sell that product to this day.

10. In June, 1997, Mr. Magnanimi and his attorney contacted me and requested that I sign a "Copyright Assignment" form, a copy of which is attached at Tab 5, which would have assigned to Mag all rights to the crystal angel design I had made some three years earlier. I declined to sign the assignment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate based on my own personal knowledge or, where so indicated, that I believe such to be true.

6-12-00
Date

Alan Gregerman
Alan Gregerman



Tab 1

ALAN GREGERMAN CO.
231 ELM STREET
P.O. BOX 81065
WARWICK, R.I. 02888
(401) 785-4330

**DELIVERY RECEIPT**

ENTERED

No. 07392

DATE 9-20-94

DELIVERED TO:
Treasure Chest
34 Delta Drive
Pawtucket, RI 02860

| SHIPPED VIA | CARTONS/PACKAGES | TOTAL WEIGHT | YOUR ORDER NO. | OUR ORDER NO. | PREPAID | COL |
| --- | --- | --- | --- | --- | --- | --- |
| Pick up | 1 | | Per David | | COD | |

| QTY. ORDERED | QTY. SHIPPED | ITEMS |
| --- | --- | --- |
| | | 36 Pair Angel Ear Pierced (crystal-gold plate) hypo Post 1.50 per Pair = $54.00 |

S/COD.

RECEIVED BY: [signature] DATE

**Tab 2**

THE LAW FIRM OF
THOMAS A. TARRO III, ESQ.
THE SUMMIT EAST – SUITE 330
300 CENTERVILLE ROAD
WARWICK, RHODE ISLAND 02886

THOMAS A. TARRO III

ANTHONY S. BUGLIO
KRIS R. MACARUSO MAROTTI

(401) 737-7200
FAX: (401) 732-3362

January 29, 1996

Mr. Alan Gregerman,
Alan Gregerman, Inc.
231 Elm Street
Warwick, RI

*Re: Austrian Crystal Angel*

Dear Mr. Gregerman:

Please be advised that I represent Mag Jewelry Co., Inc., of Cranston, RI. On June 1, 1995, our client completed designs for Austrian Crystal Angel, this copyright pertains to "Crystal Angel Ears," "Crystal Angel Neck," and "Birthstone Angel Lapel Pins." This design is an original creation of our client and is protected by the Copyright Act of 1976 as amended.

Attached hereto is a photograph showing our client's copyrighted Crystal Angels. Our client learned that your company has manufactured a virtually identical and infringing crystal angel, which infringes the copyrighted Crystal Angel of Mag Jewelry Co., Inc. We, therefore, demand that you immediately cease all further reproduction and distribution of this infringing pin. We also herewith make the following demands:

1. That you identify the number of angels manufactured (or manufactured on you behalf);

2. That you identify the number of infringing angels sold and the number presently on hand;

3. That you identify the selling price of these angels to your customers;

4. If you are not the manufacturer, that you identify the manufacturer by complete address;

5. That you identify each and every customer to who you have sold the infringing angel;

6. That you identify any and all products or uses of our client's copyrighted design, and if such products or uses exist, that you provide us with a sample or facsimile of each and

**Tab 3**

Mr. Alan Gregerman,
Alan Gregerman, Inc.,

January 29, 1996



that you respond to each of the foregoing demands with respect to each such additional product or use.

Very truly yours,

Thomas A. Tarro, III /ADS

TAT/ads

enc.

cc: Mr. Daniel Magnanimi,
Mag Jewelry Co., Inc.

Adler Pollock & Sheehan Incorporated
2300 Hospital Trust Tower
Providence, Rhode Island 02903-2443
Telephone 401-274-7200
Fax 401-751-0604/351-4607

ADLER POLLOCK & SHEEHAN

February 8, 1996

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**P 412 357 000**
**AND**
**VIA FACSIMILE**

Thomas A. Tarro, III, Esq.
The Summit East - Suite 330
300 Centerville Road
Warwick, RI 02886

Re: **Angel Design**

Dear Mr. Tarro:

I write on behalf of Alan Gregerman Co. ("Gregerman") in connection with your letter to Mr. Gregerman dated January 29, 1996, a copy of which I have reviewed. In that letter, you state that Mag Jewelry Co., Inc. ("Mag") created a certain angel design as of June 1, 1995. You further assert in the letter that Mag's design is protected under the federal copyright laws and that Gregerman has infringed Mag's alleged rights with respect to that design.

Please be advised that Gregerman created the subject angel design before 1995. Thus, Gregerman's design is an original work that was created and was in existence before Mag's alleged design. Accordingly, Gregerman's design is protected under the federal copyright laws and Mag's alleged design is not. In addition, Gregerman first manufactured, marketed, and sold products incorporating the angel design prior to 1995. I am in possession of corroborating documentation.

The activities of Mag that you identify in your letter of January 29, 1996 constitute infringement of Gregerman's rights under the federal copyright laws. Given that Mag not only copied Gregerman's design but also used it, and is continuing to use it, on directly competing articles presented in the same manner, we can only conclude that Mag's infringement is intentional.

**Tab 4**

ADLER POLLOCK & SHEEHAN

Thomas A.Tarro, III, Esq.
February 8, 1996
Page 2

Accordingly, Gregerman hereby demands that Mag immediately cease and desist manufacturing, advertising for sale, selling, or in any way using the subject angel design on any products. Gregerman further demands that Mag impound any infringing products it still has in its possession and provide an accounting to Gregerman for total sales made and profits to date so that an appropriate damage amount for Mag to pay Gregerman can be determined.

In addition, Gregerman has learned that letters have been sent on behalf of Mag to various entities in the jewelry industry, including certain customers of Gregerman, suggesting and/or stating that Gregerman allegedly has infringed Mag's rights with respect to the subject angel design. Gregerman demands that Mag provide it a list of all entities that have received such a letter.

Please contact me upon receipt of this letter. We hope that the damages aspect of this matter can be resolved amicably, but we first need immediate assurances that the infringement will stop.

Sincerely,

Joseph Avanzato

JOSEPH AVANZATO

/jhd

cc: Mr. Alan M. Gregerman

I:\APSDOCS\DOCSAM\JA\NEWCLINT02076\TL.SAM

# COPYRIGHT ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **Alan Gregerman,** acting both individually and as an officer of Alan Gregerman Co., with offices at 231 Elm Street, Warwick, Rhode Island, 02888 ("Assignor"), hereby sells, assigns and transfers to **Mag Jewelry Co., Inc.**, with offices at 838 Dyer Avenue, Cranston, Rhode Island, 02920 ("Assignee"), absolutely and forever, all right, title and interest of whatever kind Assignor may possess in and to the crystal angel jewelry design which is the subject of Assignee's copyright registration VA 758-661, as amended, a copy of which is annexed hereto as Exhibit A, including without limitation the copyright therein, the right to register the copyright therein, any and all renewals and extensions of any such copyright in the United States of America and every other country in the world, all causes of action for any and all previously occurring infringements of the rights being assigned, and the right to receive and retain the proceeds relating to those infringements.

IN WITNESS WHEREOF, Assignor has caused this Copyright Assignment to be duly executed and delivered as of the ____ day of June, 1997.

BY:______________________________
Alan Gregerman

NOTARY PUBLIC:

______________________________

RWC/RWC/21589/00/253974.01

**Tab 5**

THE LAW FIRM OF
THOMAS A. TARRO III. ESQ.
[illegible]
[illegible]
WARWICK, RHODE ISLAND [illegible]

THOMAS A. TARRO III
[illegible]@tarrolawfirm.com

[illegible]
[illegible]@tarrolawfirm.com

KRIS R. MACARUSO MAROTTI
kmarotti@tarrolawfirm.com

[illegible]
FAX [illegible]

August 23, 2005

Alan Gregerman
Alan Gregerman Company
23 - Elms Street
W rwick, RI 02888

Re: Mag Jewelry v. Cherokee, et al

Dear Mr. Gregerman:

Please find enclosed an Affidavit, which I have prepared based on our discussions concerning Mag's "Crystal Angel" jewelry piece. I believe it accurately reflects your position with regard to the piece.

I understand that you intend to review the Affidavit with your legal counsel prior to signing.

Upon doing so, I would ask you to forward the signed Affidavit in the enclosed stamped, self-address envelope, or contact my office to discuss the Affidavit further, if necessary.

I thank you for your kind cooperation with respect to this matter.

Very truly yours,

Kris Macaruso Marotti

KMM:jt
Enclosure

DEFENDANT'S EXHIBIT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| VS. | : | C.A. NO.: 04-174T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC<br>Defendants | : | |

**AFFIDAVIT OF ALAN GREGERMAN**

I, Alan Gregerman, under oath do hereby state as follows:

1. I am the owner and principal of Alan Gregerman Company with a business address at 231 Elms Street, Warwick, RI 02888. Alan Gregerman Company is a corporation duly organized and existing under the laws of the State of Rhode Island in the business of jewelry manufacture and sales.

2. I have personal knowledge with respect to Mag Jewelry Co., Inc.'s "Crystal Angel" jewelry piece which is the subject of the instant matter.

3. Based on my knowledge the subject "Crystal Angel" jewelry piece was created and designed by Daniel Magnanimi of Mag Jewelry Co., Inc.

4. I acknowledge that Mag Jewelry Co., Inc. has a copyright registration for the subject "Crystal Angel" jewelry piece.

5. Based on an agreement with Daniel Magnanimi, Alan Gregerman Company has a license to make and sell the subject "Crystal Angel" jewelry piece.

6. As per company policy, I inform any potential customer interested in purchasing the subject "Crystal Angel" piece that it is the creation of Daniel Magnanimi of

Mag Jewelry Co., Inc. and that Alan Gregerman Company has the right to manufacture and sell the piece pursuant to a license agreement with Mag Jewelry CO., Inc.

7. Alan Gregerman Company sold the subject "Crystal Angel" jewelry piece to Style Accessories, Inc., which is located at 3 Acorn Street, Providence, Rhode Island for a short period of time from May, 1997 to August, 1998.

8. As per policy, and to the best of my recollection, I informed Chad Mollica of Style Accessories, Inc. of the fact that the subject "Crystal Angel" piece was the creation of Daniel Magnanimi of Mag Jewelry Co., Inc. and that Alan Gregerman Company had the right to manufacture and sell the piece pursuant to a license agreement with Mag Jewelry Co., Inc.

9. I have never challenged the copyright registration of Mag Jewelry Co., Inc. in and to the subject "Crystal Angel" jewelry piece, nor do I have any intention of challenging said copyright registration.

Further Affiant sayeth not.

________________________
Alan Gregerman

State of Rhode Island
County of

In said County on the day of August, 2005, before me personally appeared Alan Gregerman, each and all to me known, and known by me to be the party executing the foregoing instrument and he acknowledged said instrument, by his executed to be his free act and deed.

________________________
Notary Public
My Commission Expires:

THE LAW FIRM OF
THOMAS A. TARRO III, ESQ.
THE SUMMIT EAST SUITE 330
300 CENTERVILLE ROAD
WARWICK, RHODE ISLAND 02886

Kris Macaruso Marolli, Esq.
Law Firm of Thomas A. Tarro, III
300 Centerville Road
Summit East, Suite 330
Warwick, RI 02886

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MAG JEWELRY CO., INC.
Plaintiff

VS. C.A. NO.: 04-174T

CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC
Defendants

**AFFIDAVIT OF ALAN GREGERMAN**

I, Alan Gregerman, under oath do hereby state as follows:

1. I am the owner and principal of Alan Gregerman Company with a business address at 231 Elms Street, Warwick, RI 02888. Alan Gregerman Company is a corporation duly organized and existing under the laws of the State of Rhode Island in the business of jewelry manufacture and sales.

2. I have personal knowledge with respect to Mag Jewelry Co., Inc.'s "Crystal Angel" jewelry piece which is the subject of the instant matter.

3. It is my understanding that the subject "Crystal Angel" jewelry piece was created and designed by Daniel Magnanimi of Mag Jewelry Co., Inc.

4. I acknowledge that Mag Jewelry Co., Inc. has a copyright registration for the subject "Crystal Angel" jewelry piece and that Mag has enforced its rights under the copyright.

5. Based on an agreement with Daniel Magnanimi, Alan Gregerman Company can make and sell the subject "Crystal Angel" jewelry piece.

Exhibit "1"

DEFENDANT'S EXHIBIT 9

6. I inform any potential customer interested in purchasing the subject "Crystal Angel" piece that it has been copyrighted by Mag Jewelry Co., Inc. and that Alan Gregerman Company has an agreement with Mag and can make and sell the piece to its customers.

7. Alan Gregerman Company sold the subject "Crystal Angel" jewelry piece to Style Accessories, Inc., which is located at 3 Acorn Street, Providence, Rhode Island for a short period of time from May, 1997 to August, 1998.

8. To the best of my recollection, I informed Chad Mollica of Style Accessories, Inc. of the fact that the subject "Crystal Angel" piece was copyrighted by Mag Jewelry Co.

Further Affiant sayeth not.

Alan Gregerman, President

Alan Gregerman

State of Rhode Island
County of Kent

In Warwick said County on the 1st day of ~~August~~ September, 2005, before me personally appeared Alan Gregerman, each and all to me known, and known by me to be the party executing the foregoing instrument and he acknowledged said instrument, by his executed to be his free act and deed.

Notary Public
My Commission Expires: 11/04/05

COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MAG JEWELRY CO., INC., | C.A. No. 04-174T |
| VS. | OCTOBER 21, 2005 |
| CHEROKEE, INC., et al. | 11:00 A.M. |
| | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF DISTRICT JUDGE

**(DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)**

APPEARANCES:

FOR THE PLAINTIFF:

Cowan, Liebowitz & Latman
By: Robert Clarida, Esquire
1133 Avenue of the Americas
New York, NY 10036-6799

Tarro Law Offices
By: Thomas A. Tarro, III, Esq.
By: Kris Macaruso Marotti, Esq.
300 Centerville Road - Suite 330
Summit East
Warwick, RI 02886

APPEARANCES CONTINUED:

FOR THE DEFENDANT: (Cherokee/Target)

Duffy, Sweeney & Scott, Ltd.
By: Craig M. Scott, Esquire
One Turks Head Place - Ste. 1200
Providence, RI 02903

FOR THE DEFENDANT: (Style Accessories)

Noel & Gyorgy, LLP
By: Thomas R. Noel, Esquire
50 South Main Street
Providence, RI 02903

Court Reporter:

Angela M. Reynolds, RPR-FCRR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

**21 OCTOBER 2005 - 11:00 A.M.**

THE COURT: Good morning.

THE CLERK: Civil Action 04-174T, Mag Jewelry Company, Incorporated versus Cherokee, et al.

THE COURT: This case is here for consideration of motions for summary judgment by both Cherokee and Style. Counsel filed memoranda, there's no need to repeat what you said in your memoranda, so if you would like to briefly argue, I'll certainly give that you opportunity.

Now, who's speaking for Cherokee? You, Mr. Scott?

MR. SCOTT: I am, your Honor.

THE COURT: And for Style? Mr. Noel?

MR. NOEL: Yes, your Honor. Your Honor, if I may. I have Mr. John Harrington who is an '04 admittee to the Rhode Island Bar and he has just joined our office and is taking the Federal Bar this winter. May he join us at counsel table?

THE COURT: Yes.

And, Mr. Tarro, are you speaking for the plaintiff here?

MR. TARRO: No, your Honor. Robert Clarida is, who is at counsel table.

MR. CLARIDA: I'm Robert Clarida, your Honor,

I'm with Cowan, Liebowitz & Latman in New York. I've been admitted pro hac vice for this motion.

THE COURT: How do you spell your last name?

MR. CLARIDA: C-L-A-R-I-D-A.

THE COURT: All right, we'll begin with Cherokee's motion. Mr. Scott?

MR. SCOTT: Thank you, your Honor. Cherokee is a licensor of trademarks. It licensed a trademark to Target pursuant a license agreement. The trademark is Cherokee. Target had broad discretion to brand a variety of products with the Cherokee name, encompassing a variety of product lines. One of those products that Target elected to brand with the Cherokee mark is the accused jewelry that's the subject of this copyright infringement lawsuit. There's one allegation in plaintiff's amended complaint against Cherokee that essentially accuses Cherokee, in paragraph 15 of the amended complaint, of being a direct infringer. It alleges that Cherokee marketed, manufactured, distributed and sold the accused piece. None of that is accurate and there's no evidence before your Honor today that Cherokee is a direct infringer. The allegation is made upon information and belief, and in the wake of the Rule 30(b)(6) deposition of Cherokee, I don't think there can be any doubt that Cherokee is

We come now to the motion for summary judgment by Style. Mr. Noel?

MR. NOEL: Thank you, your Honor. Your Honor, good morning, thank you.

Summary judgment, as the Court well knows, of course, is not about counting up the number of facts in a case and if there are more than three or four facts, summary judgment is defeated. Summary judgment is about cutting through the facts, cutting through the weeds to try to see if there is a clear legal path on which to base a decision that the case must go away, the case must be discussed under Rule 56. And we submit that the only facts that make a difference to our motion this morning are those that are both properly disputed and those that are material, and there are only two facts here, your Honor, that make a difference and that support our summary judgement, two essential and undisputed facts. The first is that Style Accessories, that is my client, obtained its piece from the Alan Gregerman Company and did so in the mid-1990's. Mag has now acknowledged that fact, it is undisputed. The second is that Mr. Gregerman independently created his angel in August of 1994. There is nothing to dispute that on this record. With those two facts as a matter of law, Mag cannot recover

for copyright infringement based on sales of this piece. And that, of course, takes care of the other defendants, includes the other defendants as well, because Mag can't satisfy the copying element of the infringement test, which requires ownership, copying, and substantial similarity.

Now, copying can be shown by direct evidence of actual, or factual, as some of the cases say, with an "f," copying or evidence that infringer alleged had access to the work and that the pieces are so close that there must have been infringement, that's an inference. That's not available any longer, your Honor, because in this case it is a fact that the piece obtained by Style and sold through Target with the Cherokee brand on it was obtained by Mr. Gregerman, and we have submitted an Affidavit that Mr. Gregerman made, I believe, three years ago, stating unequivocally that he designed this crystal angel in August of 1994, in fact he had a witness, Mr. Beaupre and Mr. Beaupre's Affidavit is of record as well, and that it was sold and shipped in September of 1994. It was sold through Mr. Beaupre's catalog, Monarch Creations, it's clearly depicted here and we submitted that as well. Nothing submitted by the plaintiff in response to this, -- including the late-in-the-day Affidavit that

plaintiff's counsel obtained from Mr. Gregerman, contradicts that or disputes that, or though certainly it appears that they certainly tried to do so --

The Affidavit submitted by the defendants for Mr. Gregerman, your Honor, states in paragraph 2 that during the summer of '94, he made this with Mr. Beaupre. "Unequivocally," under paragraph 4, "I created an original design expressing an angel incorporating four Swarovski crystal stones. I do not recall having seen a piece in similar design," and I'm skipping around in paragraph 4, "I continue to believe that this design is wholly original, created by me. I've always considered it to be my design."

The Affidavit that Mag's counsel apparently put before Mr. Gregerman, or at least the one that's submitted to the Court, your Honor, doesn't contradict that. First of all, your Honor, it is not properly before the Court. Rule 56 requires that an Affidavit on summary judgment set forth on personal knowledge such facts as would be admissible in evidence and also offers something from the affiant that he makes this -- that he's a competent witness on these topics. Your Honor, paragraphs 3, 4, and 5 of the second Gregerman Affidavit simply don't do that.

THE COURT: You're basically attacking the

validity of the copyright, aren't you, Mr. Noel?

MR. NOEL: The defendants are attacking the validity of the copyright in this action, but that is not the exclusive basis of this summary judgment. Your Honor, if we obtained this piece from Mr. Gregerman, and that is an independent creation, the case cannot go forward because a later independent creator is free to sell his piece. Mag cannot say, well, I have a copyright, therefore, everybody out there who made a piece that looks like ours, you have to pay us. And that, I submit, is exactly what is happening here. The evidence is undisputed that Mr. Gregerman independently created. Now Mag has submitted that second Gregerman Affidavit that says it's my understanding that the "crystal angel piece," and that's in quotes, it's a defined term, "was created and designed by Daniel Magnanimi." He's referring to the Mag piece. And it's his understanding, in other words, he's not going to dispute that. Paragraph 4, "I acknowledge that Mag Jewelry has a copyright registration." Well, we acknowledge that as well. There's nothing new there. His Affidavit is of no effect to this summary judgment.

THE COURT: Can Mag's copyright be valid if Gregerman independently created this piece prior to the issuance of a copyright or prior to its use, prior to

Mag's?

MR. NOEL: Yes, it certainly can. But Mag cannot go around in saying to everybody who has created this, well, we have got one of these copyrights, though there are three or four others out there, some of which we have tried to subsume and get in our portfolio, some of which we haven't, and Mr. Gregerman is out there, that they had a little dispute in the beginning, Mr. Gregerman pushed back and said wait a minute, you designed this? I designed this in '94. That was never resolved, your Honor, and it is clear that the second Affidavit doesn't resolve that either. The second Affidavit never says I did not independently create this angel, and that has to be read very precisely. It doesn't say that. Maybe a draft that was given to him said that, but Mr. Gregerman knows what he did, and he was deposed on this several years ago, and he has never gone back on the assertion that he independently created this angel, and it's a fact accepted in this case now that that is the angel that my client obtained. And if those two facts are taken as true, as they must be, then Mag cannot recover.

The Affidavit submitted by Mag's counsel does not repudiate, Mr. Gregerman does not repudiate his earlier statements. He says I understand Mag has a

copyright, I understand Danny Mag did create a crystal angel. That's of no import to this case.

Mag attempts to argue and assert that there exists a license between Mr. Gregerman and Mr. Magnanimi. The theory, I suppose, would be that a license implies superior rights. As a matter of law, your Honor, that license is inoperative, and the Court can decide that at this stage. The only people calling that letter written by Mr. Magnanimi in 1996 a license are Mr. Tarro and his client. Mr. Gregerman has never called it a license. He doesn't call it a license even in his second Affidavit, the one obtained by Mag's counsel. That letter does not ask for, does not contain Mr. Gregerman's assent, does not contain essential terms of the license, such as the identity of the subject matter, such as consideration, such as a term that the license, purported license is intended to have. It fails for indefiniteness and it fails under the statute of frauds for a number of reasons; never signed by Mr. Gregerman, signature was never asked for. For them to come forward now and say this is a license that Mr. Gregerman had, therefore, the Court should assume that Gregerman copied us and had admitted copying us is faulty and the Court should not accept that. Even if it were a license of some sort, at most

it is an agreement that both of these entities are going to sell a similar piece of jewelry. The letter itself doesn't say, well, you didn't make it, I did. The letter itself doesn't say you acknowledge that my copyright is the only valid one out there. There are just no terms in the letter or in the Affidavit that Mag now must rely on to dispute or contradict Mr. Gregerman's uncontradicted testimony that he independently made this in '94, along with somebody who immediately bought it from him and immediately distributed 5,000 catalogs in the fall of 1994 to the winter of '95. Nothing disputes that.

THE COURT: Isn't there another fact here, Mr. Noel, don't we have to determine that even if all you say is correct, that the angel created by Mr. Gregerman is the same as the angel that Mag has a copyright on?

MR. NOEL: Well, that would be Mag's theory of the case, I suppose, your Honor. They would have to prove substantial similarity of the pieces. Does that answer the Court's question?

THE COURT: Okay, I see. That was not a good question because you did say that it is undisputed that the angel distributed by your client was obtained from Mr. Gregerman.

MR. NOEL: That's correct. That's the fact that was just admitted by Mag in its response papers, really, in September. But the complaint has said other things, and we have answered in discovery. In fact, I believe it was in your Honor's chambers in April that was discussed, and they said, well, if it's a Gregerman angel, we can't go anywhere with it, but there were others that were made off of the Gregerman angel.

But, your Honor, it comes down to those two facts. Mr. Gregerman says I am an independent creator, and Mag has presented nothing to dispute that or to contradict it. And despite its efforts to cloud the summary judgment, Mr. Gregerman didn't go back on that, and Mag did not take his deposition presented in a more concrete form to try to repudiate any of that. Based on those two things, your Honor, summary judgment is a necessity in this case.

We've raised other issues in our summary judgment papers, of course. One of which is the vast number of crystal angel creations that are out there. The disputed fact as to that, your Honor, is when each of these came on-line, when each started being sold, we have presented evidence again of Mr. Verrechia from 1979 onward, there's a dispute that the company he says he worked for says we don't remember Mr. Verrechia or

selling the angel. I realize that. But we've also presented evidence of Mr. Dass in Atlanta and there is record evidence of an employee of Mr. Dass's who says, yes, this is the angel, this is the same angel that I sold in 1989, well before Mag's creation date. Your Honor, Mag can't just come forward and say we dispute that. In fact, the case of *Grubb* versus, I believe it's *KMS New England Patriots*, talks about the burden of coming forward. And it says, it's quoted in our memorandum. It says that "While somebody disputing summary judgment may come forward to specifically dispute a witness in a case propounded for summary judgment, they're not entitled just to have that witness disbelieved just because they say it's so," and I think that's this case, your Honor. And if there are other independent creations, if there were angels out on the market before what we'll accept for now, for this purpose, Mag's earlier 1992 date, then any theoretical access in copying works against Mag as much as it works against any other defendant. That was the reason for providing the Court with that background and those details.

THE COURT: Let me hear what Mr. Clarida has to say about Mr. Gregerman's Affidavit.

By the way, Mr. Clarida, I can't seem to locate

this second Affidavit of Mr. Gregerman that was referred to by Mr. Noel.

MR. CLARIDA: Oh, okay, I do have copies of it, your Honor.

THE COURT: When did you file that?

MR. NOEL: It was submitted after the opposition, two weeks after, I believe.

MR. CLARIDA: It was two days after, your Honor. It was on the 14th of September.

THE COURT: Well, one of the problems here is all these supplemental filings that were made. There is no such thing as supplemental filings here unless you get permission from the Court. It's designed to prevent this very type of situation where we are shooting at a moving target, when people are continuing to file supplemental motions and so forth, it becomes impossible to determine what the basis for the motion is. I do find it now, the clerk calls it to my attention.

All right, what do you have to say about Mr. Noel's point that there is nothing to contradict the Affidavit from Mr. Gregerman that he independently created this angel in 1994.

MR. CLARIDA: All right, your Honor, let me address that point specifically. As an initial

matter --

THE COURT: Excuse me, while I'm at it, before I forget to mention this, you may also want to consider this. If Mr. Noel is correct and there is no infringement here, then maybe I ought to revisit the denial of the motion for summary judgment made by Cherokee. Wouldn't it -- assuming for a moment that Mr. Noel is correct and that summary judgment ought to be granted in favor of his client on the ground that there is no infringement, doesn't it follow, then, that summary judgment also should be granted in favor of Cherokee?

MR. CLARIDA: I believe the motion of Cherokee would be moot, your Honor, if, in fact, summary judgment is granted here, that there is no infringement. There would be no contributory liability.

THE COURT: So let's focus now on the Affidavit by Mr. Gregerman.

MR. CLARIDA: Just as an initial matter, your Honor, it is something that Mag has disputed from the outset of this dispute long before we got into this litigation, that Mr. Gregerman made an independent creation of his piece, and the Affidavit of Mr. Magnanimi that was submitted with the plaintiff's

papers says in paragraph 17, "Mag disputes that Alan Gregerman independently created a similar crystal angel product." So it is not an issue just for the first time is coming up as a result of Mr. Gregerman's new Affidavit. But turning to that Affidavit, and I think Mr. Noel is correct that it does need to be read very precisely and I think if you read it very precisely what it says is that he sold to Style the Mag angel. Assuming that there even is an angel that he still maintains that he independently created, that's not what he sold to Style. And if you look at the Affidavit very closely, very precisely on its face, that's what it says.

THE COURT: Which Affidavit are you referring to?

MR. CLARIDA: This is the second Gregerman Affidavit.

THE COURT: Paragraph what?

MR. CLARIDA: This is in paragraph -- starting in paragraph 4, paragraphs 4 through 7.

THE COURT: There are only five paragraphs in this Affidavit -- oh, I'm sorry.

MR. CLARIDA: Oh, no, there's a second page, your Honor.

THE COURT: All right, paragraphs 4 - 7, you

said?

MR. CLARIDA: Correct. Starting with what Mr. Noel concedes is not a disputed fact, "I acknowledge that Mag jewelry has a copyright registration for the subject crystal angel." When he talks about the subject crystal angel, he's talking about the Mag angel. Then he says, "Based on an agreement with Daniel Magnanimi, Alan Gregerman Company can make and sell the subject crystal angel jewelry piece." That is the Mag crystal angel jewelry piece that is covered by Mag's copyright registration. That is what "subject crystal angel piece" means here, it is a defined term, Mr. Noel is correct. Paragraph 6, "I inform any potential customers interested in purchasing the subject crystal angel that it has been copyrighted by Mag Jewelry Company." Paragraph 7, "Alan Gregerman Company sold the subject crystal angel jewelry piece to Style Accessories, Inc." He is talking about the piece that is covered by the Mag copyright. Now, whether he addresses prior independent creation or not, I think is not relevant. He is saying in this Affidavit that there is a Mag piece that is covered by the Mag copyright, and that is what he sold to Style. And pursuant to an agreement, which Mr. Noel says, well, it can't really be a license because it doesn't have this,

this piece?

MR. NOEL: Your Honor, I'm referring to our Rule 12.1 statement, Gregerman Affidavit is at Tab F, as in Frank, and paragraph 4 at Tab F, "I created an original design expressing," and then paragraph 4 continues.

THE COURT: Where is the link between that design and what was acquired by your client?

MR. NOEL: Your Honor, the link is established by our answer and now the plaintiff's acceptance that we purchased the crystal angel from Mr. Gregerman.

THE COURT: Well, how do we know it's the same crystal angel that he said he independently created?

MR. NOEL: Not to be cute here, your Honor, but the plaintiff says it is. They're saying that this is substantially similar, it's the same thing, they're suing us for copyright infringement. They are saying it is the same angel. The angel is depicted as well at Tab 1 and other tabs in the submission as well.

THE COURT: And, again, where in the second Affidavit do you say it says -- again, I'm not tying to be cute here either, Mr. Noel, but how do we know how many crystal angels were created by Mr. Gregerman?

Isn't it conceivable that he could have created a crystal angel, several crystal angels, one of which is referred to in paragraph 4 as the one that he

other hand, the Affidavit you submitted simply says that he has an agreement with Mag Jewelry, a licensing agreement under which he is permitted to make and sell the piece on which Mag Jewelry has a copyright. So on the one hand he hasn't disputed that the angel that's being distributed by Mr. Noel's client is one that he independently created, and he is asserting that he is making and distributing it pursuant to a licensing agreement, which we don't know what licensing agreement that is pursuant to some licensing agreement he has with Mag. So do those two really clash with one another?

MR. CLARIDA: Well, I believe they do, your Honor. I believe there is conflict between the two affidavits, because as Mr. Noel says the angels are the same. He is talking about the same angel in both cases, in one situation saying he created it independently, and I think there is evidence to present to a jury that he didn't, But in another affidavit saying it's something he is selling pursuant to a licensing to Mag --

THE COURT: Where is the licensing agreement?

MR. CLARIDA: Licensing agreement is here, your Honor. It is in the documents that were submitted. It's an agreement -- it's a letter from Mr. Magnanimi.

It's Exhibit 6 in Plaintiff's 4.1 Statement. Exhibit 6. It's a letter dated September 15, 1996. I have copies here.

THE COURT: I think I've heard enough here. This is a very good illustration of the problems with summary judgment in some of these cases. Summary judgment is not a substitute for trial, and in some cases, frankly, I think that counsel put more time and effort into summary judgment motions than it would take to try the case, as evidenced by the mountain of paper that's been generated here.

It seems to me that there are just too many factual links that have to be established here to be able to resolve this on summary judgment for the Court to say as a matter of law that this is not an infringing product.

Now, having said that, I would also say that I hope we don't find out by the time this case comes to trial that all of this is a smoke screen and that the plaintiffs are just grasping at straws here to keep the case alive, and I'm not suggesting that is so. I'm just saying that I hope we don't find that out. First of all, there is no point to it, all it does is generate a lot of extra expense that is unnecessary, and, secondly, it takes up the time of the Court and

perhaps a jury needlessly if we find out that this is just some kind of a rearguard action that is being fought to forestall the inevitable. And, again, I'm not suggesting that is so. I'm simply saying that if there is no genuine dispute on some things, that it is best to find that out early in the game rather than later in the game.

But as the record presently stands, it seems to me there are just too many factual questions that have to be resolved that I can't resolve in a motion for summary judgment. So your motion for summary judgment also is denied, Mr. Noel.

MR. CLARIDA: Thank you, your Honor.

THE COURT: Court will be in recess.

(ADJOURNED)