UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | C.A. NO.: 04-174T |
| | : | |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC. | : | |
| | : | |
| Defendants | : | |

**PLAINTIFF'S OBJECTION TO CHEROKEE, INC., AND TARGET CORPORATION'S MOTION FOR ATTORNEY'S FEES**

Now comes your Plaintiff, Mag Jewelry Co., Inc. and objects to the Defendant, Cherokee, Inc. and Target Corporations's Motion for Attorney's Fees. In support of its Objection Plaintiff relies on the attached Memorandum filed herewith.

Plaintiff,
By and Through Its Attorney,

Thomas A. Tarro, III #2046
THE LAWFIRM OF THOMAS A. TARRO III.
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 737-7200
(401) 732-3362 (fax)

Robert W. Clarida Esq. #3190
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9266
(212) 575-0671 (facsimile)

**CERTIFICATION**

I hereby certify that I mailed a copy of the above ***Objection*** regular mail on the 3rd day of May, 2006 to:

Craig M. Scott, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas R. Noel, Esq.
NOEL & GYORGY, LLP
50 South Main Street
Providence, RI 02903

[signature]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. | : | |
| | : | |
| VS. | : | C.A. NO.: 04-174T |
| | : | |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC. | : | |
| Defendants | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT, CHEROKEE, INC. AND TARGET STORES' MOTION FOR AWARD OF COSTS AND ATTORNEYS FEES**

**PRELIMINARY STATEMENT**

Plaintiff Mag Jewelry Co., Inc. respectfully submits this Memorandum in opposition to Defendants' motion for an award of costs and attorneys fees under 17 U.S.C. § 505[1]. On March 9, 2006, the court resolved this action at the close of plaintiff's case by granting Defendants' motion for judgment as a matter of law under Rule 50(a).

The merits of the court's decision are now on appeal to the First Circuit. It is not the purpose of this brief to argue that the court was wrong in taking the case from the jury, but rather to establish that an award of fees is not appropriate because: (a) the case raises a number of novel legal and factual issues whose resolution will set precedent not only in the First Circuit but nationwide; and (b) Mag's positions in the

1 Plaintiff has filed contemporaneously herewith a separate Memorandum and Objection with regard to Defendant's Motion for Allowance of Costs. Plaintiff incorporates herein all arguments and authorities relied upon therein with respect to the additional costs Defendants seek, as part of the Motion for Award of Attorney Fees.

litigation are well-supported by authority and by the record, and are therefore objectively reasonable. Moreover, Mag's motivation in bringing the litigation was not to stifle competition by a smaller rival but to stop what it saw as flagrant piracy of its valuable federally-protected copyright by Target Corporation, one of the nation's largest retailers. Accordingly, an award of fees in this case would not serve the underlying purpose of the Copyright Act, i.e., to protect original creative authorship, but rather would penalize a copyright holder who sought in good faith to enforce the rights given him by the statute.

## ARGUMENT

### I. DEFENDANT'S MOTION FOR COSTS AND ATTORNEYS FEES SHOULD BE DENIED

#### A. The Case Presents Novel, Complex and Unprecedented Legal and Factual Issues, Thus Precluding an Award of Fees

Courts in every jurisdiction have long held, without exception, that an award of fees is not appropriate under § 505 where a copyright action presents novel or complex issues of fact and law. See *Lotus Development Corp. v. Borland International, Inc.*, 140 F.3d 70, 72 (1st Cir. 1998)(affirming denial of fees to defendant because "Lotus and Borland … litigated a novel and unsettled question of copyright law in order to protect their own economic interests, and thus under *Fogerty v. Fantasy, Inc.* … an award of fees was not warranted"); *Garnier v. Andin Int'l*, 884 F. Supp. 58, 62 (D.R.I. 1995)(denying attorneys' fees, inter alia, "[b]ecause this case set First Circuit precedent" and "[t]he plaintiff acted reasonably in

prosecuting a case that involved complex legal problems, thus justifying a denial of a fee to the defendants"); *Nimmer on Copyright* § 14.10[D][1] ("[A]ttorney's fees should not be awarded … if a novel or complex question of law is involved and the losing party is acting in good faith.").[2] As to both the factual and legal components of the case, this action was both novel and complex, thus warranting a denial of the defendants' fee motion.

1. Novel Factual Issues

Here, the record establishes a complex and novel fact pattern which is literally unprecedented, insofar as our research can determine: (1) Creator A and Creator B produce identical works; Tr. 53:6-7;[3] (2) when challenged as to his originality, Creator B enters into a license[4] under which he agrees to sell the design "as copyrighted by" Creator A, and Creator A agrees not to pursue legal action

[2] See also *Aftermarket Tech. Corp. v. Whatever It Takes Trans.*, 2005 U.S. Dist. LEXIS 22496 (W.D. Ky. 2005) (denying fee award to defendant where relevant caselaw "is complex and at times seemingly contradictory"); *Bourne Co. v. Walt Disney Co.*, 1994 U.S. Dist. LEXIS 7783 (S.D.N.Y.), aff'd, 68 F.3d 621 (2d Cir. 1995)(denying application for attorneys' fees because "case involved unsettled issues of fact and law"); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (E.D.N.Y. 2001)(court "should not award attorneys' fees where the case is novel or close because such litigation clarifies the boundaries of copyright law"); *Morris v. Business Concepts, Inc.*, 2001 U.S. Dist. LEXIS 17760 (S.D.N.Y. 2001) ("a court generally should not award fees where the case is novel because such litigation serves an important purpose in clarifying the boundaries of copyright law"); *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 485 (S.D.N.Y. 2001) ("The novelty and complexity of the issue, and the contrary view of the Ninth Circuit, however, actually point (along with other factors) to the denial of the NFL's request for attorneys' fees"); *Nimmer on Copyright* § 14.10[D][3][b] ("There is typically no award of fees in cases involving issues of first impression or advancing claims that were neither frivolous nor objectively unreasonable").

[3] All transcript references ("Tr.") are to the transcript of the March 9, 2006 Morning Session unless otherwise indicated.

[4] Defendants strenuously attack Mag's use of the term "license" to describe the Mag-Gregerman agreement, and even highlight the issue as being one of Mag's allegedly "objectively unreasonable" positions. Def. Mem. at 14. For the reasons set forth at section B.1., infra, Mag refers to the agreement as a license throughout this memorandum.

against B or his customers; Tr. 48:24-49:5; Ex. 1; (3) both parties perform under that license, with Creator B telling his customers that the design is subject to A's copyright, Tr. 49:13-21, and Creator A refraining from taking legal action against B, Tr. 57:23-58:1; (4) one of B's customers, C, having been told by B that the design is subject to A's copyright, Tr. 56:12-20, subsequently begins acquiring and selling an identical design from a foreign manufacturer, Tr. 110:21-24, unauthorized by either A or B; (5) when challenged by A, C defends his unauthorized sales by claiming, contrary to what B told him, that the design he acquired from B was not covered by A's copyright; (6) C asserts that because B had independently created an identical piece prior to making his first sale to C, the design C acquired from B could not have been covered by A's copyright; (7) B disagrees with C's reasoning, contends that the design sold to C was "technically" the design "that was copyrighted by" A; Tr. 84:24-85:4; (8) B nonetheless maintains that his design was independently created.

Under this unique and complex set of facts, never before addressed by any court in the history of U.S. copyright law, so far as our research can determine, an award of attorneys fees would be patently unwarranted.

2. Novel Legal Issues

The Byzantine factual scenario in this case gives rise to at least two potentially dispositive legal issues which are likewise novel, complex and unprecedented:

(a) Whether B, having independently created an identical work prior to entering into the agreement with A, can as a

> matter of law sell A's work under that agreement, or whether such an agreement is unenforceable.

The record in this case establishes that Gregerman did enter into a license with Mag to sell the four-stone angel design "as copyrighted by Mag Jewelry," Ex. 1, that he wanted to enter into that agreement to avoid the uncertainty of litigation, Tr. 74:23-75:1, and that both he and Mag performed under that agreement. Tr. 57:23-58:1. Gregerman told defendant Style that the design in question was subject to Mag's copyright. Ex. 2 (Gregerman Aff. 11/04/05) ¶ 8; Tr. 56:12-20. When asked if he sold defendant Style "the crystal angel design that was copyrighted by Mag Jewelry," Gregerman confirmed that "technically" he had done so. Tr. 84:24-85:4. Notwithstanding any independent creation by Gregerman, these facts provide ample support for Mag's position that Style acquired the Mag design from Gregerman.[5]

It is axiomatic that where two identical designs are independently created, separate and independent copyrights exist in both works. *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001); *Robert J. Fritz, DMA, Inc. v. Technologoies for Creating, Inc.*, 944 F. Supp. 95, 100 (D. Mass. 1996), citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936)(L. Hand, J.). If Mr. Gregerman independently created his design, as the Court here found, he has the independent right to exploit that copyright. But if Mag's design was also independently created, as the Court here assumed, Gregerman does not have the right to exploit that copyright without Mag's permission.

17 U.S.C. §§ 203(a)(5), 304(c)(5), but this is not among them, and copyright law in general does not limit the ability of two parties to enter into contracts regarding their works. Bowers v. Baystate Technologies, Inc., 320 F.3d 1317, 1323 (Fed. Cir. 2003)("Courts respect freedom of contract and do not lightly set aside freely entered agreements"). To nullify the voluntary, mutually-beneficial agreement of two parties who have independently created identical designs would at the very least raise an issue of first impression in this Circuit. Mag should not be penalized merely for maintaining that the agreement, like virtually every other agreement between competent adults, is valid and enforceable.

The facts here raise a second novel legal issue, again assuming arguendo that Gregerman independently created his identical design:

> (b) Whether C's own access to A's work, and the substantial similarity of C's work to A's work, can be excused as a matter of law by reason of B's independent creation, when B himself did not authorize the copying by C.

As the Court recognized, Mar. 9 pm Tr. at 49, to demonstrate actionable copying, a copyright plaintiff must establish access and substantial similarity. Concrete Machinery, Inc. vs. Classic Lawn Ornaments, Inc., 843 F.2d 600 (1st Cir. 1988). Here, the record reflects that the defendants had access to the Mag work prior to buying anything from Gregerman – Style discussed the Mag work with Gregerman, Tr. at 56:12-20 – and defendants sold a work which is substantially similar to the Mag work. Therefore, under this record, the elements of copying –

By unanimous authority, there are two independent copyrights in this situation; how should a court decide which one Gregerman was selling? As a matter of law, the source of the material objects embodying the design is irrelevant. 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied"). Mr. Gregerman testified that "technically" the design he sold after 1996 was subject to the Mag copyright, that Mag refrained from suing on the understanding that it was the Mag copyright, and that Gregerman told his customers it was the Mag copyright. Why, then, as a matter of law, were Gregerman and Mag both wrong as to the contours of their own agreement?

On this record, the only basis on which to conclude that the design in question was <u>not</u> the Mag copyright is to disregard the parties' agreement, to conclude that <u>as a matter of law</u> someone in Mr. Gregerman's position <u>cannot</u> enter into an agreement to sell an identical, independently-created design, even if he thinks he has entered such an agreement, enjoys the benefits of that agreement, and passes those benefits along to his customers. Such a conclusion, unsupported by any authority cited in this action, not only ignores the independent copyrights in the two designs, but also interferes with Mr. Gregerman's freedom of contract, forcing him into litigation when he and his potential adversary would prefer to avoid it. The Copyright Act explicitly forbids certain types of copyright-related agreements, see

---

[5] Plaintiff wonders if the Court's result here would have been the same had Style's Chad Mollica testified that "technically" he had acquired the Mag design from Gregerman.

access and substantial similarity -- are satisfied as to the defendants, even assuming Gregerman supplied them with his independently created design.

In response, defendants themselves do not claim to have independently created the design at issue, but instead make the utterly novel and unprecendented argument that Mr. Gregerman's prior independent creation provides them with a defense against Mag, even though it is undisputed that Mr. Gregerman did not authorize their copying either. Our research reveals (and Defendants cite) no case in which this creative argument has been made, much less any in which it has succeeded.

In a hypothetical world, contrary to the testimony here, Gregerman might have breached his agreement with Mag and authorized the sale of "his" identical design by Style, subjecting both to immediate suit by Mag, and such conduct might constitute a valid affirmative defense to Mag's claim of infringement, again assuming the Gregerman design was independently created. See, e.g., Repp v. Webber, 132 F.3d 882 (2d Cir. 1997). But no case to our knowledge permits a third party to raise a defense of independent creation when the independent creator himself did not authorize the third party's copying. In essence, defendants here are saying "we infringed, we just infringed from Gregerman, not from plaintiff." This novel extension of the independent creation defense has no precedent in this or any other Circuit, and rewards defendants' flagrantly inequitable conduct.[6]

[6] Defendants argued at trial that allowing both Mag and Gregerman to assert copyright in identical designs would subject Defendants to the possibility of multiple judgments. Tr. at 24:22-24. This risk is of Defendants'

As noted, the novel and dispositive legal issues identified above both assume arguendo that the Court here was correct in finding Gregerman to have independently created his four-stone angel. Even accepting that conclusion, however, the leap to a finding in defendants' favor – as a matter of law -- is at the very least unprecedented and unsupported by any authority yet cited by Defendants. An award of fees would therefore be manifestly inappropriate.

**B. Mag's Positions Are Not Objectively Unreasonable As to Either the Law or the Facts, Thus Precluding an Award of Fees**

Mag's positions on the two central issues resolved by the court, i.e., whether Gregerman sold the Mag design to Style pursuant to a license and whether Gregerman had access to the Mag design, are logical and well-supported by the record and by relevant authority. Both issues were briefed and argued in connection with Defendants' two summary judgment motions, both of which this Court denied because it could not find in Defendants' favor as a matter of law.[7] No award of fees is therefore appropriate, because Mag's positions are not objectively unreasonable.

1. The Mag-Gregerman Agreement Is a License

Defendants contend throughout their memorandum that the 1996 agreement between Mag and Gregerman was merely a "covenant not to sue," not a copyright

---

own making, and if they wish to avoid it they have the burden of joining all possible plaintiffs in the action. *Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005). They failed to do so.

[7] *EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86 Civ. 1149, 1996 WL 280813 at *2 (S.D.N.Y. May 23, 1996)(plaintiff's case not objectively unreasonable, in part because it withstood motion for summary judgment and required trial); *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, No. 04 Civ. 2110 (JCF), 2005 U.S. Dist. LEXIS 16715 (S.D.N.Y. Aug. 11, 2005) at *9 (No fee award to defendant where plaintiff's claim "was sufficiently colorable to overcome a motion to dismiss and presented a sufficient number of litigable issues to go to trial").

license. Defendants' argument is utterly without merit, because a covenant not to sue is a copyright license. *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.*, 128 F.3d 872, 882, 883 (5th Cir. 1997)("A license is, in legal contemplation, merely an agreement not to sue the licensee for infringement"); Nimmer § 8A.08[E] n.20 ("It may be argued ... that a license, as distinguished from a transfer, does not constitute a divestiture of rights, but only creates a contractual covenant not to sue"); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir. 1984) ("Where precedent in copyright cases is lacking, it is appropriate to look for guidance to patent law 'because of the historic kinship between patent law and copyright law.' ... Under patent law, a license has been characterized as an agreement not to sue the licensee for infringement")(quoting *Sony Corp. of America v. Universal City Studios*, 464 U.S. 417 (1984)).[8]

[8] This definition has long been settled in the patent and trademark areas as well. *In re Supernatural Foods LLC*, 268 B.R. 759, 802 (Bankr. M.D. La. 2001) ("A license of a patent is merely an agreement between the patentee and the licensee that the patentee will not sue the licensee for infringement of his exclusive right (in return for consideration of some sort)"); *L.L. Brown Paper Co. v. Hydroiloid, Inc.*, 32 F. Supp. 857, 867-68 (S.D.N.Y.1939) ("A license is said to be merely the right not to be sued.")(patent case); *U.S. Philips Corp. v. International Trade Comm.*, 424 F.3d 1179, 1189 (Fed. Cir. 2005) ("A nonexclusive patent license is simply a promise not to sue for infringement"); *Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004)("an owner may exempt others from the patent's exclusionary power by granting a license, which is essentially a promise by the licensor not to sue the licensee for infringement"); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001)(a nonexclusive license is "a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention"); *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) (bare license agreement "is in essence nothing more than a promise by the licensor not to sue the licensee"); *Rossner v. CBS, Inc.*, 612 F. Supp. 334, 341 (S.D.N.Y. 1985)("Although defendants argue that this agreement is merely 'a waiver of objection,' it is, in essence, a covenant not to sue [defendants] for their use of the word 'Goodbar.' Such a covenant has the practical effect of a license because it permits and induces the use of the word 'Goodbar' in the title of Trackdown free from allegations of misappropriation.")(trademark case); Universal *City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 929 (S.D.N.Y. 1983) ("Universal maintains that the agreements are not licenses, they are merely covenants not to sue. Whatever Universal chooses to call these agreements, they purport to authorize the use of a Universal mark")(trademark case).



21589/005/746881.1

Defendants cite no authority for the proposition that a "covenant not to sue" is distinguishable in legal effect from a copyright license. Perhaps defendants will yet articulate a persuasive reason for rejecting seven decades of uncontradicted precedent as to the meaning of "license" in intellectual property cases, but it cannot be objectively unreasonable for Mag to have relied on this overwhelming body of authority. Under these cases, the Mag-Gregerman agreement was and is a license and Gregerman was and is Mag's licensee, as a matter of law. If any party is "grasping at straws" as to the existence of a license here, it is Defendants, not Mag.

2. Gregerman Sold the Mag Piece to Style

Defendants argued, and the Court concluded, that the design Style acquired from Gregerman was not covered by the Mag copyright. The record strongly supports a contrary conclusion, whether or not Gregerman is assumed to have independently created an identical work. As discussed supra, the evidence clearly establishes that both Mag and Gregerman intended and believed that Gregerman was selling the four-stone angel "as copyrighted by Mag." Gregerman accepted the benefit of the bargain, and enjoyed years of peaceful and profitable sales without fear of "legal repercussions." When asked directly whether the design he sold to Style was Mag's, he twice answered "Technically." If he meant to say that the design was his and had nothing to do with Mag, there are many ways he could have said so, and "Technically" is not one of them.

The record thus provides ample support for the proposition that Style acquired the Mag-copyrighted work when dealing with Gregerman. The Court did not

disclose its reasons for believing otherwise, Mar. 9 pm Tr. at 48:10-42, but in light of the uncontradicted trial testimony of Mr. Gregerman and the statements he made in his Affidavit, Mag was at the very least objectively reasonable in making that assertion. If Gregerman "technically" provided Style with the Mag design, then Defendants have "technically" infringed that copyright.

3. Gregerman Had Access to the Mag Design

Plaintiff Mag at the very least presented an objectively reasonable argument, and ample testimonial support, to establish that Mr. Gregerman had access to the Mag work prior to producing his identical piece. "Access" in copyright law requires only that defendant had a "reasonable opportunity" to view the plaintiff's work.

As explained in the leading treatise Nimmer on Copyright, at § 13.02[A]: "[I]t is clear that, even if evidence is unavailable to demonstrate actual viewing, proof that the defendant had the opportunity to view (when combined with probative similarity) is sufficient to permit the trier to conclude that copying as a factual matter has occurred—in other words, the factfinder has the discretion to reject even the uncontradicted testimony of the writer of defendant's work that he had never in fact viewed plaintiff's work" (emphasis added). Accord, *Gaste v. Kaiserman*, 863 F.2d 1061, 1067 (2d Cir. 1988) ("Requiring a finding of a 'reasonable opportunity' for access adequately states the appropriate standard"); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 54 (2d Cir. 2003) (district court erred in dismissing plaintiff's suit against certain defendants based on plaintiff's inability to prove that any writers of defendants' song "actually heard his song[;] that argument misapprehends

Jorgensen's burden. … He is not required to establish actual access") (emphasis original).

This "reasonable opportunity" standard has been adopted in the First Circuit. *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996) ("plaintiff must produce evidence from which a reasonable finder of fact could infer that the defendant had a reasonable opportunity to copy his or her work")(emphasis added); *Quaglia v. Bravo Networks*, 2006 U.S. Dist. LEXIS 11636, *5 (D. Mass. Mar. 21, 2006) (same); *Costello, Erdlen & Co. v. Winslow, King, Richards & Co.*, 1991 U.S. Dist. LEXIS 21841, *17 (D. Mass. Oct. 9, 1991) ("Access may be shown by direct evidence of a defendant actually viewing and having knowledge of a protected work. Such evidence is however rare. For this reason, access may be shown inferentially with evidence that a defendant had a reasonable opportunity to view the protected work"); *Majarian v. Tobias*, 1983 U.S. Dist. LEXIS 12546 (D. Mass. 1983)("'Access' is the actual reading or knowledge of plaintiff's work by defendants, or a reasonable opportunity on the part of the defendants to view the plaintiff's work")(emphasis added).

Moreover, in establishing a reasonable opportunity to view plaintiff's work, a "chain of events" or "link" by which access might have occurred is sufficient: "If the infringed work has not been widely disseminated, a party can prove access by showing a particular chain of events or link by which the alleged infringer might have gained access to the work," *Krasselt v. Seagram & Sons, Inc.*, 2002 U.S. Dist.

LEXIS 16136 (S.D.N.Y. Aug. 29, 2002)(emphasis added); *Cox v. Abrams*, 1997 U.S. Dist. LEXIS 6687 (S.D.N.Y. May 14, 1997) (same); *Tomasini v. Walt Disney Co.*, 84 F. Supp. 2d 516, 519 (S.D.N.Y. 2000) ("As proof of access, a plaintiff may show that (1) the infringed work has been widely disseminated or (2) a particular chain of events exists by which the defendant might have gained access to the work")(emphasis added); *Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*, 1997 U.S. Dist. LEXIS 4186, *12 (S.D.N.Y. Apr. 2, 1997)) (same).

The testimony at trial, when construed most favorably to Mag as required by Rule 50, established such a chain of events: that Mag continually showed its design at a number of well-publicized and well-attended jewelry trade shows in Mr. Gregerman's own locality of Providence, Rhode Island, for several years prior to the first documented appearance of the Gregerman piece. Far less "opportunity" suffices to establish access within the courts of the Circuit. *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1171 (D. Mass. 1989) ("Testimony at the hearing by [plaintiff] showed that she began displaying her flag at local craft shows at least a year and a half before [defendant] began producing her own versions. Under such circumstances, it would be disingenuous for the defendants to deny access"); accord, *Ann Howard Designs, L.P. v. Southern Frills*, 992 F. Supp. 688, 690 n.7 (S.D.N.Y. 1998) ("Access, in one form or another, is not truly at issue here. Although Southern attempts a dispute on the issue, the record makes clear that

the parties operate in a relatively contained market, their products being sold at the same trade shows and in a limited array of catalogues").

Accordingly, Mag's argument as to Gregerman's access, i.e., his opportunity to view the Mag design prior to producing his own, is not objectively unreasonable and a fee award to Defendants is not warranted.

### C. Mag's Motivation And Good Faith

Mag's motivation in pursuing this action was simply to vindicate its own economic interest in its valuable registered copyright, and its conduct of the litigation was in good faith, notwithstanding Defendants' revisionist history about the course of the litigation. This is not a case like *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F. Sup. 2d 111 (D. Mass. 2001), in which plaintiff brought a specious claim in a "well-settled area of copyright law" in an effort to "drain as much profit as possible out of a far smaller competitor." Rather, as in *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, [CITE fee decision Aug. 11, 2005],

> There is no indication that plaintiff undertook this action in bad faith or to harass the defendants. . . . [T]he plaintiff believed that the defendants infringed upon his work and accordingly sought relief. Both parties had legitimate economic interests and concerns about protecting their designs.

Moreover, as noted in *Nicholls*, "[b]oth sides appear fully capable of bearing their own costs, and there is no evidence that the plaintiff sought to use superior economic power to exhaust the defendants' resource in litigation." Id. at ____.

Defendants raise three specific issues as examples of alleged bad faith on Mag's part, which warrant brief responses:

1. <u>Filing the Action In New York Was Appropriate</u>

As to the issue concerning the filing of the original Complaint in the Eastern District of New York, Mag had a good faith basis for bringing the claim that forum because a substantial part of the events giving rise to the claim, namely the sale of the infringing work, occurred in New York. Whether or not additional events, such as the copying of the "Crystal Angel" or the manufacture of the infringing pieces occurred elsewhere does not alter the fact that substantial events for venue purposed occurred in New York. *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 182 (S.D.N.Y. 1995). In copyright infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred. *Id.* at 182. See also *Rothstein v. Carriere*, 41 F.Supp. 2d 381 (E.D.N.Y. 1999) (venue proper where economic injury suffered by Plaintiff by acts occurring in New York).

In addition, Defendants Target and Cherokee clearly "may be found" in New York, permitting the exercise of jurisdiction under § 1391 (b)(3). Accordingly, venue in New York was proper pursuant to 28 U.S.C. § 1391(b).

Significantly, as of the time of filing the Complaint in the Eastern District of New York, Mag had no knowledge that either Style Accessories or Alan Gregerman Company would be involved in this case. Mag did not learn that the infringing piece was purchased from Style Accessories until Mag received an Affidavit, dated March 2002 of a Target representative, and Defendant Target's Response to Plaintiff's

Interrogatories, specifically the Answer to Interrogatory No. 5, dated July 2002, wherein Target states it purchased the Crystal Angel jewelry from Style.

Defendants Motion to Transfer was granted, pursuant to the Order of Senior District Judge Sterling Johnson, dated March 31, 2004. Subsequently, Plaintiff filed its Motion to Amend its Complaint to add Style Accessories as a party Defendant, which was granted by this Court on October 5, 2004.

Moreover, it was not until Mag received Style's Answers to Interrogatories, and specifically its Answer to Interrogatory No. 9, on or about December 30, 2004, when Mag learned that the infringing Crystal Angel piece was initially obtained from Alan Gregerman Company. Thus the only two Rhode Island participants in this case, Style and Gregerman, were not known to Mag until months or years after the filing of the Complaint in New York. Defendants' wild speculations about Mag somehow seeking to evade the 100-mile subpoena power of the court by filing in New York, Def. Cherokee and Target's Mem. at 1, are therefore utterly preposterous.

2. Naming Margolis as a Defendant Was Appropriate

As to the issue concerning dismissing Mr. Margolis, on June 8, 2005, Plaintiff voluntarily filed a Dismissal Stipulation dismissing all claims against Robert Margolis with prejudice. At the time Mag filed the action, however, it had an objectively reasonable basis for naming Mr. Margolis, in his capacity as a principal of Defendant Cherokee. See *Eng'g Dynamics, Inc. v. Structural Software Inc.*, 26 F.3d 1335 (5th Cir. 1994)(individual principal may be liable without need for piercing corporate veil); *Marvin Music Co. v. BHC Ltd. Partnership*, 830 F. Supp.

651, 654-655 (D. Mass. 1993)(principal "cannot escape responsibility for the infringements by hiding behind the partnership and corporate defendants"). As the court is aware, the claims against Mr. Margolis' company, Cherokee, continued to trial based on the license agreement with Target, which this Court found to raise material issues of disputed fact in denying Target and Cherokee's Motion for Summary Judgment.

3. Motion to Compel Mag to Produce Documents Exchanged Between Counsel and Gregerman

The Defendant's Motion to Compel Production of the challenged documents was heard -- and denied -- by Magistrate Judge Almond. A copy of the Memorandum and Order of Judge Almond is attached hereto for the Court's reference. The Defendants appealed to the Magistrate's Memo and Order which resulted in this Court granting the Motion and permitting the subsequent deposition of Mr. Gregerman. Mag's objection to the Motion to Compel can hardly have been unreasonbale or in bad faith, especially in view of Magistrate Judge Almond's initial decision in Mag's favor.

Finally, the proper standard for a determination of bad faith in the context of § 505 is not isolated incidents such as those raised by Defendants, but rather whether plaintiff's conduct of the litigation as a whole was in bad faith. See *Mathew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116 (2d Cir. 2001); 2002 U.S. App. LEXIS 14532 (2d Cir. 2002)("In sum, we hold that Hyperlaw failed to adduce sufficient evidence that West's conduct of the entire litigation was in bad faith, and that,

therefore, the District Court's finding of bad faith was clearly erroneous")(emphasis added).

Thus, none of the alleged instances of bad faith or improper motivation withstand scrutiny, and they provide no basis whatsoever for supporting an award of attorney fees in this action.

### D. An Award Would Not Serve the Purposes of the Copyright Act

The purposes of the Copyright Act are "promoted by the discouragement of infringement as well as by the successful defense of copyright infringement actions." *Procter & Gamble Co. v. Colgate-Palmolive Co.*, No 96 Civ. 9123, 1999 WL 504909 at *4 (S.D.N.Y. July 15, 1999). Moreover, the clarification of novel or unsettled issues is also of fundamental importance to the development of copyright law, and warrants a denial of fees. *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (E.D.N.Y. 2001)(court "should not award attorneys' fees where the case is novel or close because such litigation clarifies the boundaries of copyright law"); *Morris v. Business Concepts, Inc.*, 2001 U.S. Dist. LEXIS 17760 (S.D.N.Y. 2001) ("a court generally should not award fees where the case is novel because such litigation serves an important purpose in clarifying the boundaries of copyright law").

Therefore, as the Court concluded in *Nicholls*, supra, "because this case involved complicated issues of fact, an award of attorneys fees would chill future lawsuits rather than deter frivolous or objectively unreasonable claims." *Nicholls* at *10. An award of fees in this case would therefore be manifestly unwarranted.

## II. THE ATTORNEY'S FEES AND COSTS REQUESTED BY THE DEFENDANT ARE NOT REASONABLE.

Although 17 USC § 505 permits the award of attorney's fees in a copyright infringement action, the determination as to award such fees, and the amount thereof, is within the sound discretion of the trial court. _Lotus Development Corp. vs. Borland International, Inc._ 140 F.3d 70, 72 (1st Cir. 1998). In determining the reasonableness of an award of attorney's fees, our Supreme Court and this Court used the lodestar approach to calculate attorneys' fees. _Hensley vs. Eckerhart_, 461 US 424, 433 (1983); _Lipsett vs. Blanco_, 972 F.2d 934, 937 (1st Cir. 1992); _Sherwood Brands of Rhode Island, Inc. vs. Smith Enterprises, Inc._, 2002 WL 32157515 (D.R.I. 2002).

In calculating reasonable hours spent under the lodestar approach, the Court must ascertain the time counsel actually spent on a case "and then subtract from that figure hours which where duplicative, unproductive, excessive, or otherwise unnecessary." _Sherwood Brands of Rhode Island, Inc. vs. Smith Enterprises, Inc._, 2002 WL 32157515 (D.R.I. 2002), citing _Grendel's Den, Inc. vs. Larkin_, 749 F.2d 945, 950 (1st Cir. 1984). In this regard, this Court has noted that "[t]he time for two or three attorneys in a courtroom or conference, when one would do, 'may obviously be discounted'". _Johnson vs. State of Rhode Island, et al_, 2000 WL 303305 (D.R.I. 2000)[9], citing _Hart vs. Bourque_, 798 F.2d 519, 523 (1st Cir. 1986) (quoting _King vs. Greenblatt_, 560 F.2d 1024, 1027 (1st Cir. 1977). In addition, this Court has noted "[c]lerical or secretarial tasks ought not to be billed at lawyer's rate, even if a lawyer performs them". _Johnson vs. State of Rhode Island, et al_, 2000 WL 303305 (D.R.I. 2000), citing _Lipsett vs. Blanco_, 975 F.2d at 940 (citing _Missouri vs. Jenkins_, 491 US 274, 288n10 (1989)). Moreover, in the absence of "specific information about…the

[9] Although the _Johnson_ case deals with the reasonableness a request of attorneys' fees under 42 USC § 1988, however, the discussion regarding the lodestar approach is equally applicable to the determination of the reasonableness of an award of attorney's in a copyright action.

nature of work performed" a requested fee "should be reduced or even denied altogether". *Alfonso vs. Aufiero*, 66 F.Supp.2d 183, 194 (D.Ma 1999) citing *Calhoun vs. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986) and *Grendel's Den*, 749 F.2d at 369.

**A. The attorney's fees must be reduced to the extent time spent was duplicitous, unproductive, excessive or otherwise not sufficiently precise in terms of record keeping.**

Plaintiff submits that the Defendant's attorney's fees sought should be reduced to the extent that the billing records indicate that substantial time spent was duplicitous, unproductive, and unnecessary. Moreover, many entries lack sufficient precision to determine the reasonableness of the tasks performed and time expended.

Along these lines, the Defendant's billing records indicate a significant number of entries for time spent working on this matter by Attorneys Scott and Bush (formally Ahern) and paralegal Crystal Dartt. In reviewing the records, it appears that a number of entries for Attorney Scott and Bush and Attorney Bush and Ms. Dartt are duplicative, in nature. The Plaintiff directs the Court's attention to entries made on an almost monthly basis, where certain work performed is duplicitous, excessive and unnecessary as follows:[10]

| | | | |
|---|---|---|---|
| 4/6/02 | CKA | Finalize Motion to Strike and reply memorandum; additional research regarding same. | 2.50 |
| 4/8/02 | CKA | Review Reply Memorandum; draft second Trudell affidavit; prepare correspondence to client. | 0.60 |
| 4/8/02 | CMS | Review and revise Reply Memorandum and Motion to Strike; office conference with C. Ahern regarding same. | 1.30 |
| 5/20/02 | CKA | Revise Rule 26(f) conference | 0.30 |

[10] The excerpts of the billing entries, set forth herein, does not represent an exhaustive list, but rather a summary thereof, for the Court's consideration.

| | | | |
|---|---|---|---|
| | | statement. | |
| 5/20/05 | CMS | Review Rule 26(f) discovery plan. | 0.40 |
| 5/28/02 | CKA | Revise discovery responses for three defendants. | 0.70 |
| 6/10/02 | CMS | Review and revise response to Interrogatories (three sets) | 0.60 |
| 7/2/02 | CD | Assist in drafting answers to interrogatories; edit answers to interrogatories; forward same to J. Trudell. | 3.00 |
| 7/2/02 | CKA | Prepare response to interrogatories on behalf of all defendants; correspondence with clients regarding same. | 2.30 |
| 7/15/02 | CMS | Review and revise document responses of Target and Cherokee; office conference with C. Ahern regarding revisions. | 0.60 |
| 7/15/02 | CKA | Finalize responses to request for production; discuss with C. Scott. | 0.70 |
| 9/12/02 | CMS | Revise letter to M.J. Pohorelsky of the E.D.N.Y.; office conference with C. Ahern and telephone calls from local counsel regarding same. | 1.30 |
| 9/12/02 | CKA | Review correspondence to Magistrate; discuss contract and filing with local counsel. | 1.50 |
| 5/8/03 | CKB | Revise correspondence to Magistrate Judge regarding Motion to Reconsider Lifting Stay; telephone conference with | 0.50 |
| 5/9/03 | CMS | Review letter to Judge Pohorelsky. | 0.40 |
| 8/16/04 | CMS | Prepare for Rule 16 Conference; telephone calls from J. Trudell regarding same; telephone conference with opposing counsel. | 1.00 |
| 8/16/04 | CKB | Review file and pleadings for Rule 16 conference; prepare Materials for Rule 16 conference. | 1.50 |

| | | | |
|---|---|---|---|
| 10/26/04 | CMS | Review Mag's Motions (2) to Compel. | 0.40 |
| 10/27/04 | CKB | Review Motions to Compel 0.40 Production and Strike Objections; Prepare correspondence to defendant's counsel regarding same; prepare Objection. | |

Aside from the duplicative billing entries for work performed, the Defendants also seek to recover attorney's fees for Court appearances of Attorney Bush to attend jury empanelment and three days of trial for a total of 32.5 hours, totaling $10,075.00, despite the fact that Attorney Scott conducted all examination of witnesses made by the Defendant at trial, and further, as trial counsel, Attorney Scott was the only attorney required to be present at the jury empanelment proceedings.

The law is well-settled in this jurisdiction, in that as a general matter "the time for two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted'". Lipsett vs. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) citing Hart vs. Bourque, 798 F.2d 519, 523 (1st Cir. 1986) (quoting King vs. Greenblatt, 560 F.2d 1024, 1027 (1st Cir. 1977).

Finally on this point, Plaintiff submits that certain entries on the Defendant's billing invoices are not sufficiently precise, and therefore, inadequately set forth a specific accounting of the work performed and the time spent to determine reasonableness.

In Johnson vs. State of Rhode Island, 200 WL 303305 * No. 3 (D.R.I. 2000), this Court recognized that a party requesting attorney's fees maintains the burden of providing sufficient documentation in support thereof. "Where the documentation of hours is inadequate, the District Court may reduce the award accordingly." Id., citing O'Rourke vs. City of Providence, 1999 WL 1132539 (D.R.I. 1999) (quoting Hensley vs. Eckerhart, 461 US 424, 433 (1983) [See also Alfonso vs. Aufiero, 66 F. Supp.2d 183, 194, (D. Ma. 1999) (wherein the Court eliminated a significant number of hours sought by way of an award of attorney's fees, where the attorney's records

were "not sufficiently precise" as to the tasks performed or the claim pursued to allow the Court to assess whether the times spent was reasonable.); see also _Tennessee Gas Pipe Line Co. vs. 104 Acres of Land_, 32 F.3d 632, 634 (1st Cir. 1994) (requiring "'a full and specific accounting of the task performed'" and upholding a thirty-percent reduction in the fee award for over-general time sheets)]

On this issue, the Plaintiff directs the Court's attention to numerous billing entries of defense counsel, which fail to sufficiently specify the work performed, as follows[11]:

| | | | |
|---|---|---|---|
| 3/21/02 | CD | Draft letter to | 0.20 |
| 3/27/02 | CD | Index documents | 0.60 |
| 3/28/02 | CD | Continue index documents provided by | 2.30 |
| 9/5/02 | CD | Telephone call with | 0.20 |
| 10/8/02 | CKA | Meeting with | 0.80 |
| 10/8/02 | CMS | Prepare for & meeting with | 0.80 |
| 1/6/03 | CKB | Telephone conference with | 0.40 |
| 1/6/03 | CMS | Telephone call from | 0.30 |
| 1/31/03 | CKB | Telephone conference with | 0.20 |
| 1/31/03 | CMS | Office conference with C. Ahern regarding | 0.30 |
| 2/12/03 | CKB | Conference with | 0.20 |
| 2/21/03 | CKB | Telephone conference with | 0.10 |
| 2/22/03 | CKB | Conference with | 0.10 |
| 2/22/03 | CKB | Conference with | 0.10 |
| 2/26/03 | CKB | Telephone conference with | 0.50 |
| 5/27/04 | CMS | Draft letter to | 0.30 |
| 9/10/04 | CMS | Extended telephone call from | 0.40 |
| 9/13/04 | CMS | Meeting with | 0.50 |
| 9/15/04 | CMS | Prepare | 1.50 |
| 4/19/05 | JAH | | 0.30 |
| 6/22/05 | CMS | Review | 0.40 |
| 9/15/05 | CMS | Legal Research on | 1.00 |
| 11/16/05 | CMS | Attention to | 0.60 |
| 1/23/06 | CMS | Review | 0.20 |
| 1/24/06 | CMS | | 1.00 |
| 2/10/06 | CKB | Trial preparation | 4.00 |

[11] Again, this list is not exhaustive, but sets forth a sampling of the imprecise billing entries set forth in defense counsels invoices submitted with its Request for Attorney's Fees.

| | | | |
|---|---|---|---|
| 2/13/06 | CJD | Assist with trial preparation | 3.20 |
| 2/15/06 | CMS | Trial preparation | 2.00 |
| 2/15/06 | CJD | Assist trial preparation | 3.50 |
| 3/3/06 | CJD | Assist trial preparation | 2.40 |
| 3/7/06 | CJD | Assist trial preparation | 7.00 |

Your Plaintiff submits that based on the foregoing, this Court should exercise its discretion to reduce the amount of attorney's fees requested by the Defendant with regard to time billed which was duplicative, unproductive, excessive and otherwise unnecessary, as well as for failure of the Defendant to provide sufficiently precise timekeeping records as to particular tasks performed as set forth herein. Based on the substantial number of hours billed in this regard, your Plaintiff submits that a reduction of the Defendant's attorney's fees by one third (1/3) is warranted.

**B. The attorney's fee must be reduced to the extent that excessive hourly rates were charged to non-core tasks.**

Under the lodestar approach, the amount of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate depending upon the task being performed. Coutin vs. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). Well established First Circuit practice permits the district court to assign different hourly rates to different tasks. *Alfonso vs. Aufiero*, 66 F.Supp.2d at 195-197 (D.Ma 1999) (citations omitted).

In *Alfonso vs. Aufiero*, the district court found that it was appropriate to allocate charges for "core" and "non-core" legal work. The Court found that core work included legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring and implementation of court orders whereas non-core participatory capacity. *Alfonso vs. Aufiero*, 66 F.Supp.2d at 196. Non-core work consists of writing and reviewing correspondence, telephone calls (including calls to opposing counsel), conferences or consultations with third parties, meetings with client other than to prepare for deposition or immediately before trial, for responding to discovery requests, and issuing subpoenas and noticing depositions, for writing memorandums to the file, for scheduling and travel. *Id.* The



21589/005/746881.1

Court ruled that non-core tasks would be billed at a proportionately lower rate, two-thirds of the requested rate, as an adjustment for the lesser experience and expertise required to complete the non-core tasks. *Id.* at 197 (citing to *Brewster vs. Dukaskis,* 3 F.3d 488, 492 (1st Cir. 1993).

Plaintiff submits that the Defendants billing entries are replete with non-core work performed by Attorneys Scott, and Bush, but billed at their usual hourly rates. Accordingly, Plaintiff submits that this Court should exercise its discretion to similarly adjust the hourly rates requested by Defendant's counsel to correlate with the nature and difficulty of the legal tasks performed.

**C. The attorney's fee must be reduced to the extent that the Defendant seeks fees related to its Motion for Summary Judgment, which was denied by the Court.**

Upon reviewing the billing invoices of the Defendant, it seeks to recover 18 hours at $325.00, an hour, for time spent by Attorney Scott in preparing for and arguing the Defendant's Motion for Summary Judgment, 10.1 hours at $275.00 per hour for Attorney Kurt Hague in preparing the Defendant's Motion for Summary Judgment and responsive Memorandum, totaling $8,627.50.

Your Plaintiff submits that based on the standards set forth in *Hensley vs. Eckerhart*, 461 US 424 (1983), the time spent by defense counsel in preparing for and arguing its unsuccessful Motion for Summary Judgment should be discounted from the attorney's fee sought.

**D. The attorney's fee must be reduced to the extent that the hourly rates of defense counsel and its paralegal are unreasonable.**

Your Plaintiff submits that the hourly rates of Attorney Scott throughout the litigation, ranging from $275.00 to $345.00, per hour, at the time of trial, the hourly rates of Attorney Bush, ranging from $195.00 to $310.00, per hour, at the time of trial, the hourly rate of Attorney Hague of $275.00, per hour, and the hourly rate of paralegal Crystal Dartt, ranging from $125.00, per hour, in 2004 to $140.00, per hour, at the time of trial, are unreasonable.

In order to determine the appropriate hourly rate, this Court must look to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation". Grendel's Den, Inc. vs. Larkin, 749 F.2d 945, 955 (1st Cir. 1984). In this regard, the Court is not obligated to adopt the petitioning attorney's customary billing rate or what the attorney asserts is the prevailing rate in the community. Andrade vs. Jamestown Housing Authority, 82 F.3d 1179, 1190 (1st Cir. 1996); Obert vs. Republic Western Insurance Co., 264 F.Supp.2d 106, 123 (D.R.I. 2003).

In the case of Obert vs. Republic Western Insurance Company, 264 F.Supp.2d 106 (D.R.I. 2003), this Court found that in Providence an appropriate range for a hourly rate for a litigator to be $125.00 to $200.00 per hour "with $200 per hour being reasonable for a 'well established, highly regarded trial attorney in the Rhode Island legal community'". 264 F.Supp.2d at 123. Further, as to the paralegal's rate, in the case of Figueroa-Torres vs. Toledo-Davila, 232 F.3d 270 (1st Cir. 2000) the United States Court of Appeal for the First Circuit did not disturb the district court's reduction of the rate billed for counsel's paralegal of $75.00 per hour to $40.00 per hour.

Plaintiff submits that the hourly rates of counsel for Style Accessories, Thomas Noel, in the amount of $225.00 per hour, as well as Attorney Harrington, who assisted Mr. Noel, of $175.00 per hour, are appropriate and not unreasonable. Accordingly, Plaintiff has not posed any objection to the hourly rate of counsel for Style Accessories with respect to its Motion for an Award of Counsel Fees[12].

The hourly rate set forth for counsel for Target Stores and Cherokee, Inc. is unreasonable, particularly, in view of the rate of counsel for co-Defendant Style Accessories. Accordingly, your Plaintiff seeks a reduction of the hourly rate sought by defense counsel to $225.00, per hour, for Attorney Scott and $175.00, per hour,

[12] Plaintiff's counsel has made objections with respect to other issues concerning Style Accessories Motion for Award of Counsel Fees. However, the reasonableness of the rate charged by counsel for Style Accessories has not been challenged by Plaintiff's counsel.

for work performed by Attorney Bush and other counsel, as set forth in the Defendant's billing invoices. Moreover, Plaintiff seeks a reduction of the hourly rate charged for the paralegal, Crystal Dartt, to $60.00 per hour.

## CONCLUSION

Based on the reasons and authorities set forth above, Plaintiff respectfully submits that Defendants' motion for an award of costs and attorneys' fees should be denied in all respects.

Dated: May 3, 2006

MAG JEWELRY CO., INC.
By its Attorney,

Thomas A. Tarro III, Esq. #2046
THE LAW FIRM OF THOMAS A. TARRO III
The Summit East, Suite 330
Centerville Road
Warwick, RI 02886
(401) 737-7200
(401) 732-3362 (facsimile)

Of Counsel:

Robert W. Clarida Esq. #3190
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9266
(212) 575-0671 (facsimile)

**CERTIFICATION**

I hereby certify that I mailed a copy of the above ***Memorandum***, regular mail on the 3rd day of May, 2006 to:

Craig M. Scott, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas R. Noel, Esq.
NOEL & GYORGY, LLP
50 South Main Street
Providence, RI 02903

Ashley Toneatto

To: Allan Gregerman Co.
231 Elm
Warwick, RI 02888
Att. Allan Gregerman

From: Danny Magnanimi
Mag Jewelry Co. Inc.

Date: 9/15/96

Dear Allan,

Per our telephone conversation we have both agreed that you can make the crystal angel as copyrighted by Mag Jewelry Co..
You have been nice enough to call us with customers that have called you in looking to buy this item, and we have agreed with most of them. We feel that we know your customer base very well and that we will not try to chase them with both the pearl angel and the crystal angel with brass wings. As I stated on the phone, we will not try to sell the pearl angel to K & M or the crystal angel with the brass wings. If they call we will let you know.
We will be making both the crystal angel with the brass wings and the pearl angel if you cannot meet our delivery dates.

It is nice to know that there are still gentlemen in this business.
I feel that our business will only grow in the near future.

**Also please feel free to call us if you need any help in your delivery to your customers. <u>Let's both try to make some money this year.</u>**

Regards,

Danny Magnanimi

cc/Don Donnelly Sales
cc/Frank Vescera GM Mag Jewelry Co.

[redacted]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. Plaintiff | : | |
| VS. | : | C.A. NO.: 04-174T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC Defendants | : | |

**AFFIDAVIT OF ALAN GREGERMAN**

I, Alan Gregerman, under oath do hereby state as follows:

1. I am the owner and principal of Alan Gregerman Company with a business address at 231 Elms Street, Warwick, RI 02888. Alan Gregerman Company is a corporation duly organized and existing under the laws of the State of Rhode Island in the business of jewelry manufacture and sales.

2. I have personal knowledge with respect to Mag Jewelry Co., Inc.'s "Crystal Angel" jewelry piece which is the subject of the instant matter.

3. It is my understanding that the subject "Crystal Angel" jewelry piece was created and designed by Daniel Magnanimi of Mag Jewelry Co., Inc.

4. I acknowledge that Mag Jewelry Co., Inc. has a copyright registration for the subject "Crystal Angel" jewelry piece and that Mag has enforced its rights under the copyright.

5. Based on an agreement with Daniel Magnanimi, Alan Gregerman Company can make and sell the subject "Crystal Angel" jewelry piece.

[redacted]

6. I inform any potential customer interested in purchasing the subject "Crystal Angel" piece that it has been copyrighted by Mag Jewelry Co., Inc. and that Alan Gregerman Company has an agreement with Mag and can make and sell the piece to its customers.

7. Alan Gregerman Company sold the subject "Crystal Angel" jewelry piece to Style Accessories, Inc., which is located at 3 Acorn Street, Providence, Rhode Island for a short period of time from May, 1997 to August, 1998.

8. To the best of my recollection, I informed Chad Mollica of Style Accessories, Inc. of the fact that the subject "Crystal Angel" piece was copyrighted by Mag Jewelry Co.

Further Affiant sayeth not.

Alan Gregerman, President

Alan Gregerman

State of Rhode Island
County of Kent

In Warwick said County on the 13th day of ~~August~~ September, 2005, before me personally appeared Alan Gregerman, each and all to me known, and known by me to be the party executing the foregoing instrument and he acknowledged said instrument, by his executed to be his free act and deed.

Notary Public
My Commission Expires: 11/04/05

the parties operate in a relatively contained market, their products being sold at the same trade shows and in a limited array of catalogues").

Accordingly, Mag's argument as to Gregerman's access, i.e., his opportunity to view the Mag design prior to producing his own, is not objectively unreasonable and a fee award to Defendants is not warranted. *Nicolls*, *supra*, note 7 at *10-11.

### C. Mag's Motivation And Good Faith

Mag's motivation in pursuing this action was simply to vindicate its own economic interest in its valuable registered copyright, and its conduct of the litigation was in good faith, notwithstanding Defendants' revisionist history about the course of the litigation. This is not a case like *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F. Sup. 2d 111 (D. Mass. 2001), in which plaintiff brought a specious claim in a "well-settled area of copyright law" in an effort to "drain as much profit as possible out of a far smaller competitor." Rather, as in *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, *supra*, note 7 at *14.

> There is no indication that plaintiff undertook this action in bad faith or to harass the defendants. . . . [T]he plaintiff believed that the defendants infringed upon his work and accordingly sought relief. Both parties had legitimate economic interests and concerns about protecting their designs.

Moreover, as noted in *Nicholls*, "[b]oth sides appear fully capable of bearing their own costs, and there is no evidence that the plaintiff sought to use superior economic power to exhaust the defendants' resource in litigation." Id.

Defendants raise three specific issues as examples of alleged bad faith on Mag's part, which warrant brief responses: