UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff | : | |
| vs. | : | C.A. No. 04-174 T |
| CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | |

**DEFENDANTS CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AWARD OF ATTORNEYS' FEES**

There is nothing novel about the legal defense of independent creation. Nor is there anything novel factually about this case other than plaintiff's epic pursuit through two jurisdictions despite knowing that Alan Gregerman independently created his Crystal Angel and Style Accessories, Inc. ("Style") sold the Gregerman crystal angel to Target Corporation ("Target"). Stripping away Mag Jewelry Co., Inc.'s ("Mag") appeals-type effort to reargue its case, the issue is whether this case is appropriate for a fee award. Since plaintiff was objectively unreasonable in (1) initiating the case in New York; (2) suing Robert Margolis; (3) pursing the case even after it knew Style purchased the piece from independent creator Alan Gregerman; and (4) distorting a witness affidavit beyond reason to defeat a summary judgment that would have saved the parties tens of thousands of dollars, the answer is a resounding yes.

## FACTS

Plaintiff's witnesses Daniel Magnamini and Alan Gregerman testified at trial to the following facts:

1. There are two crystal angels at issue here: the Mag crystal angel and the Gregerman crystal angel. (Mar. 8, 2006 a.m. Tr., 93: 4-6; see also Plaintiff's Memorandum, p. 3);
2. The angels look the same and are built the same (Mar. 8, 2006 a.m. Tr: 93:15-22);
3. Alan Gregerman independently created the Gregerman crystal angel in 1994. When he created the Gregerman crystal angel, he had never seen a four-stone crystal angel and did not copy any piece in designing the Gregerman crystal angel (Mar. 9, 2006 a.m. Tr. 63:2-25);
4. Alan Gregerman always considered the Gregerman crystal angel to be his independent creation and never told anyone that the Gregerman crystal angel is not his creation (Mar. 9, 2006 a.m. Tr. 64:22-65:15);
5. In 1996, Alan Gregerman told Mag that he independently created the Gregerman crystal angel in 1994 (Mar. 8, 2006 a.m. Tr: 87:8-11; 88:6-8; 93:9-11);
6. On September 15, 1996, Mag sent Gregerman a letter that did not mention the Gregerman crystal angel and did not object to Gregerman's selling the Gregerman crystal angel (Plaintiff's Ex. 35);
7. In June 1997, Mag requested that Alan Gregerman assign his rights in the Gregerman crystal angel to Mag. (Mar. 8, 2006 a.m. Tr., 92: 18-21; Defendants' Trial Exh. OO);
8. Alan Gregerman refused. (Mar. 9, 2006 a.m. Tr., 77:3-13);

9. Alan Gregerman has sold the Gregerman crystal angel continuously since August 1994 (Mar. 9, 2006 a.m. Tr., 65:16-21)

10. Alan Gregerman sold the Gregerman crystal angel to Style (Mar. 9, 2006 a.m. Tr., 65:16-21).

None of those facts was first discovered during the trial. To the contrary, for ten years Mag has known that Alan Gregerman independently created the Gregerman crystal angel in 1994 and was continuing to sell the piece. As of March 4, 2002, Mag knew that Alan Gregerman played a role in this case, and as of December 2004 Mag knew definitively that Style had purchased the Alan Gregerman piece. Notwithstanding that, Mag pursued this case and these four defendants for years through multiple discovery skirmishes, cross-country depositions, summary judgment and trial.

## ARGUMENT

### A. There is Nothing Novel About the Legal Defense of Independent Creation.

To prevail on its copyright claims, Mag had to prove two things: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). Under well established case law, the second element, proof of copying, is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identity), if Style did not copy the Mag crystal angel, there is no infringement.

Independent creation is a common defense to alleged copyright infringement. Essentially, even if a plaintiff proves the works are identical and the defendant had access, independent creation precludes a finding of infringement because it negates the copying element. *See e.g., Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir.

1988); *see also* Trial Testimony of Elliot Salter, Mar. 8, 2006 p.m. Tr. 48:24-49:3 (agreeing that "five different people… can create the exact same piece of jewelry and each can have copyright rights in those five pieces of jewelry").

Plaintiff spends pages arguing the novel factual issues this case purportedly raised. Even assuming they exist, those facts are for the First Circuit. The issue properly before this Court on a fee application award is whether the case presented novel and unsettled legal questions. *Cf., Lotus Development Corp., v. Borland Int'l, Inc.*, 140 F.3d 70, 72 (1st Cir. 1998) (affirming denial of fee award where parties litigated a novel and unsettled question of copyright law); *Garnier v. Andin Int'l*, 884 F. Supp. 58, 62 (D.R. I. 1995) (denying fees after finding that the plaintiff acted reasonably in prosecuting a case that involved complex legal problems). The First Circuit has recognized the defense of independent creation for almost 20 years. *See, e.g. CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504 (1st Cir. 1996); *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988). Plaintiff cannot explain how the defense of independent creation presented an unsettled area of law in this case. Accordingly, plaintiff's argument that fees are not appropriate because the trial involved a novel legal issue is simply not supported by the record and should be rejected. *See InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 20-21 (1st Cir. 2004) (where a copyright case turns solely on the question of whether the defendant copied a protected work, the winner could claim attorneys fees and costs subject to the Court's discretion).

**B. Plaintiff's Fact Recitation Does Not Change the Analysis.**

At page five of its Memorandum, plaintiff concedes that "where two identical designs are independently created, separate and independent copyrights exist in both works." Applying blackletter caselaw and the testimony of Mag's expert, Elliot Salter, Esq., Alan Gregerman had a

copyright in the Gregerman crystal angel and could exploit that right as he saw fit, including selling his crystal angel to Style. Mr. Gregerman testified repeatedly and without contradiction that he sold the Gregerman crystal angel to Style.

That has nothing to do with Mag's crystal angel. Nothing in the September 1996 letter references the Gregerman crystal angel or purports to prohibit Alan Gregerman from selling his crystal angel. In fact, a year later Mag was still trying to entice Mr. Gregerman to assign his rights to the Gregerman crystal angel, so plainly the September letter did not affect Mr. Gregerman's rights in his crystal angel. Plaintiff's arguments about freedom to contract and breach of the September letter agreement are diversionary in light of the limited scope of the agreement, which did not even address the Gregerman crystal angel.[1]

Finally, plaintiff tries to argue that Mr. Gregerman might have copied the Mag crystal angel when he designed his crystal angel in 1994.[2] Mr. Gregerman was plaintiff's witness, and Mr. Gregerman testified without challenge that he independently created the Gregerman crystal angel in 1994 without having seen another four-stone crystal angel piece, and that he sold the Gregerman crystal angel to Style. Since that has been Mr. Gregerman's story for years, it is unclear why plaintiff would have expected to elicit any other testimony, or why it would have expected a jury to disbelieve Mr. Gregerman, when he was the only one testifying about his

---

[1] The one copyright case plaintiff cites, *Lulirama Ltd. Inc. v. Axcess Broadcast Svcs, Inc.*, 128 F.3d 872 (5th Cir. 1997), quotes a secondary source for the unremarkable proposition that a copyright license includes a covenant not to sue. *Id.* at 882 ("a license can be a form of contract in the sense that it is, 'in legal contemplation, merely an agreement not to sue the licensee for infringement'") (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 10.01[C][5] and n. 73.1 (1997)). Plaintiff cites no copyright cases that hold that a simple covenant not to sue letter is a copyright license.

[2] Plaintiff also suggests that defendants should have joined Alan Gregerman as a plaintiff. This is wrong. Plaintiff had the burden to prove that Style copied the Mag crystal angel, and plaintiff failed to meet that burden. The case plaintiff cites, *Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005), addresses collateral estoppel arguments and does not advance plaintiff's argument.

creation. This is simply more evidence that Mag pursued this case despite knowing it could not prevail.

**C. The New York Forum Was Unreasonable.**

Plaintiff concedes that it knew as of mid-2002 that Target purchased the accused pieces from Rhode Island-based Style. (Plaintiff's Memorandum, p. 16.) Notwithstanding that, plaintiff objected to defendants' Motion to Transfer from New York, served numerous discovery requests while the Motion to Transfer was pending, forced defendants to move to stay discovery, objected to the stay of discovery, sought reconsideration of the Order granting the stay of discovery, and tried to depose Mr. Margolis, a California resident, in New York. Essentially, plaintiff barraged defendants with discovery and opposed an appropriate venue transfer even though both real parties, Mag and Style, are located here. Plaintiff's actions suggest that it deliberately tried to run up costs and were a precursor to plaintiff's discovery tactics later in the case. *See Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F. Supp.2d 111 (D. Mass. 2001) (plaintiff brought a specious claim in a well settled area of law to drain profits from a smaller competitor). Under the *Fogerty* analysis, plaintiff's improper motivation for continuing the suit supports an award of fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994); *Lotus Dev. Corp*, 140 F.3d at 72-73.

**D. Mag Had No Basis to Bring Infringement Claims Against Robert Margolis.**

On July 2, 2002, Robert Margolis responded to plaintiff's First Set of Interrogatories. Those Interrogatory Responses, signed by Robert Margolis individually and under oath, established that Mr. Margolis did not purchase, manufacture or sell the accused crystal angel.[3] Thus, as of mid-2002, Mag had no objectively reasonable basis for naming Mr. Margolis as a

---

[3] Due to the five-page limit on Exhibits, defendants cannot append the Interrogatory Answers but will have the Answers available for the Court if the Court so desires.

defendant. Nevertheless, Mag filed an Amended Complaint in 2004, again naming Robert Margolis as a defendant, and continued suit against him until mid-2005, when the Dismissal Stipulation entered.

The cases plaintiff cites do not stand for the proposition Mag advances, namely that Robert Margolis could have been liable in his corporate capacity under the Copyright Act. (Plaintiff's Memorandum, p. 17.) The first case, *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349 (5th Cir. 1994), involved a suit against a company officer sued in his individual capacity for his infringement of the copyright for his personal gain. Plaintiff never alleged that Mr. Margolis individually infringed its purported copyright, so the *Structural Software* case does not apply.

The second case cited, *Marvin Music Co. v. BHC Ltd. Partnership*, 830 F. Supp. 651, 654-55 (D. Mass. 1993), articulates the basis for a corporate officer to be held vicariously liable under the Copyright Act. Here, the only claim left against Cherokee is a claim of vicarious liability. Plaintiff cites no cases that held a corporate officer vicariously liable for a company's alleged vicarious liability.

In sum, plaintiff knew in mid-2002 that Mr. Margolis had no involvement in the manufacture, procurement or sale of the accused crystal angel piece. Plaintiff had only the slimmest reed of liability to Cherokee, and it objectively could not extend it to Mr. Margolis. It unreasonably pursued Mr. Margolis regardless, and its actions warrant a fee award.

**E. An Award of Fees Would Further the Purposes of the Copyright Act.**

Plaintiff's case was objectively weak before it brought suit and significantly weakened once it realized that Alan Gregerman had sold the Gregerman crystal angel to Style. Despite that awareness, Mag continued the suit, objected to defendants' Motions for Summary Judgment,

tried to manipulate Alan Gregerman's affidavit in advance of the summary sudgment hearings, and subjected defendants to days of trial preparation and trial. Plaintiff's aggressive litigation of an objectively weak claim in a well settled area of law warrants an award of fees. *See, e.g., InvesSys*, 369 F.3d at 22; *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998).

**F. The Fees Sought Are Reasonable.**

In determining the proper award of fees, the Supreme Court has instructed trial judges to determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community. *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992); *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 15-17 (1st Cir. 1988); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950-51 (1st Cir. 1984).

**1. The Hours Listed Were Reasonably Expended on the Litigation.**

Through mid-2005, Duffy Sweeney & Scott defended two publicly traded companies and an individual against infringement claims that plaintiff valued at more than $500,000. In 2002 and 2003, for example, defendants were served with the Complaint, successfully moved to transfer the case, had an initial Rule 26 conference and prepared a Rule 26 report, responded to five discovery requests, successfully moved to stay discovery, and negotiated and executed a Protective Order that applied throughout the case, all of which took 120.6 hours.

At trial, two Duffy Sweeney & Scott attorneys represented two defendants, in contrast to the three attorneys, including New York counsel, who represented plaintiff at trial. Plaintiff may complain about multiple attorneys and duplicative hours and billing, but Cherokee and Target

were represented appropriately.[4] *See, e.g. Lipsett*, 975 F.2d at 938-39 (1st Cir. 1992) (recognizing that staffing issues are often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncrasies and upholding fee award based on multiple attorneys and a paralegal after considering the complexity of the litigation, the considerable burdens it placed upon counsel, the number of defendants, and the opposing counsel's staffing patterns).

Plaintiff suggests that some entries are duplicative because more than one attorney, or an attorney and a paralegal, may have been engaged in work on the same issue at the same time. None of the entries noted mentions Crystal Dartt, the paralegal on the case and, in fact, none of the work performed by Ms. Dartt, which largely was document management and document-based trial preparation, is duplicative of any attorney's time.

Unquestionably there were times that two attorneys reviewed the same documents and assisted in drafting court filings, but each attorney contributed substantively to the progress of the litigation. In fact, defendants have not sought reimbursement of the pre-transfer fees paid to New York counsel. Moreover, this is not a situation where two attorneys sat in at minor depositions. Target and Cherokee had two attorneys representing them at trial, a situation that is likely fairly common in federal court and appropriate given the magnitude of plaintiff's claim.

Plaintiff's counsel should be hard pressed to argue that multiple attorneys are never needed during litigation or at trial. Not only was plaintiff abundantly represented here, but plaintiff's counsel, Robert Clarida, recently filed an affidavit in support of a fee application in a copyright case that sought $328,686.81 in fees for his work and the work of three other attorneys

---

[4] Plaintiff's suggestion that defendants not recover for Christine Bush's trial time fails for the same reason. Ms. Bush participated in jury selection, argued defendants' motions in limine and would have examined witnesses at trial but for the successful Rule 50 Motion.

at trial and retrial with rates ranging from $300 per hour for an associate, to $390 per hour for Mr. Clarida, to $650 per hour for a partner.

In light of the amount at issue, the contentiousness of the case, the issues involved and plaintiff's staffing, three defendants were appropriately represented through four years of litigation.

**2. The Records are Properly Detailed.**

In *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991), the First Circuit clarified the level of detail required for fee awards by "requiring litigants to submit a 'full and specific accounting' of the tasks performed, the dates of performance, and the number of hours spent on each task." *Id.* at 527 (citations omitted). A petition for attorney's fees has the proper documentary support when it contains "detailed contemporaneous time records," that provide a "full and specific accounting of the tasks performed, the dates of performance, and the hours expended." *Id.* at 527-28.

Defendants submitted the actual time records from Duffy Sweeney & Scott in support of their Motion for Award of Fees. The records were kept contemporaneous with the dates of performance and include the dates, the tasks performed, the person(s) performing the tasks, and the hours expended. Because this case is on appeal, privilege considerations exist, so certain records reflecting the substance of telephone communications and meetings are redacted. Those redactions are limited and the full unredacted records are available for the Court for in-camera review should that prove necessary.

**3. The Hourly Rates Sought Are Appropriate.**

In calculating a reasonable hourly rate, courts consider the type of work performed, who performed it, the expertise that it required, and when it was undertaken. *Furtado v. Bishop*, 635

F.2d 915, 920 (1st Cir. 1980). Once the basic lodestar figure is calculated, the court must consider whether an upward or downward adjustment should be made to reflect, among other things, quality of representation (i.e., an unusually good or poor performance above or below the skill already reflected in the hourly rates), and exceptional (and unexpected) results obtained. *Id.*

Plaintiff argues that the rates charged are unreasonable, but it does not counter the affidavit filed by William Grimm, Esq. in support of defendants' fee application. Presumably, the Local Rules require a disinterested attorney to provide an affidavit regarding the reasonableness of the fees to avoid having to rely on one party or the other to determine the usual and customary charges that should apply. *See* LR Cv 54.1(b)(2).

Moreover, Mr. Clarida attached to his recent fee application in another copyright case the Report of the Economic Survey prepared under direction of American Intellectual Property Law Association. (Exh. A.) Assuming Providence is in the "Boston Area," the median hourly fee for partners as of 2003 was $400 per hour and the median hourly fee for associates was $310 per hour; assuming Providence is in the "Other East" area, the median hourly fee for partners as of 2003 was $265 per hour and the median hourly fee for associates was $188 per hour. This further supports the rates claimed in Cherokee and Target's fee application. Keeping in mind that Mr. Clarida likely was charging Mag his reported rate of $390 per hour, it seems incongruous that plaintiff is complaining about defendants' counsel's rates.

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in Defendants' Motion for Award of Attorneys' Fees and Memorandum of Law filed in support thereof, defendants respectfully request that the Court grant their Motion for Award of Attorneys' Fees and award defendants Cherokee, Margolis and Target $164,018.65 pursuant to Fed. R. Civ. P. 54(d)(2) and

17 U.S.C. § 505, which includes $162,129 as attorneys fees, plus $1,889.65 in related non-taxable expenses.

Respectfully Submitted,
Cherokee, Inc., Robert Margolis and
Target Corporation
By Their Attorneys,

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 (Tel)
(401) 455-0701 (Fax)

May 22, 2006

**CERTIFICATION**

TO:

Thomas A. Tarro, III, Esq.
Kris R. Macaruso Marotti, Esq.
The Law Firm of Thomas A. Tarro III, Esq.
The Summit East, Suite 330
300 Centerville Road
Warwick, RI 02886

Robert W. Clarida, Esq.
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036

Thomas R. Noel, Esq.
Noel & Gyorgy LLP
50 South Main St.
Providence, RI 02903

I hereby certify that I caused a true copy of the within *Reply Memorandum in Support of Motion for Award of Attorneys Fees* to be sent via First Class Mail to the above named counsel of record on the 22 day of May, 2006.

Theresa Benson

H:\Clients\Target Corporaton.MAG\Style Fashion Jewelry - Mag\Pleadings\Motion for Award of Fees.doc

AIPLA

# Report of the Economic Survey 2003

PREPARED UNDER DIRECTION OF
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
LAW PRACTICE MANAGEMENT COMMITTEE

WAYNE P. SOBON, CHAIR

By
Fetzer-Kraus, Inc.
Washington, DC 20008

## Table 16b. Average Hourly Billing Rate by Type Of Practice and Location of Primary Place of Work

| | Total Survey | Location of Respondent's Primary Place of Work: Boston Area | NYC Area | Philadelphia– Wilmington | Washington DC Area | Other East | Metro Southeast | Other Southeast | Chicago Area | Minneapolis– St. Paul | Other Central | Texas | California | Other West |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **All Fulltime in Private Practice** | | | | | | | | | | | | | | |
| Number Reporting | 1006 | 37 | 51 | 53 | 185 | 67 | 39 | 18 | 77 | 46 | 158 | 69 | 108 | 94 |
| *% of total* | | *4%* | *5%* | *5%* | *18%* | *7%* | *4%* | *2%* | *8%* | *5%* | *16%* | *7%* | *11%* | *9%* |
| 75th percentile | $345 | $400 | $425 | $370 | $360 | $275 | $325 | $275 | $360 | $310 | $250 | $350 | $410 | $315 |
| Median | $275 | $325 | $355 | $300 | $300 | $235 | $265 | $230 | $285 | $260 | $210 | $280 | $328 | $250 |
| 25th percentile | $220 | $285 | $275 | $250 | $250 | $195 | $210 | $200 | $235 | $215 | $185 | $225 | $283 | $200 |
| Average | $286 | $333 | $355 | $308 | $315 | $239 | $273 | $241 | $292 | $268 | $217 | $289 | $349 | $256 |
| **Partners** | | | | | | | | | | | | | | |
| Number Reporting | 500 | 22 | 25 | 28 | 85 | 31 | 21 | 13 | 41 | 23 | 83 | 32 | 53 | 41 |
| *% of total* | | *4%* | *5%* | *6%* | *17%* | *6%* | *4%* | *3%* | *8%* | *5%* | *17%* | *6%* | *11%* | *8%* |
| 75th percentile | $385 | $425 | $465 | $410 | $420 | $300 | $350 | $290 | $390 | $375 | $265 | $373 | $470 | $340 |
| Median | $320 | $400 | $400 | $360 | $350 | $265 | $300 | $245 | $340 | $310 | $235 | $345 | $380 | $300 |
| 25th percentile | $260 | $325 | $330 | $298 | $300 | $230 | $266 | $210 | $285 | $280 | $200 | $300 | $315 | $250 |
| Average | $327 | $378 | $406 | $354 | $370 | $270 | $312 | $251 | $340 | $316 | $236 | $338 | $398 | $299 |
| **Associates** | | | | | | | | | | | | | | |
| Number Reporting | 322 | 12 | 20 | 17 | 70 | 18 | 13 | 2 | 24 | 19 | 51 | 18 | 29 | 28 |
| *% of total* | | *4%* | *6%* | *5%* | *22%* | *6%* | *4%* | *1%* | *7%* | *6%* | *16%* | *6%* | *9%* | *9%* |
| 75th percentile | $275 | $323 | $363 | $280 | $285 | $225 | $250 | | $263 | $255 | $210 | $275 | $315 | $235 |
| Median | $225 | $310 | $285 | $250 | $243 | $188 | $200 | | $220 | $220 | $190 | $248 | $260 | $180 |
| 25th percentile | $190 | $215 | $253 | $210 | $215 | $165 | $180 | | $198 | $170 | $160 | $220 | $230 | $165 |
| Average | $235 | $278 | $306 | $249 | $252 | $193 | $207 | $223 | $231 | $218 | $190 | $257 | $272 | $200 |
| **Of Counsel** | | | | | | | | | | | | | | |
| Number Reporting | 64 | 0 | 3 | 3 | 14 | 4 | 3 | 0 | 5 | 1 | 7 | 4 | 11 | 8 |
| *% of total* | | – | *5%* | *5%* | *22%* | *6%* | *5%* | – | *8%* | *2%* | *11%* | *6%* | *17%* | *13%* |
| 75th percentile | $373 | – | | | $400 | | | – | $301 | | $265 | | $440 | $345 |
| Median | $328 | – | $470 | $275 | $355 | $350 | $345 | – | $275 | | $250 | $310 | $350 | $315 |
| 25th percentile | $270 | – | | | $310 | | | – | $235 | | $201 | | $304 | $250 |
| Average | $330 | – | $447 | $303 | $371 | $325 | $325 | – | $273 | $275 | $239 | $314 | $371 | $303 |
| **Solo Practitioners** | | | | | | | | | | | | | | |
| Number Reporting | 120 | 3 | 3 | 5 | 16 | 14 | 2 | 3 | 7 | 3 | 17 | 15 | 15 | 17 |
| *% of total* | | *3%* | *3%* | *4%* | *13%* | *12%* | *2%* | *3%* | *6%* | *3%* | *14%* | *13%* | *13%* | *14%* |
| 75th percentile | $267 | | | $281 | $268 | $273 | | | $276 | | $226 | $226 | $329 | $250 |
| Median | $225 | $190 | $175 | $250 | $250 | $200 | | $200 | $250 | $225 | $199 | $202 | $299 | $224 |
| 25th percentile | $188 | | | $239 | $213 | $175 | | | $177 | | $178 | $196 | $265 | $199 |
| Average | $229 | $218 | $170 | $256 | $245 | $206 | $215 | $208 | $231 | $225 | $197 | $215 | $306 | $221 |