UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC.<br>Plaintiff<br><br>vs.<br><br>CHEROKEE, INC., ROBERT MARGOLIS AND TARGET CORPORATION d/b/a TARGET STORES and STYLE ACCESSORIES, INC.<br>Defendants | : | C.A. No. 04-174 T |

**STYLE ACCESSORIES INC.'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR ATTORNEYS' FEES**

Plaintiff now attempts to deflect defendants' motions for attorneys' fees by backfilling holes in its case based not on the facts as presented at trial but on new arguments never raised at trial, by fabricating facts that simply do not exist, by blatantly misconstruing case law and legal principles, and by attempting – once again – to distort Mr. Gregerman's consistent testimony that he independently created and has sold *his* crystal angel since 1994. The arguments plaintiff Mag Jewelry Co., Inc. ("Mag") sets forth in its objection papers are misplaced, unsupportable, and in fact bolster the need for an award of attorneys' fees in this case.

If any of the facts of this case are, as plaintiff calls them, "Byzantine" (Plaintiff's Memo, p. 4), they are the facts surrounding the back-dating of Mag's copyright by more than three years after learning of Mr. Gregerman's 1994 creation and sales, and Mag's shifting position *vis a vis* its ten-year co-existence with Mr. Gregerman in the crystal angel market. Likewise, the only arguments or legal principles that are "novel, complex [or] unprecedented" (Plaintiff's Memo, p. 2) are the arguments and principles plaintiff now for

the first time urges in its objection to defendants' motions for fees. There is nothing new or novel about the principle of independent creation, and there is nothing new or novel about the question of access in a copyright case – except insofar as plaintiff is misconstruing those principals and misapplying the facts here.[1]

## A. ARGUMENT

### 1. Plaintiff Misconstrues the Character of the 1996 Letter from Mag and Simply Fabricates Terms that Are Not In It.

#### a. It Is Not True that Every Covenant Not To Sue Is a License

Plaintiff asserted at trial that the September 1996 letter from Mr. Magnanimi to Mr. Gregerman (the "September 1996 Mag Letter") was in fact a license between Mag and Gregerman.[2] Plaintiff, in its objection to the motions for fees, now asserts that the September 1996 Mag Letter was a license *because* it was a covenant not to sue, employing the syllogism that "…a covenant not to sue *is* a copyright license." (Memo., p. 10) That statement, however, is a mischaracterization of the very case law cited by the plaintiff. The cases cited by the plaintiff hold that a license is necessarily a covenant not to sue, but not, as plaintiff urges, the other way around. There is no authority in the copyright context for the converse of that rule, as urged by the plaintiff, that the existence of a covenant not to sue implies, *ipso facto*, a license.

---

[1] Plaintiff suggests in its objection, for the first time in this case: (1) that Mr. Gregerman in fact stole the crystal angel design from Mag Jewelry; and, (2) apparently in the alternative, that by selling *his* piece instead of the plaintiff's, Mr. Gregerman somehow breached an "agreement" with Mag Jewelry. The first position is simply unsupported by any evidence; the second, even if true, is not relevant to this case.

[2] The implication is that the existence of a license (presumably with Mag as licensor) would imply superior rights to the crystal angel in Mag and would have provided at least some evidence that Gregerman's sales over the last ten years were of the Mag piece, not his own. Mag continues the argument here, even though its principal, Mr. Magnanimi, testified at trial that if a "lawyer asked me if I had a legal license with Alan Gregerman, I would probably say no." Transcript March 8, 2006, a.m., p. 88, ll. 2-3.

### b. Mag Now Fabricates Terms that Are Not Contained in the September 1996 Mag Letter

Regardless of whether the 1996 Mag Letter constitutes a license, some other type of agreement, or nothing at all, Mag now attempts to insert terms that are simply not in it. The implication from Mag's argument is apparently that this "agreement" contained mandatory terms requiring Gregerman to make the substantially identical Mag angel, and not his own. Therefore, plaintiff's assumed argument continues, Style must have purchased, through Gregerman, not the Gregerman crystal angel, but Mag's.

In fact, the letter, written by Mr. Magnanimi, which Mr. Gregerman never signed or responded to, states no more than that Gregerman "can" make the Mag piece. It does not *require* him to do so. Neither does it require or even ask him *not* to make or sell his own crystal angel. It does not recite any agreement or even suggest that all crystal angels sold thereafter would be considered Mag angels, and it doesn't direct Mr. Gregerman to police his sales against infringers or even to report to Mag to whom he was selling crystal angels. In fact, the letter doesn't direct Mr. Gregerman to do anything. It imposes no obligations upon him whatsoever.[3] The assertion that Gregerman was thereafter forever selling a piece belonging to Mag rather than the substantially identical one he had independently created, is as absurd as it is unsupported.[4]

Important to the motions for fees at issue here, nothing in the September 1996 Mag Letter suggests that Gregerman then or at any other time repudiated his claim to have

[3] It is simply fiction that the court's dismissal of the case somehow "nullifies" whatever agreement may have existed or prevents others from entering contracts concerning copyrights. (Memo., p.7)

[4] Although Mr. Gregerman, in response to a question from plaintiff's counsel, answered that "technically" he sold the crystal angel copyrighted by Mag, on re-cross he immediately clarified by testifying that his independently created crystal angel and Mag's copyrighted crystal angel were "the exact same expression." Transcript March 9, 2006 p. 10-13.

independently created the crystal angel or jettisoned his right to make and sell what he maintained he had created.[5]

Regardless of whether that letter was a license, the uncontradicted evidence showed that Gregerman manufactured and sold Style *his piece*, not Mag's. Gregerman testified unequivocally at trial that he always believed he was making and selling a piece he had independently created and that he maintained that belief and never contradicted that position to any person at any time over the last ten years (Trial Transcript, March 9, 2006 a.m., p. 64, ll. 21-25; p. 65, ll. 1-18):

- Mr. Gregerman held that position in 1994 and 1995 when he first made the piece, put it in the Monarch Creations catalog (Trial Exhibit HH), and sold it;
- Mr. Gregerman maintained that position when he received Mag's cease and desist letter in January 1996 and hired a lawyer to respond to it (Trial Exhibit H);
- Mr. Gregerman maintained that position when he received the September 1996 Mag Letter, after Mag back-dated its copyright, saying they should both go out and "make some money this year";
- Mr. Gregerman maintained that position in 1997 when he received from Mag's counsel – and ignored – a request and a blank assignment form to assign his rights to the crystal angel to Mag (Trial Exhibit OO); and
- Mr. Gregerman maintained that position when he executed his affidavit in the American Family Enterprises case in 2000 unequivocally affirming his claim to

---

[5] The 1996 Mag Letter could have included a provision requiring Gregerman to repudiate his independent creation, and could have specified that all crystal angels sold by Gregerman would be deemed to be Mag's work, but it did not. One has to presume that Mr. Magnanimi, the sole author of the "agreement," so-called, saw fit not to ask too much from a man who had solid evidence of independent creation and substantial distribution of the piece well prior to his own.

independent creation, publication, and sale of his crystal angel piece in 1994 (Exhibit F to Style's Summary Judgment Rule 12.1 Statement).

Of particular importance to the pending motion for fees, Mr. Gregerman maintained that position in the Summer of 2005, when he was approached and pressed by Mag and by Mag's counsel to execute an affidavit crafted by Mag's counsel suggesting that Mr. Gregerman had been making and selling Mag's crystal angels under a license. The record is clear that he declined to sign the original affidavit draft given him by Mag's counsel,[6] and that he signed, after additional pressure was applied, a watered-down version of the document from which the word "license" had been removed. Even with the word "license" removed, plaintiff's counsel used the affidavit at summary judgment, contorting Mr. Gregerman's position as to the existence of a license and as to whose (virtually indistinguishable) crystal angel piece he had been selling for the previous ten years.

Even the trial testimony of Mag's principal, Mr. Magnanimi, made clear that he understood both he and Mr. Gregerman claimed to have independently created the crystal angel:

| | |
|---|---|
| Mr. Magnanimi: | whose crystal angel it was from 1995 and 1996 until this day me and Alan Gregerman never discussed, didn't care whose crystal angel it was. |
| Mr. Noel: | Because it's the same angel, essentially, isn't it? |
| Mr. Magnanimi: | Absolutely. |

Transcript a.m. March 8, 2006 p. 93, ll. 9-17. The fact that Gregerman always claimed to have been selling *his* crystal angel, not Mag's, was objectively clear to everyone except Mag's counsel, and it was clear in every document except the affidavits Mag's counsel crafted to ward off summary judgment.

---

[6] That draft explicitly acknowledged a license between Mag and his company,

**2. Mag's Argument Concerning Access is Legally Incorrect and It Is Misplaced As Plaintiff Presented No Evidence of Access at Trial**

Plaintiff's objection to the motions for fees also devolves into a post-trial analysis of "access" that it suggests it *might* have proven in this case. Amazingly, plaintiff shifts gears and implies for the first time something it did not even attempt to prove at trial -- that Mr. Gregerman was not an independent creator but a copyist of Mag's work. Mag suggests in its brief opposing fees that its pursuit of this case was not objectively unreasonable because, in part, Gregerman had reasonable opportunity to view the plaintiff's work and, apparently, thereafter copy it. First, Mag presented no evidence of access at trial. Second, in making the argument, plaintiff misapplies the "reasonable opportunity" standard it seeks to exploit.

Mag presented only the statement of its principal that its angel piece was created and available at a jewelry show beginning in 1992. There was no corroborating evidence that a crystal angel piece was actually taken to a show, no evidence that it was actually seen by *anybody* as it was kept in a tray within a stack of trays, there was no product sheet listing the piece, no sample sheet, no order sheet, and no advertisement or card. Aside from the lack of evidence concerning the presence of the piece itself at any show, there was absolutely no evidence linking anyone at Style Accessories, the other defendants, or Mr. Gregerman to having attended those few shows at which the piece was ostensibly "available" prior to Mr. Gregerman's creation and recorded sales of his crystal angel design. Daniel Magnanimi testified that "nobody else besides" Donald Donnelly, Mag's "independent" sales representative, worked the shows. Transcript a.m. March 8, 2006 p. 23, ll. 15-17. Mr. Donnelly did not testify about Mr. Gregerman's attendance at any jewelry shows at which the crystal angel was purportedly displayed. Mr. Donnelly in fact testified that he had a registration book from a 1992 jewelry show, and possibly other registration books from other

shows in that time period; yet no show registration book was never introduced into evidence, despite Mr. Donnelly's belief that he may have provided a page from a registration book to Mag's counsel. Transcript a.m. March 9, 2006 p. 40.

The cases cited by Mag applying the "reasonable opportunity" standard of access are not helpful to its argument. In the case of a work derived from an independent creation, the issue of access is a nullity. That was the result of the First Circuit case cited by the plaintiff for the principle of reasonable opportunity, *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1 (1st Cir. 1996). In *Grubb*, the court dismissed the appellant's access argument *because* the accused work was based on an independent creation. *Id.* at 14-15. Independent creation "renders any conclusion of access or inference of copying illogical." *Id.*[7]

Mag's citation to *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F.Supp. 1165 (D.Mass. 1989), in support of its claim concerning access is egregiously misplaced. Mag refers to *Flag Fables* as supporting its position that "far less 'opportunity' [than Mag presented] suffices to establish access within the courts of this Circuit." (Mag Memo., p. 12) The District Court in *Flag Fables*, in ruling on plaintiff's motion for a preliminary injunction, explicitly noted that the issue of access was *not pursued* at hearing. *Id.* at 1171. It was in dicta that the court went on to note that based on the "rapid and widespread popularity of [plaintiff's] business, including at least one locally published newspaper article," combined with the display of the plaintiff's flags at local craft fairs for over a year and a half, it would have been disingenuous for the defendant in that case to deny

---

[7] In stating its argument on reasonable opportunity, plaintiff has again cherry-picked a quote from the decision. Plaintiff quotes from *Grubb* that "plaintiff must produce evidence from which a reasonable finder of fact could infer that the defendant had a reasonable opportunity to copy his or her work." The very next line of *Grubb*, however, goes on to restrict the application of that principle, and is especially pertinent to this case: "Evidence that only creates a 'bare possibility' that the defendant had access is not sufficient to create a factual issue as to copying." *Id.*

access. *Id.* Contrary to Mag's attempt to portray the evidence of access in *Flag Fables* as "far less" that the evidence in this case, it is clear that the evidence in Flag Fables was "far more" than the evidence in this case. Mag did not enjoy "rapid and widespread popularity" of the crystal angel or locally published articles; there were no sales of the piece until March of 1995. Moreover, Mag's averment that the evidence in *Flag Fables* "establish[ed] access" is simply wrong – the issue of access in that case "was not pursued at hearing."

Similarly, none of the other cases cited by Mag lend support for its claim that the mere display of its crystal angel in a controlled showroom during jewelry trade shows establishes access, despite the complete lack of evidence establishing that the defendants, Gregerman, or anyone affiliated with them, ever attended the shows or Mag's showroom. *See, e.g., Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir. 1988) (requiring "evidence of a reasonable possibility of access," which is "more than a bare possibility and may not be inferred through speculation or conjecture," and concluding that there was sufficient evidence for the jury to conclude that the defendants had access to plaintiff's song where an employee of the defendant music publisher testified that he forwarded a copy of plaintiff's record and sheet music to the owner of the defendant music publisher); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51, (2d Cir. 2003) ("In order to support a claim of access, a plaintiff must offer 'significant, affirmative and probative evidence.")[8]; *Costello, Erdlen & Co. v. Winslow, King, Richards & Co.*, 1991 U.S. Dist. LEXIS 21841 (D. Mass. Mar. 21,

---

[8] The *Jorgensen* Court upheld the grant of summary judgment to those defendants who plaintiff could not show had actually received a copy of the plaintiff's song. 351 F.2d 46, 51-52 (2d Cir. 2003). The Court also upheld the grant of summary judgment to a defendant music publishing company that admitted receiving a copy of the plaintiff's song because the plaintiff could not provide any evidence of a connection between the defendant publishing company and the songwriter. *Id.* at 52-53. The Court noted that the plaintiff had failed to adduce "proof of a reasonable possibility that 'the path of [the infringing songwriter] and the infringed work crossed.'" *Id.* at 53. The Court found sufficient evidence to reverse a grant of summary judgment for certain defendants who admitted receiving a copy of the song and possibly passing it on to its A & R department, which occasionally shared material with its affiliated songwriters, producers and musicians. *Id.* at 54.

2006) (court granted plaintiff's motion for partial summary judgment on the issue of access based on evidence that the defendant had previously worked for the plaintiff and upon leaving employment had taken a ninety-one page job guide which was allegedly the source of defendants' purportedly infringing job guide); *Majarian v. Tobias*, 1983 U.S. Dist. LEXIS 12546 (D. Mass. 1983) (court granted defendants' motion for summary judgment after finding no access to plaintiff's book on the part of defendant author despite evidence that two years prior to the defendants publishing the allegedly infringing book, the defendant author's publisher had received a copy of the plaintiff's book and that the plaintiff had distributed over 1326 copies of the manuscript in the locality where the defendant author occasionally visited and the defendant author's research assistant lived); *see also* 4-13 Nimmer on Copyright § 13.02 (citing *Palmieri v. Estefan*, 35 U.S.P.Q.2d 1382, 1383 (S.D.N.Y. 1995) (no evidence of access despite evidence showing that defendant Gloria Estefan was present in a room with 15,000 records, including one containing plaintiff's song); *Columbia Pictures Corp. v. Krasna*, 65 N.Y.S.2d 67 (Sup. Ct. N.Y. County 1946), *aff'd*, 271 A.D. 1008, 69 N.Y.S.2d 796 (1st Dep't 1947) (holding that the mere fact that plaintiff's manuscript was physically in the same city in which the defendant resided did not give the defendant an opportunity to view the manuscript so as to constitute access, notwithstanding the bare physical possibility of such a view)).

To the extent plaintiff is attempting to argue that Gregerman copied his angel from Mag, it is a new argument to this case, and it is wholly unsupported. Moreover, Mag's own actions – and inaction – over the years belie any late assertion that it believes Gregerman copied anything from Mag:

- Mag never pursued Gregerman after it was confronted with evidence of his creation and sales in 1994;
- Mag in 1997 sought to have Gregerman assign his rights to the angel design over to Mag; and
- Mag chose not to join Gregerman to this action, though it could have done so as to finally resolve their respective rights to the crystal angel and their respective rights within the September 1996 Mag Letter.

Plaintiff's strategy pretrial and during the trial itself was to paint Gregerman as a licensee of Mag's who made and sold the Mag angel as opposed to his own. Mag launches an attack on Mr. Gregerman's independent creator status only now. If Mag wanted to challenge Mr. Gregerman's independent creator status (Memo., pp. 12-15), or to suggest that Gregerman's sale of his piece rather than Mag's would have somehow been a breach of the September 1996 Mag Letter "agreement" (Memo., p.8), it could have attempted to do so at trial. It did not. It raises these arguments only in response to defendants' motions for fees in an effort to show its case to have been reasonable. Mag fails in the attempt, and the court should not countenance such moving-target maneuvers.

**B. <u>CONCLUSION</u>**

The absence of evidence to support Mag's new arguments is further evidence that an award of fees is absolutely warranted. It would have been novel law indeed, contrary to the very principle of independent creation, were the court to have decided that a defendant who ostensibly copied one independent creation had to pay damages to another person who made a similar piece, just because the pieces look alike. That result would have turned copyright

law on its head. Mag was simply not entitled to claim damages from someone who had not copied its work, and its pursuit of this case was not objectively reasonable.

Dated: May 22, 2006

STYLE ACCESSORIES, INC.
By Its Attorneys,

Thomas R. Noel (#4239)
John R. Harrington (#7173)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
401.272.7400 Telephone
401.621.5688 Facsimile

**CERTIFICATION**

I hereby certify that on May 22nd, 2006, I served a copy of the foregoing via First Class Mail to Thomas A. Tarro III, Esq., The Summit East, Suite 330, Centerville Road, Warwick, RI 02886 and Craig M. Scott, Esq., Duffy Sweeney & Scott, Ltd., One Turks Head Place, Suite 1200, Providence, RI 02903.