UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAG JEWELRY CO., INC. | : | |
| | : | |
| v. | : | C.A. No. 04-174T |
| | : | |
| CHEROKEE, INC.; TARGET CORP. d/b/a TARGET STORES; and STYLE ACCESSORIES, INC. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72) are Defendants' Motions for Attorneys' Fees and Costs (Document Nos. 124 and 130) as Supplemented (Document Nos. 183 and 184). Defendants Cherokee and Target seek an award of fees and costs in the total amount of $242,695.07, and Defendant Style seeks an award in the total amount of $222,841.78. Plaintiff challenges the reasonableness of such requests in several respects. See Document No. 150 at 20; and Document No. 152 at 20. A hearing was held on November 7, 2007.

**Discussion**

On August 8, 2007, the Court of Appeals ruled that Defendants were entitled to an award of costs including "a reasonable attorney's fee" under Section 505 of the Copyright Act, 17 U.S.C. § 505. See Mag Jewelry Co. v. Cherokee, Inc., 496 F.3d 108, 122-124 (1st Cir. 2007). It concluded that Plaintiff "must have known early on that its infringement claim was tenuous, yet it managed to prolong the litigation by obscuring the clarity of the underlying facts" and thus held that the District Court's refusal to award fees in such circumstances was an "abuse of discretion." Id. at 124. However, it left the "appropriate amount of the fee" to the District Court's "discretion on remand."

Id. Thus, Defendants' legal entitlement to an award of fees has been laid to rest, but the issue of reasonableness is still alive. Plaintiff's various challenges as to reasonableness are addressed below.

**A. Duplication**

Plaintiff argues that Defendants' fee request should be reduced because it includes duplicative and excessive attorney billings. In essence, Plaintiff challenges Defendants' staffing decisions. Both Defendants, Cherokee/Target and Style, were generally represented by two attorneys in this case. Defendants Cherokee/Target are represented by Attorneys Craig Scott and Christine Bush of Duffy, Sweeney & Scott, Ltd. Both are partners in the firm, although Ms. Bush was an associate in the earlier stages of the case. Defendant Style was represented by Attorneys Thomas Noel and John Harrington of Noel & Gyorgy, LLP.[1] Mr. Noel is a partner and Mr. Harrington is an associate.

Defendants are not entitled to compensation for legal hours that are "duplicative, unproductive, excessive, or otherwise unnecessary." Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). In contesting any award of fees, Plaintiff has repeatedly pointed out that this case presented "novel, complex and unprecedented legal and factual issues." See, e.g., Document No. 150 at 4. Plaintiff was initially represented in this case by two local, experienced trial lawyers, and later successfully moved for the pro hac vice admission of a New York trial lawyer specializing in copyright infringement law. See Document Nos. 40 and 54. Plaintiff was represented by all three attorneys at the summary judgment hearing held on October 21, 2005 and for the entirety of the March 2006 trial. The First Circuit has noted that, "[a]s a general matter, the time for two or three

---

[1] Style is now represented by Attorney Matthew Oliverio for purposes of this fee dispute.

lawyers in a courtroom or conference, when one would do, may obviously be discounted." Lipsett, 975 F.2d at 938 (internal quotation omitted). However, the assignment of multiple attorneys to a case is not "unreasonable per se" and a reduction for overstaffing is only warranted if the "attorneys are unreasonably doing the same work." Coalition to Save Our Children v. State Bd. of Educ. of Del., 143 F.R.D. 61, 63-64 (D. Del. 1992) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1187 (3rd Cir. 1990)).

My review of the billing records does not reveal that Defendants were overstaffed. Plaintiff consistently staffed this case with three experienced litigators. Defendants faced substantial damages claims and cannot be faulted for the decision to hire more than a single defense attorney. Defendant Style was represented exclusively by Attorney Noel in the early stages of this case (2002 – 2005) and he later utilized Attorney Harrington for assistance during the trial and appeal phases of the case. Their legal work was not unreasonably duplicative.

Defendants Cherokee and Target were represented by Attorneys Scott and Bush for the entire litigation. A review of their billing records suggests that they took more of a team approach[2] to defending the case, while Attorney Noel took the lead for Style and delegated tasks to Attorney Harrington. The team approach of Attorneys Scott and Bush to the defense of this case was effective but did result in some unreasonable duplication. For example, on August 16, 2004, Attorneys Scott and Bush each billed time to prepare for a Rule 16 conference. However, the docket and billing records indicate that only Attorney Scott attended the August 17, 2004 conference. On October 26 and 27, 2004, Attorneys Scott and Bush each billed time for reviewing routine discovery motions.

[2] Attorney Scott asserts that he and Attorney Bush "worked collaboratively" on all phases of this case. See Document No. 125 at ¶ 2; and Document No. 184 at ¶ 2.

However, the billing records indicate that only Attorney Bush prepared the objection. On February 20, 2006, Attorneys Scott and Bush each billed time for reviewing Plaintiff's proposed jury instructions but only Attorney Scott participated in the February 24, 2006 conference call with Plaintiff's counsel regarding such instructions. On September 28, 2006, Attorneys Scott and Bush each billed time for reviewing and revising an objection to Plaintiff's relatively simple Motion to Stay payment of costs pending appeal. Further, on February 6, 2007, Attorneys Scott and Bush each billed several hours for attending the First Circuit appeal argument but the docket and billing records indicate that only Attorney Scott prepared for and argued the appeal. I conclude that a reduction is warranted to account for such duplication. Based on my review of the case dockets and billing records, I recommend a 10% reduction in the attorneys' fee request of Defendants Cherokee and Target to account for this. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2nd Cir. 1983) (endorsing percentage cuts as a "practical means of trimming fat from a fee application" when it is unrealistic to expect trial court to rule on every billing entry).

**B. Core v. Non-core Tasks**

Plaintiff also argues that the Court should assign a lower billing rate (a one-third reduction) to non-core legal tasks. Plaintiff contends that the billing records are "replete" with entries for non-core tasks. However, Plaintiff does not identify a single such entry and leaves it to the Court to identify them and adjust the applicable billing rate. While there is precedent that a reviewing court may apply a core v. non-core distinction, see Alfonso v. Aufiero, 66 F. Supp. 2d 183, 196 (D. Mass. 1999), Plaintiff has not presented any authority that such distinction is mandatory or authority applying the distinction in a Copyright Act fee petition.

I decline to apply the distinction in this case. Plaintiff itself has failed to apply the distinction to any billing entries – not even selective examples. Further, as noted repeatedly by Plaintiff in other contexts, this was a legally and factually complex case and the billing records are not "replete" with entries for non-core tasks as defined in Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993). Finally, applying the core v. non-core distinction in this case would undercut the purposes of awarding prevailing party fees under the Copyright Act. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994) (such purposes include "considerations of compensation and deterrence").

**C. Hourly Rates**

Plaintiff does not contest the billing rates of Attorneys Noel ($225.00 per hour) and Harrington ($175.00 per hour). Plaintiff does, however, challenge the billing rates of Attorney Scott ($275.00 to $365.00 per hour), Attorney Bush ($195.00 to $325.00 per hour) and Paralegal Dartt ($115.00 to $140.00 per hour), as unreasonable. Plaintiff contends that the rates should be reduced to $225.00 for Attorney Scott, $175.00 for Attorney Bush and $60.00 for Paralegal Dartt.

In support of their rate request, Defendants Cherokee and Target have submitted Attorney Scott's Affidavit (Document No. 125) and Supplemental Affidavit (Document No. 184) which declare that the requested rates are "customarily charged by counsel in like cases" and Attorney William Grimm's Affidavit (Document No. 126). Attorney Grimm, a disinterested attorney as described in Local Rule Cv 54.1(b)(2), attests to the reasonableness of the requested rates. Document No. 126 at ¶ 6. Further, Defendants Cherokee and Target submitted excerpts of economic surveys prepared by the American Intellectual Property Law Association ("AIPLA") which support their requested rates. See Document No. 154, Ex. A; Document No. 184, Ex. B.

Plaintiff does not contradict the AIPLA data produced by Defendants or the Local Rule Cv 54.1(b)(2) Affidavit of Attorney Grimm. Plaintiff also has not disputed Defendants' assertion that Attorney Clarida recently submitted a fee application in another copyright case seeking an hourly rate of $390.00 for himself and $300.00 for an associate. Document No. 154 at 9-10. Plaintiff's argument that the requested rates are unreasonable is based on two grounds. First, it argues that the attorneys for co-Defendant Style Accessories charged less, i.e., $225.00 and $175.00 per hour. Second, it notes that this Court found in 2003 that rates of $225.00 per hour for a highly experienced litigation partner and $175.00 for an experienced associate were reasonable and "in line with prevailing market rates in Providence." Obert v. Republic Western Ins. Co., 264 F. Supp. 2d 106, 123 (D.R.I. 2003).

"In determining a reasonable hourly rate, the Supreme Court has recommended that courts use 'the prevailing market rates in the relevant community' as the starting point." Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.4 (1984)). A prevailing market rate is one "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

Plaintiff's arguments are unconvincing. The fact that Defendant Style, a Providence-based costume jewelry manufacturer, secured counsel at lower rates than Defendant Target, a national retailer, and Defendant Cherokee, a national trademark licensor, is not dispositive of the reasonableness issue. Further, the Obert case is not controlling because the issue, as instructed by the Supreme Court in Blum, is to determine the prevailing market rate for "similar" services. The Obert case involved a bad faith claim against an insurer arising out of a motor vehicle accident. It

did not involve an analysis of prevailing market rates for copyright litigators. Plaintiff itself has described the area of copyright infringement law as a speciality and a "complex area of law." Document No. 40.

At the start of this litigation, Attorney Scott's billing rate was $275.00. His rate increased from year to year and went to $345.00 in 2006 when this case was tried and to $365.00 in 2007. A total rate increase of 33% over six years. Attorney Bush's rate started at $195.00 in 2002. Her rate increased from year to year, and went to $310.00 in 2006 when this case was tried and to $325.00 in 2007. A total rate increase of 67% over six years.

Although Attorneys Scott and Bush worked collaboratively on this case, Attorney Scott is more experienced (by seven years) and is a named partner in their firm. In addition, from my involvement with the case and review of the case docket and billing records, it is apparent that Attorney Scott assumed the lead role. Given Attorney Scott's level of experience and lead role in this case, his requested rates are reasonable. See Arclightz and Films Pvt. Ltd. v. Video Palace, Inc., No. 01-CIV- 10135 (SAS), 2003 WL 22434153 at *6 n.57 (S.D.N.Y. Oct. 24, 2003) (approving partner rates of $360.00 and $320.00 in 2003 for a New York intellectual property law firm in a New York copyright infringement case). As to Attorney Bush's rates, there is no explanation proffered as to why her rate increased at more than twice the rate of Attorney Scott's rates (67% v. 33%) during the pendency of this case, and I do not find that rate of increase to be reasonable in the context of this case. Thus, I recommend that Attorney Bush's rates be approved as follows which increase at an annual rate commensurate with Attorney Scott: 2002 – $195.00; 2003 – $210.00; 2004 – $220.00; 2005 – $235.00; 2006 – $250.00; and 2007 – $270.00. Finally, Plaintiff challenges the reasonableness of the rates charged by the Paralegal (Ms. Dartt) who worked with Attorneys Scott

and Bush. Ms. Dartt's rate ranged from $115.00 to $140.00 during this litigation. Plaintiff argues for a reduction to $60.00. Defendants' submissions understandably focus on supporting the requests for attorneys' fees and time which constitute the bulk of the billings. They have not met their burden under Blum of producing "satisfactory evidence" that the rates requested for Ms. Dartt are prevailing market rates. Blum, 465 U.S. at 895-896 n.11. Thus, I recommend that Ms. Dartt's rate be approved as follows: 2002 to 2003 – $85.00; 2004 to 2005 – $90.00; and 2006 to 2007 – $95.00.

**D. Lack of Specificity**

Plaintiff identifies certain incomplete billing entries of Attorneys Scott and Bush which it argues should result in a reduction of the fees awarded. Document No. 152 at 24-25. Defendants Cherokee and Target counter that they redacted certain entries on privilege grounds since the bills were submitted while this case was on appeal. At the fee petition hearing before me, Attorney Scott represented that the incomplete entries had been deducted from their final accounting and thus this is a moot issue.

**E. Expert Witness Fee**

Finally, Plaintiff challenges Defendant Style's request for payment of the fee of its expert, David Josephs, Esquire, in the amount of $1,723.75. Neither party has briefed the legal issue of whether expert witness fees are recoverable under the Copyright Act. My research reveals that they are not recoverable under 17 U.S.C. § 505 and thus I recommend that they be disallowed in this case. T-Peg, Inc. v. Vermont Timber Works, Inc., No. CIV. 03-CV-462, 2005 WL 2989561 (D.N.H. November 8, 2005). See also Artisan Contractors Ass'n of Am. v. Frontier Ins. Co., 275 F.3d 1038, 1040 (11th Cir. 2001) ("[c]osts that may be assessed [under § 505] for...expert witness fees are

limited to the $40 limit provided for in 28 U.S.C. § 1821(b)); and Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir. 1996) (same).

**Conclusion**

For the reasons discussed above, I recommend that Defendants' Motions for Attorneys' Fees and Costs (Document Nos. 124 and 130) as Supplemented (Document Nos. 183 and 184) be GRANTED in part. Defendants shall promptly submit to Senior Judge Torres, for his review in connection with this Report and Recommendation, revised summary statements of their attorneys' fees and costs which are consistent with the conclusions reached herein.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 26, 2007